**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

KOBRE & KIM LLP,

     Plaintiff,

  -  v.  -

COMMODITY FUTURES TRADING
COMMISSION,

      Defendant.

Case No. 19-cv-10151 (LAK) (OTW)

Honorable Ona T. Wang

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO COMPEL DEFENDANT TO EXTEND DOCUMENT SEARCH</u>**

**KOBRE & KIM LLP**

Benjamin J.A. Sauter
Michael S. Kim
Jonathan D. Cogan
George Stamatopoulos

800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Benjamin.Sauter@kobrekim.com
Michael.Kim@kobrekim.com
Jonathan.Cogan@kobrekim.com
George.Stamatopoulos@kobrekim.com

David H. McGill
Leanne A. Bortner

1919 M Street, NW
Washington DC 20036
Tel: +1 202 664 1900
David.McGill@kobrekim.com
Leanne.Bortner@kobrekim.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 3

    I.    The Kraft Consent Order, the Ensuing Public Statements, and Kraft's Motion for
Contempt. .......................................................................................................... 3

    II.    Plaintiff's FOIA Requests and the CFTC's Production to Date. .............................. 6

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ................................................................................................................... 9

    I.    The CFTC Must Review Its Records from August 20-21 Because This Limited Two-
Day Period Likely Contains Discussions Highly Relevant to Plaintiff's FOIA Requests. 9

    II.    The CFTC Has Not Demonstrated Any Burden from Expanding the Date Range for
Its Review. .......................................................................................................... 11

    III.    The Period from August 20-21 Is Critical to Plaintiff's FOIA Requests Because It
Likely Contains Responsive Post-Decisional Discussions. .......................................... 12

    IV.    The Court Should Address the Scope of the CFTC's Review Now. ...................... 14

CONCLUSION .............................................................................................................. 16

# **TABLE OF AUTHORITIES**

**Cases**

*American Civil Liberties Union v. Dep't of Defense,*
   339 F. Supp. 2d 501 (S.D.N.Y. 2004) ............................................................. 9

*American Immigration Council v. Executive Office for Immigration Review,*
   418 F. Supp. 3d 10 (S.D.N.Y. 2019) ............................................................. 11

*Brennan Center for Justice at New York Univ. School of Law v. US Dep't of Justice,*
   377 F. Supp. 3d 428 (S.D.N.Y. 2019) ................................................. 2, 11, 14

*Carney v. Dep't of Justice,*
   19 F.3d 807 (2d Cir. 1994) ............................................................... 9, 14, 15

*Commodity Futures Trading Comm'n v. DRW Investments, LLC,*
   Case No. 13-cv-7884 (RJS), 2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) ........... 4

*Commodity Futures Trading Comm'n v. John Robert Blakey,*
   Case No. 19-cv-2769 (7th Cir.) ..................................................................... 10

*Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.,*
   Case No. 15-cv-02881 (N.D. Ill.) ............................................................ *passim*

*Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.,*
   153 F. Supp. 3d 996 (N.D. Ill. 2015) .............................................................. 4

*Elec. Privacy Info. Center v. Dep't of Justice,*
   416 F. Supp. 2d 35 (D.D.C. 2006) ................................................................. 9

*Environmental Protection Agency v. Mink,*
   410 U.S. 73 (1973) ....................................................................................... 8

*Grand Cent. P'ship, Inc. v. Cuomo,*
   166 F.3d 473 (2d Cir. 1999) .......................................................................... 8

*Halpern v. FBI,*
   181 F.3d 279 (2d Cir. 1999) ........................................................................ 11

*Hopkins v. U.S. Dep't of Housing & Urban Dev.,*
   929 F.2d 81 (2d Cir. 1991) .......................................................................... 12

*Immigrant Defense Project v. United States Immigration*,
   208 F. Supp. 3d 520 (S.D.N.Y. 2016) ............................................................. 10, 11

*In the matter of Commodity Futures Trading Commission*,
   941 F.3d 869 (7th Cir. 2019) ................................................................................. 6

*Iturralde v.Comptroller of Currency*,
   315 F.3d 311 (D.C. Cir. 2003) ............................................................................ 14

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ............................................................................................ 13

*Lacks v. Fahmi*,
   623 F.2d 254 (2d Cir. 1980) .................................................................................. 9

*Liberation Newspaper v. U.S. Dep't of State*,
   80 F. Supp. 3d 137 (D.D.C. 2015) ...................................................................... 14

*Nat'l Council of La Raza v. Dep't of Justice*,
   411 F.3d 350 (2d Cir. 2005) .................................................................................. 8

*Nat'l Day Laborer Org. Network v. Immigration and Customs Enforcement Agency*,
   877 F. Supp. 2d 87 (S.D.N.Y. 2012) ........................................................... 8, 9, 12

*New York Times Co. v. U.S. Dep't of* Justice,
   939 F.3d 479 (2d Cir. 2019) .................................................................................. 8

*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) .............................................................................................. 8

*Payne Enters. v. United States*,
   837 F.2d 486 (D.C. Cir. 1988) ............................................................................ 15

*Quinon v. F.B.I.*,
   86 F.3d 1222 (D.C. Cir. 1996) ............................................................................ 15

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975) ............................................................................................ 12

*Ruotolo v. Dep't of Justice, Tax Div.*,
   53 F.3d 4 (2d Cir. 1995) ...................................................................................... 11

*Truitt v. Dep't of State*,
   897 F.2d 540 (D.C. Cir. 1990) ................................................................................................. 8

**Statutes**

5 U.S.C. § 552 ....................................................................................................................................... 1

7 U.S.C. § 9(1) ...................................................................................................................................... 3

**Rules**

17 C.F.R. § 180.1 .................................................................................................................................. 4

## PRELIMINARY STATEMENT

Plaintiff hereby moves to compel Defendant Commodity Futures Trading Commission ("CFTC") to extend the scope of its review for documents responsive to Plaintiff's requests under the Freedom of Information Act ("FOIA"),  5 U.S.C. § 552 (the "FOIA Requests") by two days, to August 21, 2019.

On August 14, 2019, the CFTC settled a market manipulation case it brought in April 2015 against Kraft Foods Group, Inc. and Mondelēz Global LLC (collectively, "Kraft") under highly unusual circumstances.  *See* Consent Order, *Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*, Case No. 15-cv-02881, Dkt. No. 310 (N.D. Ill. Aug. 14, 2019) ("*Kraft*").  Plaintiff's FOIA Requests seek answers as to (1) why the CFTC settled the *Kraft* case after four years of litigation without providing findings of fact or conclusions of law to be included in the court order formalizing the settlement (the "Consent Order"); (2) how the CFTC interprets the law on market manipulation in view of *Kraft*; (3) why the CFTC agreed to an unprecedented "gag" provision in the Consent Order that barred it from explaining the settlement to the public; and (4) why the Commission and two of its Commissioners issued press releases about the settlement—despite the gag provision—on August 15 and then quickly withdrew those press releases on August 19.  The CFTC's records from August 20-21 almost certainly contain non-privileged, post-decisional discussions that are critical to advancing the public's understanding of these important issues.

Despite agreeing to search for responsive records over a period of roughly six months,[1] the CFTC has refused to search its records for these two critical days.  The CFTC has (1) arbitrarily cabined its search to the date range ending on August 19; and (2) broadly asserted that the

---

[1] The CFTC agreed to search its records from three separate review periods with different start-dates (on February 26, March 21, and June 27, 2019), but the same August 19 end-date that is the subject of this dispute. *See* Ex. A (Email from Rachael Doud, Jan. 14, 2020).

overwhelming majority of responsive documents from that date range are protected by the deliberative process privilege simply because they preceded the CFTC's decisions.  Based on this sweeping and likely unjustified application of the privilege, the CFTC has redacted virtually all material produced so far in rolling productions in response to Plaintiff's FOIA Requests.

The CFTC is obligated to extend its search to include August 20-21 because these two days likely contain highly relevant information responsive to Plaintiff's FOIA Requests that are—by definition—post-decisional with respect to key decisions made by August 19.  The CFTC's speculation that such discussions "would also be pre-deliberative" as to its defense of Kraft's contempt charge and active prosecution of the *Kraft* case (Dkt. No. 21 at 2-3) puts the cart before the horse.  The CFTC cannot avoid its duty to search its records based on the mere possibility that they *may* contain privileged discussions: it is only ***after*** searching its records from August 20-21 that the CFTC may claim any appropriate exemptions under FOIA.

The CFTC also mistakenly asserts that Plaintiff's motion is premature because the CFTC has yet to complete its planned productions and attest to the adequacy of its search.  *See* Dkt. No. 21 at 1-2.  First, this contention ignores that the Court may "supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Brennan Center for Justice at New York Univ. School of Law v. US Dep't of Justice*, 377 F. Supp. 3d 428, 433 (S.D.N.Y. 2019) ("*Brennan Center*").  Second, any future productions for dates that the CFTC agreed to search would do nothing to cure its failure to even *search* for documents on the two additional dates at issue here.  The CFTC was on notice of the importance of these specific dates throughout meet and confer discussions before it even began its review.  Ex. A (Emails from Leanne Bortner, Dec. 19, 2019; Jan. 14, 2020).  In other words, the CFTC's review omitted critical dates, and it has known that from the start.  Ultimately, the CFTC's refusal to address the facial

inadequacy of its search smacks of a cynical strategy designed to evade an obligation to disclose documents that would be of great public interest.

Because the CFTC's search is inadequate on its face, now is the appropriate time for the Court to compel the CFTC to expand its search to include August 20-21.  Waiting until summary judgment would only result in additional rounds of briefing, unnecessary delay, and an overall waste of resources for the parties and the Court.

## BACKGROUND

On August 21, 2019, Plaintiff sent its FOIA Requests concerning the Consent Order in the *Kraft* case to the CFTC.  Plaintiff filed the Complaint in this action on October 31, 2019, after the CFTC failed to respond to Plaintiff's FOIA Requests for over two months.  The CFTC initially claimed in the media that it never received the FOIA Requests, but later recanted once it became obvious that the FOIA Requests had been properly delivered to the CFTC's FOIA Office as directed by applicable procedures.

As discussed in a letter to this Court dated January 15, 2020 (Dkt. No. 17), while the parties have largely agreed to the parameters for the CFTC's ongoing document review, they disagree on the proper end date for that review: the CFTC is seeking to end the review period on August 19, 2019, while Plaintiff is seeking to end the review period two days later, on August 21, 2019.

**I.    The Kraft Consent Order, the Ensuing Public Statements, and Kraft's Motion for Contempt.**

On August 14, 2019, the District Court for the Northern District of Illinois entered the Consent Order formalizing the settlement of the market manipulation enforcement action the CFTC had brought against Kraft in April 2015. *See* Consent Order, *Kraft*, Case No. 15-cv-02881, Dkt. No. 310 (N.D. Ill. Aug. 14, 2019). *Kraft* was the CFTC's first litigated enforcement action applying Section 6(c)(1) of the CEA (enacted by Congress as part of Dodd-Frank in 2010, 7 U.S.C.

§ 9(1)) and Rule 180.1 implementing Section 6(c)(1) (enacted by the CFTC in 2011, 17 C.F.R. § 180.1) to allegations of market manipulation after a "35-year history [in which the CFTC had] only successfully prosecuted and won a single case of manipulation in the futures markets." Bart Chilton, "De Principatibus," Speeches & Testimony, http://cftc.gov/PressRoom/Speeches Testimony/opachilton-28 (October 21, 2009).

Before the settlement, the *Kraft* Court had rejected the CFTC's legal theory that Section 6(c)(1) and Rule 180.1 prohibit manipulation even in the absence of fraud, describing it as so expansive as to prohibit "something as simple as 'buy low, sell high' trading based on market trend lines, or any other plan for trading aimed at profit making . . . an interpretation prohibiting such activity would be absurd." *Kraft*, 153 F. Supp. 3d 996, 1008 (N.D. Ill. 2015). Judge Sullivan of the Southern District of New York had likewise rebuked the CFTC's Enforcement Division for prosecuting a different market manipulation case "based on little more than an 'earth is flat'-style conviction that … manipulation must have happened[.]" *Commodity Futures Trading Comm'n v. DRW Investments, LLC*, Case No. 13-cv-7884 (RJS), 2018 WL 6322024 at *21 (S.D.N.Y. Nov. 30, 2018).

The *Kraft* Consent Order required Kraft to pay a penalty of US $16 million. *See* Consent Order, *Kraft*, Case No. 15-cv-02881, Dkt. No. 310 at 4 (N.D. Ill. Aug. 14, 2019). Notwithstanding that the *Kraft* litigation had lasted over four years and that the Courts in *Kraft* and *DRW* both rebuked the CFTC for advancing meritless legal theories, the Consent Order did not include public findings of law or fact, nor any explanation as to how the parties arrived at the settlement amount. Further, the Consent Order contained a "gag" provision barring the CFTC from making public statements about the case, thus depriving the public of any meaningful guidance as to the CFTC's interpretation of anti-manipulation laws. *See id.* at 3.

On August 15, despite the gag provision, CFTC Commissioners Berkovitz and Behnam issued a joint press release in which they criticized the Consent Order's "unusual features," namely, its lack of "factual findings or conclusions of law" and limitations on "the Commission's statements…to information already in the public record," and expressed their view that "the Commission should not accept any confidentiality provisions or restrictions on the Commission's ability to make public statements."   Dkt. No. 1, Ex. A at 1-2.   Further, the Commissioners expressed their approval of the settlement, asserting that "it must be presumed that the Commission has provided sufficient evidence to find a violation—even where the order itself does not explicitly say so."   *Id.* at 2. On the same day, the Commission issued a separate statement touting the "successful resolution" of the *Kraft* case and stating that its "decision to approve the Consent Order was based on the fact that [the 'gag' provision]…does not restrict individual Commissioners when speaking in their personal capacities." Dkt. No. 1, Ex. B at 1.

On August 16, Kraft filed a motion for contempt against the CFTC for violating the Consent Order, alleging that the CFTC "never intended to comply with the agreement they negotiated [and] engaged in a deliberate, orchestrated effort to violate the Court's Consent Order within minutes of its entry" in order to "accomplish exactly what the CFTC specifically agreed not to do" (*i.e.*, make favorable public statements about the settlement, while implying that Kraft had manipulated the market and admitted as much). Mot. for Contempt, *Kraft*, Case No. 15-cv-02881, Dkt. No. 316 at 9 (N.D. Ill. Aug. 16, 2019); Dkt. No. 1 at 12.   In its response to Kraft's motion, the CFTC doubled down on its public statements that it is "prohibited from restricting any individual Commissioner from publishing any dissenting, concurring, or other separate opinion in connection with an official publication by the Commission." Opp. to Mot. for Contempt, *Kraft*, Case No. 15-cv-02881, Dkt. No. 318 at 1-2 (N.D. Ill. Aug. 17, 2019).

On August 19, at the evidentiary hearing on Kraft's contempt motion, the CFTC "agree[d] to voluntarily remove the disputed press releases immediately from the CFTC website until the next court date." Aug. 19 Order, *Kraft*, Case No. 15-cv-02881, Dkt. No. 319 (N.D. Ill. Aug. 19, 2019). On September 26—following the CFTC's emergency motion to vacate the evidentiary hearing and a petition for a writ of mandamus—the Seventh Circuit stayed the contempt proceedings. On October 22, the Seventh Circuit issued its decision that the CFTC cannot bar its members from sharing their regulatory reasoning and that the Commissioners were not bound by the gag order. It also warned that mere inclusion of a gag order in a settlement "does not authorize secret adjudication" of the CFTC's manipulation allegations. *In the matter of Commodity Futures Trading Commission*, 941 F.3d 869, 872 (7th Cir. 2019). In response to the Seventh Circuit's decision, the District Court vacated the settlement, emphasizing that "no secret adjudication has been, or will be, authorized." Minute Entry, *Kraft*, Case No. 15-cv-02881, Dkt. No. 355 (N.D. Ill. Oct. 23, 2019).

## II.  Plaintiff's FOIA Requests and the CFTC's Production to Date.

Plaintiff initially sent its FOIA Requests to the CFTC on August 21, shortly after the CFTC removed the August 15 press releases from its website. The CFTC never responded to Plaintiff's FOIA Requests, and the documents released in connection with the CFTC's mandamus petition did not offer clarity on the Commission's post-Dodd-Frank market manipulation standards. To shed light on the questions that arose from the Consent Order and the events that followed, Plaintiff filed this action on October 31, 2019, seeking the following categories of documents:

> 1) All documents and communications concerning the "binding agreement" referenced in docket entry 302 of the case captioned *Kraft*, Case No. 15-cv-2881 (N.D. Ill.);

> 2) All documents and communications concerning the "Consent Order" referenced in docket entries 309 and 310 of the *Kraft* case;

3) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to approve the Consent Order;

4) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to approve the Consent Order without findings of fact or conclusions of law;

5) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to approve the provision in the Consent Order that states: "Neither party shall make any public statement about this case other than to refer to the terms of this settlement agreement or public documents filed in this case, except any party may take any lawful position in any legal proceeding, testimony, or by court order";

6) All documents and communications concerning the preparation by the CFTC and/or any of its staff, agents, and/or commissioners of the press releases referenced in docket entry 319 of the *Kraft* case;

7) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to publish the press releases referenced in docket entry 319 of the *Kraft* case;

8) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to remove the press releases referenced in docket entry 319 of the *Kraft* case.

Dkt. No. 1 at 14-15.

While the CFTC has generally agreed to search for responsive documents for the period starting on February 26 to August 19, 2019, it has refused to search for responsive documents from August 20-21. *See* Dkt. 17 at 1. During the parties' meet and confer discussions, the CFTC took the position that most of the responsive documents and discussions prior to August 19 would be protected by the deliberative process privilege (along with other FOIA exemptions). The CFTC has continued to assert this position in its document productions to date (on February 27, March 27, and April 28, 2020), consisting of 854 documents in total, in which the CFTC has redacted virtually all responsive materials. In particular, of the 854 documents produced, 147 are fully redacted (17%), and 446 are partly redacted (52%). For 477 of these 593 redacted documents

(80%), the CFTC has asserted the deliberative process privilege as the basis for its redactions and redacted virtually all substantive discussion. The remaining, un-redacted documents largely consist of articles, public filings, and images of the CFTC seal.

Plaintiff requested that the CFTC expand its search to include August 20-21 before the CFTC ever began its review, but the CFTC has refused to do so, asserting that including these two days would likely yield a high volume of non-responsive or privileged documents. However, the CFTC has failed to provide any details concerning the number of non-responsive or privileged documents from those days, in support of its assertion.

## LEGAL STANDARD

FOIA was enacted "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); also *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005) (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999)). FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *New York Times Co. v. U.S. Dep't of* Justice, 939 F.3d 479, 488 (2d Cir. 2019) (citing *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80 (1973)). Accordingly, FOIA "requires that agencies conduct a search 'reasonably calculated to uncover *all* relevant documents,' not 'most' relevant documents." *Nat'l Day Laborer Org. Network v. Immigration and Customs Enforcement Agency*, 877 F. Supp. 2d 87, 102 (S.D.N.Y. 2012) ("*Nat'l Day Laborer Org. Network*") (emphasis in original) (citations omitted). "[I]f challenged, [the agency] must demonstrate 'beyond material doubt' that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Carney v.*

*Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) ("*Carney*") (noting "the defending agency has the burden").

Further, FOIA requires agencies to "promptly . . . produce requested documents, or . . . justif[y] why the documents may be exempt from production." *American Civil Liberties Union v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004). "FOIA imposes no limits on courts' equitable powers in enforcing its terms[,]" and "courts have a duty to prevent" "unreasonable delays in disclosing non-exempt documents[, which] violate the intent and purpose of the FOIA[.]" *E.g., Elec. Privacy Info. Center v. Dep't of Justice*, 416 F. Supp. 2d 35, 36 (D.D.C. 2006) (citation omitted). To accomplish FOIA's goals, "a court operates with broad discretion when fashioning equitable relief" in a FOIA action. *Lacks v. Fahmi*, 623 F.2d 254, 256 (2d Cir. 1980) (citation omitted).

## ARGUMENT

I.  **The CFTC Must Review Its Records from August 20-21 Because This Limited Two-Day Period Likely Contains Discussions Highly Relevant to Plaintiff's FOIA Requests.**

FOIA "requires that agencies conduct a search 'reasonably calculated to uncover all relevant documents,' not 'most' relevant documents." *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 102 (finding an agency search that "retrieved most" responsive documents inadequate where "failure [to perform more comprehensive search] was not *de minimis*…"). Because the two-day August 20-21 period is reasonably calculated to capture documents relevant to Plaintiff's FOIA Requests, FOIA requires that the CFTC include this period in its search.

Just days before the CFTC's decision to remove the press releases from its website, the Commission and Commissioners Berkovitz and Behnam had taken the public position that they were legally entitled to comment publicly on the settlement, and that such a right was critical in their "decision to approve the Consent Order." Dkt. No. 1, Ex. B at 1; *see also* Dkt. No. 1, Ex. A.

Then, on August 19, the CFTC changed course and voluntarily withdrew the press releases about the *Kraft* settlement from its website.  *See* Minute Entry, *Kraft*, Case No. 15-cv-02881, Dkt. No. 319 (N.D. Ill. Aug. 19, 2019) (August 19, 2019, minute entry, stating that the CFTC agreed to remove the press releases from its website).  This dramatic change in course "raise[s] red flags pointing to the probable existence of responsive agency records" in the days following that decision, which the CFTC "must pursue."   *Immigrant Defense Project v. United States Immigration*, 208 F. Supp. 3d 520, 530 (S.D.N.Y. 2016) ("*Immigrant Defense Project*").

The CFTC downplays the significance of its reversal and decision to voluntarily remove the press releases, baldly asserting that it is unlikely that any relevant post-decisional discussions occurred in the days that followed this extraordinary turn of events.[2]  Dkt. No. 21 at 2.  The Court should reject this speculation.  Contrary to what the CFTC suggests, its decision to withdraw public statements that it considered to be important and lawful just days earlier strongly indicates that discussions about that decision would have ensued shortly after the hearing.  That such discussions likely occurred shortly after the hearing is further indicated by the CFTC's emergency motion and mandamus petition—which the CFTC filed to vacate the hearing—that ultimately led to the District Court vacating the *Kraft* settlement in its entirety. *See* Petition for Writ of Mandamus, *Commodity Futures Trading Comm'n v. John Robert Blakey*, Case No. 19-cv-2769, Dkt. No. 2 (7th Cir. Sep. 13, 2019); Minute Entry, *Kraft*, Case No. 15-cv-02881, Dkt. No. 319 (N.D. Ill. Oct.

---

[2] In its letter dated April 2, 2020, the CFTC asserted that "[t]he single event that occurred on August 19…was the CFTC's removal of a press release from its website[,]" and "[g]iven the nature of this 'decision,' one would not reasonably anticipate 'post-deliberative discussions.'" Dkt. No. 21 at 2.  But the CFTC was not ***ordered*** to remove the press releases from its website, as the CFTC suggests in its letter.  Rather, the CFTC ***voluntarily*** withdrew the press releases from the CFTC's website, notwithstanding its repeated statements that it believed it was prohibited from restricting the Commissioners' rights to express their views.  Order, *Kraft*, Case No. 15-cv-02881, Dkt. No. 319 (N.D. Ill. Aug. 19, 2019).

23, 2019).   These events suggest a state of urgency at the CFTC that belies the CFTC's bald assertion that "one would not reasonably anticipate" post-decisional discussions immediately after August 19.   At the very least, these events constitute "clear and certain lead[s]"—which the CFTC is obligated to pursue—that discussions "that may relate to the subject of [Plaintiff's] FOIA request[s]" occurred on August 20-21.   *Immigrant Defense Project*, 208 F. Supp. 3d 520, 530 (citation omitted).

## II.   The CFTC Has Not Demonstrated Any Burden from Expanding the Date Range for Its Review.

The law is clear that the CFTC is "obliged to pursue any clear and certain lead [that] it cannot in good faith ignore." *American Immigration Council v. Executive Office for Immigration Review*, 418 F. Supp. 3d 10, 15 (S.D.N.Y. 2019) (quoting *Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999)).   Here, the CFTC has not demonstrated that reviewing documents from August 20-21 would add any material burden to its review—or any other basis that would excuse it from its duty to review its records for just these two days.   *See Brennan Center*, 377 F. Supp. 3d at 434 ("Where challenged, agencies have to explain why certain search terms, clearly relevant, were not used.")

The most the CFTC can offer is speculation that expanding the date range for its search by **two days** might somehow yield a high volume of non-responsive or privileged documents.   Yet the CFTC has refused to provide the number of documents that these two days would add to its review, thereby preventing the Plaintiff (and the Court) from meaningfully evaluating any potential considerations of burden.   *See Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 9 (2d Cir. 1995) (holding that search of 803 files was not unduly burdensome, and "Tax Division should not be relieved from all duty to search").   Because the CFTC has not demonstrated that a search for records from August 20-21 would impose an undue burden, it must expand the scope of its search to cover this two-day period and produce any materials responsive to Plaintiff's FOIA Requests.

**III.   The Period from August 20-21 Is Critical to Plaintiff's FOIA Requests Because It Likely Contains Responsive Post-Decisional Discussions.**

Based on its sweeping invocation of the deliberative process privilege for virtually all substantive communications that occurred before August 19, the CFTC has redacted almost 70% of responsive documents it has produced to date, to the point that virtually no substantive information can be gleaned from these documents.[3]   Given the high likelihood that the aggressive manner in which the CFTC has asserted the deliberative process privilege (and other FOIA exemptions) will be subject to dispute, responsive documents from August 20-21—a period that the CFTC should include in its search in any event—are even more critical to Plaintiff's FOIA Request because they are "post-decisional" by definition.

To qualify for the deliberative process privilege, a document must be both "pre-decisional" and "deliberative." *See Hopkins v. U.S. Dep't of Housing & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991) ("*Hopkins*"); *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).   A document is pre-decisional when it is "prepared in order to assist an agency decisionmaker in arriving at [their] decision." *Hopkins*, 929 F.2d at 84 (quoting *Renegotiation Bd.*, 421 U.S. at 184).   Documents that discuss "already formulated policies – even if in draft format, and even if containing 'deliberative' discussions of how to portray those policies to the public – are not protected by the deliberative process privilege[.]'" *Nat'l Day Laborer Org. Network*, 811 F. Supp. 2d at 743 (finding that post-decisional documents must be released unless covered by another exemption).   The documents and communications prepared after August 19 relating to the settlement and press releases were clearly post-decisional, as the areas for

---

[3] The remaining documents in the CFTC's productions largely consist of public documents, such as articles, public filings, and images of the CFTC seal.

deliberation and decision—the decisions to resolve litigation with Kraft, post the press releases, and then remove them—had concluded.

The CFTC's argument that the documents from August 20-21 "would also be pre-deliberative with respect to the CFTC's active defense of a contempt charge and its active prosecution of an enforcement proceeding…and are thus very likely to be subject to one or more exemptions" (Dkt. No. 21 at 2-3) lacks merit.  As an initial matter, the *Kraft* settlement was still in effect as of August 20-21 and was only vacated on October 23. *See* Minute Entry, *Kraft*, 15-cv-02881, Dkt. No. 355 (N.D. Ill. Oct. 23, 2019). Therefore, communications from August 20-21 could not have related to an active enforcement proceeding as of that time.[4]  Further, even if communications that occurred on August 20-21 contained some exempt portions (for example, pertaining to the CFTC's defense of the contempt charge), that would not entitle the CFTC to withhold any non-exempt portions in the same communications (for example, relating to the decision to issue the press releases in the first place), much less withhold the communications in their entirety.

A document that precedes a decision does not necessarily fall within the scope of the deliberative process privilege, as the CFTC appears to suggest in its letter.  But, even if the deliberative process privilege might apply, the CFTC must first search for and review any

---

[4] In any event, the law enforcement exemption applies only to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" could cause some articulable harm, such as "interfere with enforcement proceedings" or "disclose techniques and procedures for law enforcement investigations [in such manner as might] reasonably be expected to risk circumvention of the law[.]"   5 U.S.C. § 552(b)(7).  Here, the information Plaintiff seeks does not pose such a risk.  Further, for information to qualify under this exemption, the Supreme Court has ruled that an agency must first prove that it was *compiled* for law enforcement purposes, which the CFTC cannot prove without first searching its records for these dates.  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989).  It is unlikely that the types of correspondence and other documents responsive to the FOIA Requests would qualify as having been "compiled" for law enforcement purposes.

responsive documents from this two-day period, and then establish that a valid exemption applies. *See Carney*, 19 F.3d at 812 (2d Cir. 1994); Dkt. No. 21 at 1 (the questions to be decided by the Court are "(i) the adequacy of the CFTC's search; and (ii) whether the CFTC's withholdings pursuant to FOIA's exemptions are justified."). Unless the CFTC searches its records from August 20-21, it cannot in good faith assert that any FOIA exemption would justify its withholding of responsive documents. Accordingly, the CFTC must expand its search to August 20-21.

## IV.    The Court Should Address the Scope of the CFTC's Review Now.

The CFTC mistakenly asserts that Plaintiff's motion is premature and that its search can only be challenged after it has completed its planned productions, on summary judgment. Dkt. No. 21 at 1-2. Here, the Court can determine that the CFTC's search is inadequate without waiting for its "fruits" (*i.e.,* the CFTC's productions), because the search omits a limited date range reasonably calculated to include relevant, non-exempt material. *Brennan Center*, 377 F. Supp. 3d at 433 (citing *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 144 (D.D.C. 2015) (quoting *Iturralde v.Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)) ("[T]he adequacy of a FOIA search is generally determined ***not by the fruits of the search, but by the appropriateness of the methods*** used to carry out the search.") (emphasis added). Given that the CFTC is obligated to promptly search for *all* documents relevant to Plaintiff's FOIA Requests, there is no reason for the Court to wait until later to compel the CFTC to fix this discrete problem, by expanding the scope of its search (which already spans several months) by just two days.

Moreover, the CFTC's argument that this motion is premature because the Court will have a full record on summary judgment—whereupon the CFTC will furnish declarations averring that its search was adequate—is meritless: unless the CFTC searches its records from these dates, it will lack any basis upon which to provide affidavits or declarations as to the contents of the documents or the applicability of any FOIA exemptions for those dates. *See Quinon v. F.B.I.*, 86

14

F.3d 1222, 1227 (D.C. Cir. 1996) ("The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.") (citations omitted).  The CFTC cannot engineer a summary judgment argument by failing to conduct a search in the first place and then accuse Plaintiff of "Monday-morning-quarterback[ing]" (Dkt. No. 21 at 1), particularly when it has been on notice of the deficiencies in its search from the very start.  Ex. A (Emails from Leanne Bortner, Dec. 19, 2019; Jan. 14, 2020).  Nor is the CFTC correct that Plaintiff is seeking discovery that will be obviated by the CFTC's affidavits later on; Plaintiff is asking that the CFTC be compelled to fix a search that is inadequate on its face.[5]

Lastly, there is no rule that the Court must wait for the CFTC to complete its productions before finding its search to be inadequate.  On the contrary, "FOIA imposes no limits on courts' equitable powers in enforcing its terms[,]" and "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses."  *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (quotation omitted).  Accordingly, now is an entirely appropriate time for the Court to compel the CFTC to expand the scope of its search to August 21.

Indeed, permitting the CFTC to complete its productions as planned would only result in waste of Court and party resources.  Under the CFTC's staggered search proposal, the parties and the Court would be required to engage in multiple rounds of briefing as to the completeness of the CFTC's production and the application of FOIA exemptions: once after the CFTC completes its

---

[5] Relatedly, the CFTC's reliance on *Carney* for the proposition that agency affidavits are sufficient to substantiate the adequacy of an agency search (Dkt. No. 21 at 1) is misplaced.  The plaintiff in *Carney* had asserted—without any specific details—that "the DOJ had failed to acknowledge the existence of 'huge classes' of records responsive to his FOIA requests[.]"  *See Carney*, 19 F.3d at 813.  In contrast, here, there is concrete evidence that the CFTC has omitted *two*, *specific* days that almost certainly capture relevant communications from its search without any articulable reason.

production on its initial searches (excluding August 20-21), and again after the CFTC completes

it production after its subsequent searches (covering August 20-21).  However, if the Court orders

the CFTC to add two days to its search now, as Plaintiff proposes, the parties and the Court would

avoid a second round of briefing altogether (since the CFTC would present its withholdings only

once, for the entire period ending on August 21).  Accordingly, there is good cause to compel the

CFTC to expand the scope of its search at this stage.

## **<u>CONCLUSION</u>**

For the reasons set forth herein, Plaintiff respectfully requests the Court to enter an Order

directing Defendants to extend the scope of their review to August 21, 2019.


Dated: May 1, 2020                                    Respectfully submitted,

<u>/s/ Benjamin J.A. Sauter          </u>
Benjamin J.A. Sauter
Michael S. Kim
Jonathan D. Cogan
George Stamatopoulos

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Benjamin.Sauter@kobrekim.com
Michael.Kim@kobrekim.com
Jonathan.Cogan@kobrekim.com
George.Stamatopoulos@kobrekim.com

David H. McGill
Leanne A. Bortner

KOBRE & KIM LLP
1919 M Street, NW
Washington DC 20036
Tel: +1 202 664 1900
David.McGill@kobrekim.com
Leanne.Bortner@kobrekim.com