IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KOBRE & KIM LLP,<br><br>        Plaintiff,<br><br>- v. -<br><br>COMMODITY FUTURES TRADING COMMISSION,<br><br>        Defendant. | Case No. 19-cv-10151 (LAK) (OTW)<br><br>Honorable Ona T. Wang |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF
MOTION TO COMPEL DEFENDANT TO EXTEND DOCUMENT SEARCH**

**KOBRE & KIM LLP**

Benjamin J.A. Sauter
Michael S. Kim
Jonathan D. Cogan
George Stamatopoulos

800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Benjamin.Sauter@kobrekim.com
Michael.Kim@kobrekim.com
Jonathan.Cogan@kobrekim.com
George.Stamatopoulos@kobrekim.com

David H. McGill
Leanne A. Bortner

1919 M Street, NW
Washington DC 20036
Tel: +1 202 664 1900
David.McGill@kobrekim.com
Leanne.Bortner@kobrekim.com

**TABLE OF CONTENTS**

**INTRODUCTION** ............................................................................................................................. 1
**ARGUMENT** .................................................................................................................................... 2

    I.    The CFTC's Search Is Facially Inadequate, As The CFTC Knew When It Began Its Search. ...................................................................................................................... 2

    II.   The Court Should Exercise Its Discretion Now And Order The CFTC To Expand Its Search. ...................................................................................................................... 6

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Immigration Council v. Executive Office for Immigration Review*,
    418 F. Supp. 3d 10 (S.D.N.Y. 2019) ................................................................................. 1, 2

*American Civil Liberties Union v. Dep't of Defense*,
    339 F. Supp. 2d 501 (S.D.N.Y. 2004) .................................................................................. 7

*Brennan Center for Justice at New York Univ. School of Law v. US Dep't of Justice*,
    377 F. Supp. 3d 428 (S.D.N.Y. 2019) ............................................................................... 2, 7

*Carney v. U.S. Dep't of Justice*,
    19 F.3d 807 (2d Cir. 1994) ................................................................................................ 7, 8

*Elec. Privacy Info. Center v. Dep't of Justice*,
    416 F. Supp. 2d 30 (D.D.C. 2006) ........................................................................................ 6

*Fox News Network, LLC v. U.S. Dep't of Treasury*,
    911 F. Supp. 2d 261 (S.D.N.Y. 2012) ................................................................................... 4

*Halpern v. Federal Bureau of Investigation*,
    181 F.3d 279 (2d Cir. 1999) .................................................................................................. 2

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) .............................................................................................................. 5

*Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*,
    Case No. 15-cv-02881 (N.D. Ill.) .......................................................................................... 6

*Lacks v. Fahmi*,
    623 F.2d 254 (2d Cir. 1980) .................................................................................................. 6

*Local 3, Int'l Bhd. Of Elec. Workers, AFL-CIO v. Nat'l Labor Relations Board*,
    845 F.2d 1177 (2d Cir. 1988) ................................................................................................ 5

*Memphis Publishing Co. v. Federal Bureau of Investigation*,
    190 F. Supp. 3d 1 (D.D.C. 2012) .......................................................................................... 7

*Nat'l Day Laborer Org. Network v. Immigration and Customs Enforcement Agency*,
    811 F. Supp. 2d 713 (S.D.N.Y. 2011) ................................................................................... 5

*Nat'l Day Laborer Org. Network v. Immigration and Customs Enforcement Agency*,
   877 F. Supp. 2d 87 (S.D.N.Y. 2012) .................................................................................. 1, 2

**Statutes**

5 U.S.C. § 552 ................................................................................................................................ 5

Plaintiff Kobre & Kim LLP respectfully submits this Reply in further support of its Motion to Compel the Defendant Commodity Futures Trading Commission ("CFTC") to extend its document search in response to Plaintiff's FOIA Requests.

## INTRODUCTION

Plaintiff seeks to compel the CFTC to expand the date range of its search by just two days (August 20-21, 2019) to capture documents and communications from the immediate aftermath of the CFTC's extraordinary decision to publish and then withdraw public press releases that spawned a contempt proceeding against a federal agency. Plaintiff expressly notified the CFTC **before** it began its search that these two days were critical, and during the ensuing meet and confer discussions on this precise issue the CFTC failed to provide any cogent justification for its refusal to search within these days. *See* Dkt. No. 25. The CFTC's cynical strategy is now apparent. Having willfully omitted critical dates from its search, the CFTC seeks to delay review until summary judgment, where it will argue that the Court should overlook this glaring omission in favor of the CFTC's search "as a whole." This Court should not allow the CFTC to avoid FOIA disclosures by burying its head in the sand. The CFTC is required to "conduct a search reasonably calculated to uncover *all* relevant documents," and this Court can and should compel the CFTC to do so here. *See Nat'l Day Laborer Org. Network v. Immigration and Customs Enforcement Agency*, 877 F. Supp. 2d 87, 102 (S.D.N.Y. 2012) ("*Nat'l Day Laborer Org. Network*") (emphasis in original) (internal quotations omitted); *Am. Immigration Council v. Executive Office for Immigration Review*, 418 F. Supp. 3d 10, 15 (S.D.N.Y. 2019) ("*Am. Immigration Council*").

**ARGUMENT**

I. **The CFTC's Search Is Facially Inadequate, As The CFTC Knew When It Began Its Search.**

The CFTC's search is inadequate on its face because it deliberately failed to follow leads that are virtually certain to uncover responsive materials. *Am. Immigration Council*, 418 F. Supp. 3d at 15 ("when a 'request demands all agency records on a given subject[,]' ... the agency is obliged to pursue any clear and certain lead [that] it cannot in good faith ignore.") (quoting *Halpern v. Federal Bureau of Investigation*, 181 F.3d 279, 288 (2d Cir. 1999)); *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 102 ("FOIA, however, requires that agencies conduct a search "reasonably calculated to uncover all relevant documents," not "most" relevant documents."). Plaintiff put the CFTC on notice about the importance of records from August 20-21 from the very beginning of this case, yet the CFTC simply refused to search those days. *See* Dkt. No. 25. In its Opposition, the CFTC does not even attempt to explain its refusal. *See Brennan Center for Justice at New York Univ. School of Law v. US Dep't of Justice*, 377 F. Supp. 3d 428, 434 (S.D.N.Y. 2019) ("*Brennan Center*") ("Where challenged, agencies have to explain why certain search terms, clearly relevant, were not used."). While the CFTC initially suggested in meet and confer discussions that searching these days would impose an "undue burden" (*See* Dkt. No. 25 at 5), it has now apparently abandoned that argument. Plaintiff's motion is not a question of "Monday-morning-quarterback[ing]," as the CFTC wrongly implies in its papers. Dkt. No. 26 at 12 n.6. This is a case of willful blindness by the CFTC.[1]

The CFTC asserts that an August 19 cut-off date is nonetheless reasonable because "each of the events referenced in Plaintiff's request…occurred on or before" that date. Dkt. No. 26 at 11.

---

[1] In its Opposition, the CFTC attempts to distract from this fatal flaw in its search by arguing that it is unclear who bears the burden in this motion, and that its search need not be "perfect." Dkt. No. 26 at 10-11. Even assuming these issues in the CFTC's favor, they do not suggest that the

2

The date of the event is not the legal standard. The established doctrine requiring production of "post-decisional" communications notwithstanding the deliberative process privilege confirms that an agency cannot arbitrarily cut off a FOIA search on the date of the event in question.

Nor is an August 19 cut-off date reasonably calculated to capture all relevant documents in this particular case. The CFTC downplays the significance of the August 19 decision to remove the press releases, asserting that the decision was reached "on the spot" by "one of the attorneys representing the CFTC in court." Dkt. No. 26 at 12-13. This explanation actually highlights why a search for communications on August 20-21 should be conducted. It is highly likely that an "on the spot" decision by a lone CFTC attorney to remove press releases *that CFTC Commissioners had publicly asserted a legal right and ethical duty to publish just days earlier*[2] would have sparked vigorous discussion within the agency. Indeed, one of the key points made by Commissioners Berkovitz and Behnam in their disputed press release was that they have a "statutory right" to voice their opinions about the *Kraft* settlement, and that "[t]he Commission cannot bargain this right away in settlement negotiations [and] courts are obligated to recognize it when crafting consent orders." Dkt. No. 1, Ex. A at 2. In addition, *Kraft* was covered by various news outlets on the days following the August 19 hearing, which further reinforces the conclusion that relevant discussions would have occurred within the CFTC on those days. *See e.g.*, Michael

---

CFTC can willfully ignore leads to relevant information when designing a search.

[2] The Statement of Commissioners Berkovitz and Behnam asserted that "**Commissioners, as public officials, must be able to explain** to Congress and the public the basis for the sanctions obtained, as well as the rationale for entering into a settlement agreement rather than pursuing litigation…**[I]t is critical that a Commissioner be able to speak publicly** about his or her reasons for determining that the law has been violated, why the agreed penalties are appropriate, and why the agency did not obtain findings of fact or proceed to trial. **The public has a right to know** whether federal agencies are obtaining appropriate remedies when the law is violated... Congress has recognized the importance of such unrestrained communications by providing Commissioners with a **statutory right to publicly state their views** on matters before the Commission." Dkt. No. 1, Ex. A at 1 (emphasis added).

3

W. Brooks and Robert E. Pease, *CFTC v. Kraft Dispute Continues with CFTC on Defensive*, Nat'l Law Review (Aug. 20, 2019), https://www.natlawreview.com/article/cftc-v-kraft-dispute-continues-cftc-defensive; Matt Levine, *Hire Banks to Look After Your Banks*, Bloomberg (Aug. 20, 2019), https://www.bloomberg.com/opinion/articles/2019-08-20/hire-banks-to-look-after-your-banks.

Under these circumstances, it is not "speculative" at all to assume that there would have been discussions on August 20-21 about the press releases, the CFTC attorney's decision to withdraw them, and the *Kraft* settlement. See Dkt. No. 26 at 12. Rather, it defies credibility for the CFTC to suggest that the Commissioners, their staffs, and other implicated CFTC employees would have remained silent during this unprecedented time. The CFTC is obligated to follow this lead in responding to Plaintiff's FOIA Requests.

Furthermore, the CFTC's suggestion that any materials from August 20-21 "go[] to the heart of the CFTC's litigation and settlement strategies in an ongoing enforcement proceeding" and are thus exempt under FOIA or privilege rules (Dkt. No. 26 at 1) is unsupported and baseless. There are potentially countless examples of responsive communications from that period that would not be privileged. For instance, communications among Commissioners Berkovitz and Behnam and/or their respective staffs about the press releases or the staff's unilateral decision to withdraw them likely would not be privileged. Likewise, such communications between the Commissioners or their staffs and other CFTC employees, such as public relations employees, likely would not be privileged. *See Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 277 (S.D.N.Y. 2012) (deliberative process privilege was inapplicable to e-mails concerning press relations that "consist[ed] entirely of ... advice regarding 'messaging,'" or "relate[d] to the massaging of [the entity's] public image."). The CFTC is not entitled to blanket

work-product protection just because some subset of communications with Enforcement Division lawyers might be protected.

In addition, the two particular FOIA exemptions the CFTC has invoked in its Opposition are unlikely to apply under the circumstances. First, the deliberate process privilege (FOIA Exemption 5) is unlikely to apply because communications on August 20-21 about the issuance of the press releases, the decision to withdraw them, and the existing *Kraft* settlement would have been post-deliberative by that time. *Nat'l Day Laborer Org. Network v. Immigration and Customs Enforcement Agency*, 811 F. Supp. 2d 713, 743 (S.D.N.Y. 2011) ("Any documents discussing those already formulated policies – even if in draft format, and even if containing 'deliberative' discussions of how to portray those policies to the public – are not protected by the deliberative process privilege[.]'"). Such communications also would not be "deliberative" to the extent they reveal factual information. *Local 3, Int'l Bhd. Of Elec. Workers, AFL-CIO v. Nat'l Labor Relations Board*, 845 F.2d 1177, 1180 (2d Cir. 1988) ("Purely factual material not reflecting the agency's deliberative process is not protected.").

Second, the law enforcement exemption (FOIA Exemption 7) is unlikely to apply because (a) the documents at issue were not "compiled for law enforcement purposes" and (b) their disclosure would not interfere with law enforcement proceedings or disclose law enforcement "techniques and procedures" in a way that would "reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7). The materials at issue involve contemporaneous communications, not assemblies of materials from various sources or documents. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989) ("A compilation, in its ordinary meaning, is something composed of materials collected and assembled from various sources or other documents."). Separately, it is far from clear how disclosure of such communications would

5

"interfere" with the *Kraft* litigation or risk "circumvention" of any law. The initial *Kraft* settlement was in effect and court-approved as of August 20-21 (Dkt. No. 24 at 13), and even though that settlement was later vacated by the court due to the CFTC's breach, it appears that the CFTC and Kraft have once again reached a new settlement.[3] There is no apparent reason why disclosure of information about the prior press releases would have any bearing on the current settlement.

Ultimately, the law does not require Plaintiff to guess at what types of CFTC records may or may not be exempt. The law requires the CFTC to provide the basis for any exemptions on a document-by-document basis in a detailed *Vaughn* index. Here, it is impossible for Plaintiff or the Court to evaluate any purported exemptions because the CFTC has refused even to look for documents from August 20-21. The CFTC cannot prove the applicability of any exemption without first searching its records.

## II. The Court Should Exercise Its Discretion Now And Order The CFTC To Expand Its Search.

This Court is not required to wait until summary judgment to direct the CFTC to search for documents on August 20-21. This Court has well-established discretion to ensure that the CFTC's search and production are adequate and timely. *See Lacks v. Fahmi*, 623 F.2d 254, 256 (2d Cir. 1980) ("a court operates with broad discretion when fashioning equitable relief") (citation omitted); *Elec. Privacy Info. Center v. Dep't of Justice*, 416 F. Supp. 2d 30, 36 (D.D.C. 2006) ("FOIA imposes no limits on courts' equitable powers in enforcing its terms and unreasonable

---

[3] The CFTC's Opposition fails to mention that the CFTC and Kraft have apparently reached a new settlement, which cuts against any suggestion that production of documents concerning the decision to withdraw the press releases would in any way risk an ongoing enforcement action. *See* Response to Mot. for Relief, *Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*, Case No. 15-cv-02881, Dkt. No. 389 at 1 (N.D. Ill. March 19, 2020) ("The Court has not approved the parties' proposed consent order, in part because the Court requested that the parties revisit certain provisions following its contempt ruling.").

6

delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses.") (citation and quotations omitted); *see also American Civil Liberties Union v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) (FOIA requires agencies to "promptly . . . produce requested documents, or . . . justif[y] why the documents may be exempt from production."). The CFTC fails to cite any authority purporting to limit this discretion or otherwise requiring the Court to wait until summary judgment before ordering the CFTC to fix its facially deficient search.[4]

The CFTC's citation to *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) does not support the CFTC's position. *See* Dkt. No. 26 at 2, 6-7. First and foremost, *Carney* did not involve a willful failure by an agency to pursue a known lead that was clearly and unambiguously brought to its attention as it was designing its search. That alone distinguishes *Carney* from this case.

Second, nothing in *Carney*—nor any other case of which Plaintiff is aware—confines challenges to an agency search to the summary judgment stage. Unlike Plaintiff's motion here, *Carney* did not involve a motion to compel before summary judgment, nor did it involve a challenge to the parameters of an agency search based on the agency's knowing failure to follow leads reasonably calculated to uncover relevant materials. Rather, the plaintiff in *Carney* asserted

---

[4] The CFTC erroneously asserts that the cases Plaintiff cites "in no way suggest that the adequacy of the government's search in a FOIA case can be decided via a motion to compel prior to summary judgment briefing." Dkt. No. 26 at 8. For example, in *Brennan Center*, 377 F. Supp. 3d at 436 the court granted the plaintiff's motion (Dkt. No. 75), styled as a motion to compel, explaining the "agency's choice of search terms is not conclusive" and ordering the agency to amend them. *Id.* at 434. Likewise, courts have granted motions to compel agencies to produce information before summary judgment, particularly where—as here—that information was needed to challenge an agency's exemption claims. *See Memphis Publishing Co. v. Federal Bureau of Investigation*, 190 F. Supp. 3d 1, 3-4 (D.D.C. 2012) (court granted motion to compel FBI to produce a *Vaughn* index before summary judgment so that plaintiff could "participate in briefing the key questions and assist the Court in ruling on the availability of the claimed exemptions").

after the fact that the agency had concealed numerous responsive documents, on the purported basis of supposedly confidential information the plaintiff could not divulge, received through interviews of individuals he could not name. *Carney*, 19 F.3d at 813 ("Although his information allegedly was gained through over one hundred interviews and significant academic research, Carney does not identify, by name, title or otherwise, any of the individuals he interviewed, nor does he point to any of the published sources on which he supposedly relies."). Unlike the motion in *Carney*, which was based on bald, post hoc speculations that the agency was concealing documents, Plaintiff's position here (1) was made known to the CFTC from the very outset; (2) focuses on a discrete and unambiguous flaw in the CFTC's search (an arbitrary cut-off date that would carve out highly relevant documents); (3) is narrowly tailored to specific dates (August 20-21); and (4) is based on leads that are clearly identifiable in the record (the events of and leading up to August 19).

Third, under *Carney*, an agency may sustain its burden through "[a]ffidavits or declarations" only if it supplies "facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption[.]" *Carney*, 19 F.3d at 812. Here, the CFTC has failed to search for responsive documents from August 20-21. Nor has the CFTC submitted any affidavits that explain much less excuse its flagrant refusal to conduct such a search. While the CFTC did attach an attorney declaration to its Opposition, that declaration addresses only the scope of the search the CFTC agreed to conduct, not the reasons why it refused to search within August 19-20 in the first place. Thus, even under *Carney*, the CFTC lacks the evidentiary basis that would be required to meet its burden, and its search is facially inadequate.

Lastly, the CFTC's assertion that this is not a true motion to compel but a motion seeking judgment on the merits as to the adequacy of the CFTC's search is misplaced. *See* Dkt. No. 26 at 7. Contrary to the CFTC's assertion that Plaintiff wants "two bites of the apple" (Dkt. No. 26 at 9), Plaintiff has agreed to nearly all of the CFTC's search parameters,[5] and the only parameter still at issue is the CFTC's arbitrary August 19 cut-off date, which appears calculated to exclude highly relevant, non-privileged communications. This discrete issue would be best and most expediently resolved through a motion to compel, which is well within the Court's discretion. If the Court orders the CFTC to expand its search to cover these two additional days, the only currently anticipated issue remaining for summary judgment will be the CFTC's claimed exemptions, which could likely be resolved in a single round of briefing. In contrast, under the CFTC's approach, the CFTC will have to expand the date range for its search after summary judgment—to cure the search's facial deficiencies—and then the Parties will have to engage in additional briefing about the applicability of any exemptions as to August 20-21.

The CFTC's approach is wasteful and runs contrary to the letter and policy of FOIA. The Court can and should exercise its discretion and order the CFTC to cure this deficiency in its search now.

---

[5] Referencing the Parties' joint letter to the Court (Dkt. No. 17), the CFTC appears to suggest that there is something improper about Plaintiff reserving its rights to review the CFTC's production before raising objections, as though the Plaintiff were in a position to predict the quality of the CFTC's production and the appropriateness of its withholdings. *See* Dkt. No. 26 at 9-10. However, the CFTC fails to mention that Plaintiff has agreed with the CFTC's search with respect to "all but one issue." Dkt. No. 17 at 1.

Dated: May 22, 2020

Respectfully submitted,

/s/ Benjamin J.A. Sauter
Benjamin J.A. Sauter
Michael S. Kim
Jonathan D. Cogan
George Stamatopoulos

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Benjamin.Sauter@kobrekim.com
Michael.Kim@kobrekim.com
Jonathan.Cogan@kobrekim.com
George.Stamatopoulos@kobrekim.com

David H. McGill
Leanne A. Bortner

KOBRE & KIM LLP
1919 M Street, NW
Washington DC 20036
Tel: +1 202 664 1900
David.McGill@kobrekim.com
Leanne.Bortner@kobrekim.com