UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

KOBRE & KIM LLP,

                 Plaintiff,

     -v-

COMMODITY FUTURES TRADING
COMMISSION,

              Defendant.

-------------------------------------------------------- x

        Case No. 19 Civ. 10151 (LAK) (OTW)


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-3274
Fax: (212) 637-2786
E-mail: rachael.doud@usdoj.gov

RACHAEL L. DOUD
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT…………………………………………..………………………...1

BACKGROUND……………………………………………………………………………….…3

ARGUMENT……………………………………………………………………………………...7

I.   THE CFTC CONDUCTED AN ADEQUATE SEARCH………………………….…….…8

     A.  Applicable Legal Standards…………………………………………………..…..……8

     B.  The CFTC's Search Was Adequate…………………………………………………...9

II.  THE CFTC'S ASSERTED EXEMPTIONS ARE JUSTIFIED…………………...…11

     A.  Applicable Legal Standards…………………………………………...………...11

     B.  The Exemptions Are Justified…………………………………………...…………......12

          1.   The CFTC Has Properly Asserted Exemption 5………………….…..….…..13

               a.   Legal Standard…………………………………………..…………...13

               b.   Application…………………………………………….………………16

          2.   The CFTC Has Properly Asserted Exemption 7……..……………………….…18

               a.   Legal Standard……………………………………….…………......18

               b.   Application……………………………………………..………19

CONCLUSION……………………………………………………………….…..…22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adamowicz v. I.R.S.*,
552 F. Supp. 2d 355 (S.D.N.Y. 2008)....................................................................................... 8

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*,
626 F.3d 678 (2d Cir. 2010)................................................................................................... 19

*American Civil Liberties Union of Northern California v. Dep't. of Justice*,
Case No. 13–cv–03127–MEJ, 2015 WL 3793496 (N.D. Ca., Jun. 17, 2015)...................... 9-10

*Amnesty Int'l USA v. CIA*,
728 F. Supp. 2d 479 (S.D.N.Y. 2010)................................................................................... 15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................................. 7

*Bishop v. Dep't of Homeland Sec.*,
45 F. Supp. 3d 380 (S.D.N.Y. 2014)..................................................................................... 19

*Brennan Ctr. for Justice v. U.S. Dep't of Justice*,
697 F.3d 184 (2d Cir. 2012)........................................................................................... 13, 17

*Brinton v. Dep't of State*,
636 F.2d 600 (D.C. Cir. 1980)............................................................................................... 18

*Carney v. U.S. Dep't of Justice*,
19 F.3d 807 (2d Cir. 1994)....................................................................................... 7, 8, 9, 11

*Cause of Action v. IRS*,
125 F. Supp. 3d 145 (D.D.C. 2015)....................................................................................... 18

*Cheney v. United States District Court*,
542 U.S. 367 (2004)................................................................................................................. 5

*CIA v. Sims*,
471 U.S. 159 (1985)............................................................................................................... 11

*Cities Serv. Co. v. FTC*,
627 F. Supp. 827 (D.D.C. 1984)........................................................................................... 17

*In re Cnty. of Erie*,
473 F.3d 413 (2d Cir. 2007)................................................................................................... 14

ii

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ............................................................... 15

*Color of Change v. DHS*,
    325 F. Supp. 3d 447 (S.D.N.Y. 2018) ...................................................... 15

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ..................................................................................... 11

*FTC v. Grolier Inc.*,
    462 U.S. 19 (1983) ................................................................................... 15

*Garcia v. U.S. Dep't of Justice*,
    181 F. Supp. 2d 356 (S.D.N.Y. 2002) ....................................................... 8

*Gov't Accountability Project v. U.S. Dep't of Justice*,
    852 F. Supp. 2d 14 (D.D.C. 2012) .......................................................... 14

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) ..................................................... 7, 8, 13, 15

*GTE Sylvania, Inc. v. Consumers Union of the United States*,
    445 U.S. 375 (1980) ................................................................................. 13

*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999) ................................................................... 11

*Hopkins v. HUD*,
    929 F.2d 81 (2d Cir. 1991) ............................................................... 13, 15

*Immigrant Defense Project v. U.S. Immigration*,
    208 F. Supp. 3d 520 (S.D.N.Y. 2016) ................................................. 2, 11

*In re Grand Jury Investigation*,
    399 F.3d 527 (2d Cir. 2005) ................................................................... 14

*In re Grand Jury Subpoena Dated July 6, 2005*,
    510 F.3d 180 (2d Cir. 2007) ............................................................. 14, 17

*In re Subpoena to U.S. Attorney's Office, Southern District of New York*,
    No. M 8-85-BSJ, 2000 WL 45726 (S.D.N.Y. Jan. 20, 2000) ............ 20, 21

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ................................................................................. 11

*Judicial Watch, Inc. v. Export-Import Bank,*
    108 F. Supp. 2d 19 (D.D.C. 2000) ........................................................... 8

*Judicial Watch, Inc. v. U.S. Dep't of Justice,*
    800 F. Supp. 2d 202 (D.D.C. 2011) ........................................................ 14

*Keys v. Dep't of Justice,*
    830 F.2d 337 (D.C. Cir. 1987) ............................................................... 18

*Liberation Newspaper v. U.S. Dep't of State,*
    80 F. Supp. 3d 137 (D.D.C. 2015) .......................................................... 10

*Long v. Office of Pers. Mgmt.,*
    692 F.3d 185 (2d Cir. 2012) ............................................................... 7, 8

*M/A Com Info. Sys., Inc. v. U.S. Dep't of Health & Human Servs.,*
    656 F. Supp. 691 (D.D.C. 1986) ............................................................ 21

*Martin v. Dep't of Justice,*
    488 F.3d 446 (D.C. Cir. 2007) ............................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .............................................................................. 7

*Maynard v. C.I.A.,*
    986 F.2d 547 (1st Cir. 1993) ................................................................. 9

*N.Y. Times Co. v. U.S. Dep't of Justice,*
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) ................................................. 7, 11

*N.Y. Times Co. v. U.S. Dep't of Justice,*
    390 F. Supp. 3d 499 (S.D.N.Y. 2019) ............................................... 18, 20

*N.Y. Times Co. v. U.S. Dep't of Justice,*
    756 F.3d 100 (2d Cir. 2014) .................................................................. 8

*N.Y. Times Co. v. U.S. Dep't of Justice,*
    939 F.3d 479 (S.D.N.Y. 2019) .............................................................. 14

*N.Y. Times v. U.S. Dep't of Justice,*
    101 F. Supp. 3d 310 (S.D.N.Y. 2015) .................................................... 7

*Nat'l Council of La Raza v. U.S. Dep't of Justice,*
    339 F. Supp. 2d 572 (S.D.N.Y. 2004) ................................................... 16

*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. FDIC,*
　　Civ. A. No. 93–2471–GTV, 1995 WL 104835 (D. Kan. March 7, 1995) ......................... 20, 21

*NLRB v. Sears, Roebuck & Co.,*
　　421 U.S. 132 (1975) ................................................................................................. 13, 15

*Nova Oculus Partners, LLC v. SEC,*
　　No. 19-cv-666 (DLF), 2020 WL 5095485 (S.D.N.Y. Aug. 28, 2020) ..................................... 13

*Odland v. Fed. Energy Reg. Comm'n,*
　　34 F. Supp. 3d 3 (D.D.C. 2014) ................................................................................... 17

*Sack v. Dep't of Def.,*
　　823 F.3d 687 (D.C. Cir. 2016) ..................................................................................... 18

*Scotto v. Almenas,*
　　143 F.3d 105 (2d Cir. 1998) .......................................................................................... 7

*SEC v. Yorkville Advisors, LLC,*
　　300 F.R.D. 152 (S.D.N.Y. 2014) .................................................................................... 22

*Tax Analysts v. IRS,*
　　117 F.3d 607 (D.C. Cir. 1997) ...................................................................................... 14

*Tigue v. Dep't of Justice,*
　　312 F.3d 70 (2d Cir. 2002) ..................................................................................... 13, 15

*United States v. Adlman,*
　　134 F.3d 1194 (2d Cir. 1999) ....................................................................................... 14

*United States v. Alex. Brown & Sons, Inc.,*
　　169 F.R.D. 532 (S.D.N.Y. 1996) ................................................................................... 21

*Wilner v. NSA,*
　　592 F.3d 60 (2d Cir. 2009) .......................................................................................... 12

**Statutes**

5 U.S.C. § 552 ........................................................................................................... 1, 11

5 U.S.C. § 552(b)(5) ...................................................................................................... 6, 13

5 U.S.C. § 552(b)(7)(A) ............................................................................................... 18, 20

5 U.S.C. § 552(b)(7)(E) ................................................................................................... 19

**Rules**

Fed. R. Civ. P. 26(b)(3)............................................................................................................... 14

Fed. R. Civ. P. 56(a) ................................................................................................................... 7

Defendant Commodity Futures Trading Commission ("CFTC") respectfully submits this memorandum of law in support of its motion for summary judgment in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

In the FOIA request at issue in this case (the "Request"), Plaintiff seeks, *inter alia*, documents concerning a settlement agreement previously entered into but later vacated in an ongoing enforcement proceeding against Kraft Foods Group, Inc. and Mondelez Global LLC (collectively, "Kraft"), including documents and communications concerning the CFTC's decision to approve the agreement and the decisions of the CFTC and certain Commissioners to publish certain statements regarding the settlement.  According to Plaintiff, the Request is intended to "shed light" on the CFTC's reasons for agreeing to settle the case on the terms that it did.  (Complaint (Dkt. No. 1) ¶ 2.)  In short, the Request seeks documents going to the heart of the CFTC's litigation and settlement strategies in an active enforcement proceeding and thus implicates multiple FOIA exemptions.

Despite requests from the CFTC, Plaintiff has not identified what non-exempt documents it would hope to receive in response to the Request.  Nonetheless, the CFTC conducted a comprehensive search for records responsive to the Request and produced 1,873 documents. Predictably, given the nature of the Request, the CFTC has asserted FOIA exemptions related to certain of those records.  Those exemptions generally fall into three categories.  First, certain records are protected by the attorney-client and/or work product privileges, because they consist of communications with and among, and draft documents drafted and exchanged by, attorneys related to the litigation with Kraft.  Additionally, certain records are protected by the deliberative process privilege because they reflect predecisional deliberations regarding the CFTC's approach in connection with that proceeding.  Finally, certain records or portions thereof were withheld

because of their potential to interfere with the ongoing *Kraft* enforcement proceeding.

In this case, the parties came to an agreement on every part of the search protocol except one: the date range of the search.  The CFTC ended the search on August 19, 2019, and Plaintiff wanted an additional two days on the end, to August 21, 2019. (*See* Declaration of Rosemary Bajorek ("Bajorek Declaration" or "Bajorek Decl.") ¶¶ 14-15.)  Because Plaintiff agreed to the rest of the search protocol, adding two days to the end of the date range was Plaintiff's only challenge to the adequacy of the search.[1]  But the search was adequate to August 19 because Plaintiff's FOIA request sought information regarding events that ended on August 19 with the CFTC's removal of the press releases at issue from its website.  And while Plaintiff claims it is entitled to information that post-dates August 19 because it could contain post-deliberative information, that speculates both that post-deliberative information exists and that, if it did, it would not be pre-deliberative with respect to the ongoing enforcement action as well as, like the majority of the documents at issue, subject to a number of other privileges—and thus non-disclosable anyway.   Thus, the CFTC's search was "reasonably calculated to discover requested documents," *Immigrant Defense Project v. U.S. Immigration*, 208 F. Supp. 3d 520, 527 (S.D.N.Y. 2016) (citation omitted), and the CFTC is entitled to summary judgment.

The Court should also grant the CFTC summary judgment with respect to its claimed exemptions.  Plaintiff's Request seeks documents that, by their very nature, implicate several privileges, and the CFTC's claimed exemptions on that basis are entirely proper.

---

[1] On May 1, 2020, Plaintiff filed what it described as a "motion to compel" the CFTC to expand its search to cover these two additional days.  (Dkt. No. 23.)  For the reasons discussed in the CFTC's opposition to that motion (Dkt. No. 26), that motion was premature and procedurally improper, in addition to failing on the merits.  In any event, that motion has not been decided and is now moot.

**BACKGROUND**

This case arises from an August 21, 2019, FOIA request in which Plaintiff seeks various categories of documents relating to a settlement agreement entered into by the CFTC in an enforcement action against Kraft filed in the Northern District of Illinois:  *Commodity Futures Trading Commission v. Kraft Foods Grp., Inc.*, Case No. 15-cv-02881 (N.D. Ill.).

The CFTC, which was created in 1974, is an independent agency that regulates the U.S. derivatives markets, which includes futures, swaps, and certain kinds of options.  (Bajorek Decl. ¶ 9.) The Commission consists of five Commissioners appointed by the President of the United States to serve staggered five-year terms.  (*Id.*)  The CFTC's Division of Enforcement investigates and prosecutes alleged violations of the Commodity Exchange Act and CFTC regulations.  (*Id.* ¶ 10)  The Division of Enforcement may, at the direction of the Commission, file complaints in the U.S. District Courts.  (*Id.*)  The Commission oversees the Division of Enforcement's litigation, and the Division of Enforcement regularly advises the Commission as to its proposed, pending, and completed litigation and settlements.  (*Id.* ¶ 11.)  All settlements of CFTC claims in litigation must be approved by a majority vote of the Commissioners.  (*Id.*)

The CFTC filed suit against Kraft in the United States District Court for the Northern District of Illinois on April 1, 2015.  On March 22, 2019, the CFTC and Kraft reached an agreement in principle to settle the case (which the court described as a "binding agreement") at a settlement conference held before the court.[2]  *Kraft*, Case No. 15-cv-02881, Dkt. No. 302.  The court directed the parties to submit a proposed consent order to the court before the next court date.  *Id.*  The parties subsequently submitted a proposed consent order, which the court entered

---

[2] While the *Kraft* court described the agreement in principle as a "binding agreement," an agreement does not bind the Commission until it is approved by a majority vote of the Commissioners, which had not occurred on March 22, 2019.

on August 14, 2019.  *Id.*, Dkt. No. 310.  On August 15, 2019, the CFTC issued a statement

regarding the settlement, as well as a press release announcing the settlement.  *Kobre & Kim LLP*

*v. Commodities Futures Trading Comm'n*, Case No. 19-cv-10151 (LAK) (OTW), Dkt. No. 1,

Ex. B; *see generally id.* Dkt. No. 16.  Additionally, two CFTC Commissioners, Commissioner

Dan Berkovitz and Commissioner Rostin Behnam, issued their own joint statement regarding the

settlement.  *Id.*, Dkt. No. 1, Ex. A (together with the CFTC's statement and press release, the

"August 15, 2019, Press Releases").

On August 16, 2019, Kraft filed a motion for contempt, arguing that the CFTC had

violated the settlement agreement by issuing the August 15, 2019, Press Releases.  *Kraft*, Case

No. 15-cv-02881, Dkt. No. 316.  On August 19, 2019, the court held an emergency status

hearing on Kraft's motion.  *Id.*, Dkt. No. 319.  At the hearing, the court asked the CFTC if it

would agree to remove the August 15, 2019, Press Releases from its website pending a decision

on the motion for contempt, and an attorney for the CFTC agreed on the record to do so.  *Id.*;

Dkt. No. 326 at 31.  The court took Kraft's contempt motion under advisement and scheduled a

hearing for September 12, 2019, at which it ordered Heath Tarbert, the Chairman of the CFTC,

and Commissioners Berkovitz and Behnam, as well as certain of their staff members, to appear

in person to be questioned.  *Id.*, Dkt. No. 326.  The CFTC subsequently filed a motion to vacate

the evidentiary hearing and a petition for a writ of mandamus to the Court of Appeals for the

Seventh Circuit to prevent the district court from requiring the Chairman, Commissioners, and

staff to testify at the hearing.  *See id.*, Dkt. No. 354.  The Seventh Circuit granted the petition for

mandamus, directing the district court to drop its demand that the Chairman and Commissioners

testify.  *Id*.  In so directing, the Seventh Circuit reasoned that "[j]udicial review of an agency's

decision is limited to the agency's official acts and the administrative record in all but the most

extraordinary situations," and that "[o]ne important reason for that rule is that intra-agency deliberations are covered by multiple privileges, as *Cheney [v. United States District Court*, 542 U.S. 367 (2004)] and other decisions explain." *Id.* at 6. The Seventh Circuit also directed the district court to desist from any effort to hold the Chairman, the Commissioners, or staff members personally in contempt. *Id.*

In response to the Seventh Circuit's decision, on October 23, 2019, the district court vacated the settlement agreement between the CFTC and Kraft. *Kraft*, Dkt. No. 355. Both Kraft's motion for contempt and the enforcement case as a whole remain pending.

Plaintiff's FOIA request seeks documents concerning: (i) the "binding agreement" referenced by the court in *Kraft,* docket entry 302, on March 22, 2019 (Request Part 1); (ii) documents concerning the August 14, 2019, consent order, including "documents and communications concerning the decision by the CFTC . . . to approve the Consent Order," the decision by the CFTC to approve the consent order "without findings of fact and conclusions of law," and the decision by the CFTC to approve a particular provision of the consent order restricting comments on the consent order (Request Parts 2-5); (iii) documents concerning the "preparation" of and "decision . . . to publish" the August 15, 2019, Press Releases (Request Parts 6-7); and (iv) documents concerning the CFTC's "decision" to remove the press releases from its website on August 19, 2019 (Request Part 8).

In order to respond to the Request, the CFTC undertook three searches. (Bajorek Decl. ¶ 14.) The first search applied to the documents of various personnel in the CFTC's Division of Enforcement and covered the period from February 26, 2019, through August 19, 2019. (*Id.* & Ex. 2.) The second search applied to the documents of the Commissioners and their staff and covered the period from March 21, 2019, through August 19, 2019. (*Id.*) The third search

applied to the documents of various personnel at the CFTC's Office of the General Counsel and Office of Public Affairs and covered the period from June 27, 2019, through August 19, 2019. (*Id.*)   Collectively, these searches included the documents of forty-five custodians.   (*Id.*)   In performing the searches, the CFTC used a set of comprehensive search terms including terms proposed by the CFTC and terms proposed by Plaintiff.   (*Id.*)   The CFTC made monthly productions on a rolling basis, starting in February 2020, with productions completed as of July 30, 2020.   (*Id.* ¶ 18.)   In total, the CFTC reviewed 26,438 documents, and identified as responsive and produced 1,873 documents, some of which were redacted in full or in part.   (*Id.* ¶¶ 16-18.)

In connection with this motion, the CFTC has produced a Vaughn index (the "Index") describing the documents that have been withheld or redacted.   As the Index demonstrates, 1,262 emails and attachments were redacted in full or in part.   The vast majority of these withholdings were made pursuant to 5 U.S.C. § 552(b)(5) and (b)(7).   The basis for these withholdings is provided in both the Index and the Bajorek Declaration.

As articulated in the Bajorek Declaration and set forth in the Index, these withholdings generally fall into four categories:

1) Internal communications regarding the settlement with Kraft and the draft consent order, which was ultimately approved and submitted to the Court on August 14, 2019, including draft and/or internal memoranda reflecting recommendations and advice by CFTC attorneys to the Commission or CFTC staff regarding settlement negotiations and advice regarding settlement.   These documents are redacted in part or in full pursuant to the attorney-client, attorney work product and deliberative process privileges under FOIA Exemption 5 and the law enforcement privilege under FOIA Exemption 7;

2) Internal communications regarding the drafting, review, and approval of the August 15, 2019, Press Releases, including drafts of those press releases.   These documents are redacted in part or in full pursuant to the attorney-client, attorney work product and deliberative process privileges under FOIA Exemption 5 and the law enforcement privilege under FOIA Exemption 7;

3) Internal communications regarding the contempt motion filed by Kraft on August 16, 2019, and the CFTC's response thereto, including drafts of pleadings and proposed orders. These documents are redacted in part or in full pursuant to the attorney-client, attorney work product and deliberative process privileges under FOIA Exemption 5 and the law enforcement privilege under FOIA Exemption 7; and

4) Documents reflecting settlement negotiations with Kraft's counsel, including communications regarding and drafts of the consent order. These documents are redacted in part or in full pursuant to FOIA Exemption 7(A) on the basis that they could reasonably be expected to interfere with the ongoing *Kraft* enforcement proceeding.

(Bajorek Decl. ¶¶ 21-24.)

## ARGUMENT

Summary judgment is the preferred procedural vehicle by which most FOIA claims are resolved. *N.Y. Times v. U.S. Dep't of Justice*, 101 F. Supp. 3d 310, 317 (S.D.N.Y. 2015); *see also Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) ("In resolving summary judgment motions in [] FOIA case[s], a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence . . . .");[3] *see also, e.g.*, *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is warranted if a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party, however, may not rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "Affidavits or declarations

---

[3] The CFTC has not submitted a Local Rule 56.1 statement. "The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and Local Civil Rule 56.1 statements are not required." *N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotations marks and alterations omitted).

supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812.  In this case, the CFTC has met its burden of establishing the reasonableness of its searches and the propriety of its claimed exemptions.

## I.   THE CFTC CONDUCTED AN ADEQUATE SEARCH

### A.  Applicable Legal Standards

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate."  *Long*, 692 F.3d at 190 (quoting *Carney*, 19 F.3d at 812).  A search is judged by the efforts the agency undertook, not by its results.  *See Grand Cent. P'ship, Inc.*, 166 F.3d at 489.  In other words, the agency must simply demonstrate that its search was "reasonably calculated to discover the requested documents." *Id.*; *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014) ("The adequacy of a search is not measured by its results, but rather by its method.").  The search "need not be perfect, but rather need only be reasonable," *Grand Cent. P'ship*, 166 F.3d at 489, because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (citation omitted).  An agency's search may be reasonable even if it does not return every responsive document.  *See Adamowicz v. I.R.S.*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008).  "If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue."  *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002).

An agency may satisfy its burden of demonstrating an adequate search through "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough

search." *Carney*, 19 F.3d at 812 (footnote omitted).  Such declarations may be made by the individuals supervising each agency's search, rather than by each individual who participated. *Id.* at 814.  Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812.  "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption. *Carney*, 19 F.3d at 813.  Thus, a court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Id.* at 812.

### B.  The CFTC's Search Was Adequate

As detailed in the Bajorek Declaration, the CFTC searched the records of forty-five custodians across multiple components, using search terms provided by both the CFTC and Plaintiff and spanning the period from February 26, 2019, through August 19, 2019.  (*See supra* at 5-6; Bajorek Decl. ¶ 14 & Ex. 2.)  The CFTC selected this end date for its search because each of the events referenced in Plaintiff's request—the agreement in principle to enter into a settlement agreement on March 22, 2019; the drafting and negotiation of the consent order with Kraft, which was entered by the court on August 14, 2019; the preparation of and decision to publish the August 15, 2019, Press Releases; and the decision to remove the press releases at the court's request on August 19, 2019—occurred on or before August 19, 2019.  (Bajorek Decl. ¶ 15.)

That the CFTC should have used a slightly longer timeframe—to August 21, 2020—is Plaintiff's only objection to the adequacy of the search and thus the only adequate search issue for the Court to decide.  *See*, *e.g.*, *American Civil Liberties Union of Northern California v.*

*Dep't. of Justice*, Case No. 13–cv–03127–MEJ, 2015 WL 3793496, at *5 (N.D. Ca., Jun. 17, 2015) (explaining that, when parties agree to the scope and methods of the search, the only issue for the court is whether records were properly withheld).  In its improper motion to compel, Plaintiff argued that the CFTC should have searched for documents from these two days because the CFTC's decision to remove the August 15, 2019, Press Releases from its website on August 19, 2019, constituted a "dramatic change in course" suggesting the likelihood of "post-decisional discussions" about the decision in the days that follow.  (Dkt. No. 24 at 15.)  In fact, however, the reason for the CFTC's decision to remove the press releases is apparent based on public filings in the *Kraft* case:  Kraft filed a motion for contempt on the basis of the press releases, and on August 19, 2019, the Court asked at a status hearing whether the CFTC would agree to remove the press releases from its website while the motion was being decided and the CFTC agreed that it would.  (*Kraft*, Dkt. No. 326 at 31.)  Particularly given the nature of this "decision"—*i.e.*, an agreement on the spot to do what the court asked—Plaintiff's assertion that the CFTC likely had discussions about that decision in the following two days is entirely speculative.  *See Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 144 (D.D.C. 2015) ("speculation as to the potential results of a different search does not necessarily undermine the adequacy of the agency's actual search").  Plaintiff's assertion that any responsive records that might exist from August 20 and 21 would "almost certainly" be "non-privileged" and "post-decisional" (Dkt. No. 24 at 6) is also speculative and likely wrong given that the CFTC was still engaged in an active enforcement proceeding at that time (as it is now) and the majority of documents responsive to any of Plaintiff's requests are covered by multiple privileges.

The CFTC's decision regarding the date ranges for its search—as well as the other search parameters—was entirely reasonable, and the fact that Plaintiff would have preferred a slightly

different search does nothing to alter that.  *See, e.g.*, *Immigrant Defense Project*, 208 F. Supp. 3d at 527 ("FOIA does not give requesters the right to Monday-morning-quarterback the agency's search.").

## II.   THE CFTC'S ASSERTED EXEMPTIONS ARE JUSTIFIED

### A.  Applicable Legal Standards

The Freedom of Information Act, 5 U.S.C. § 552, represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'"  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)); *N.Y. Times Co.*, 872 F. Supp. 2d at 314.  Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest," *CIA v. Sims*, 471 U.S. 159, 166-67 (1985), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *see also Martin v. Dep't of Justice*, 488 F.3d 446, 453 (D.C. Cir. 2007) ("Recognizing, however, that the public's right to information was not absolute and that disclosure of certain information may harm legitimate governmental or private interests, Congress created several exemptions to FOIA disclosure requirements."); *John Doe Agency*, 493 U.S. at 152 (FOIA exemptions are "intended to have meaningful reach and application").

On summary judgment, the government meets its burden of demonstrating that it properly withheld documents if it produces declarations "giving reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812.  An agency's declarations in support of its withholdings are "accorded a presumption of good faith." *Id.*; *see also Halpern v. FBI*, 181 F.3d 279, 295 (2d Cir. 1999).  "[A]n agency's justification for invoking

a FOIA exemption is sufficient if it appears logical or plausible." *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (citation and internal quotation marks omitted).

### B.  The Exemptions Are Justified

As reflected in the accompanying Index and Bajorek Declaration, the CFTC has asserted that various documents are protected from disclosure under Exemption 5, pursuant to the attorney-client, work product, and deliberative process privileges, and under Exemption 7, pursuant to the law enforcement privilege.  These documents generally fall into four categories: (i) internal communications regarding the settlement with Kraft and the draft consent order, which was ultimately approved and submitted to the Court on August 14, 2019, including draft and/or internal memoranda reflecting recommendations and advice by CFTC attorneys to the Commission or to CFTC staff regarding settlement negotiations and advice regarding settlement; (ii) internal communications regarding the drafting, review, and approval of the August 15, 2019, Press Releases, including drafts thereof; (iii) internal communications regarding the contempt motion filed by Kraft on August 16, 2019, and the CFTC's response thereto, including drafts of pleadings and proposed orders; and (iv) documents reflecting settlement negotiations with Kraft's counsel, including communications regarding and drafts of the consent order.   As discussed below, these documents—all of which reflect the CFTC's communications and negotiations in connection with an ongoing enforcement action and the majority of which consist of privileged communications with counsel—are precisely the type of records the FOIA exemptions are meant to protect, and the CFTC's assertion of those exemptions with respect to these documents is proper.[4]

---

[4] In addition, a small number of documents contain redactions of information such as personal cell phone numbers and internal conference lines and computer drive locations.  (*See* Bajorek Decl. ¶¶ 25-27.)  This information is withheld pursuant to FOIA Exemption (b)(6) or (b)(7)(E) to

### 1.   The CFTC Has Properly Asserted Exemption 5

#### a.   Legal Standard

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  "By this language, Congress intended to incorporate into the FOIA all the normal civil discovery privileges."  *Hopkins v. HUD*, 929 F.2d 81, 84 (2d Cir. 1991).  "Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.*, attorney-client, work-product, [the deliberative process] privilege) are protected from disclosure under Exemption 5."  *Tigue v. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (quoting *Grand Cent. P'ship*, 166 F.3d at 481); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) (FOIA exemption 5 applies to documents normally privileged in the civil discovery context).

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance."  *Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012) (internal citations and alteration omitted).  "In a governmental setting, the 'client' may be the agency and its 'attorney' the agency lawyer."  *Nova Oculus Partners, LLC v. SEC*, No. 19-cv-666 (DLF), 2020 WL 5095485, at *6 (S.D.N.Y. Aug. 28,

---

protect against unwarranted invasions of personal privacy or because the disclosure of the information would increase the risk of unauthorized access to agency staff conference lines and internal CFTC IT systems.  (*Id.*)  Additionally, some documents have partial redactions in order to comply with the *Kraft* court's settlement conference language stating that:  "Whatever happens stays here even if you settle the case. So anything I say during the settlement conference, anything the parties say during the settlement conference . . . is not . . . disclosable to anyone at any time . . . ."  Kraft, Case No. 15-cv-02881, Dkt. No. 303, March 22, 2019 Settlement Conference Transcript at 3:1-7.  *See* Bajorek Decl. ¶ 28; *GTE Sylvania, Inc. v. Consumers Union of the United States*, 445 U.S. 375, 384 (1980) (agency cannot be compelled under FOIA to disclose documents that it is enjoined by a court order from disclosing).

2020) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)).  Indeed, "the traditional rationale for the [attorney-client] privilege applies with special force in the government context," because "[i]t is crucial that government officials, who are expected to uphold and execute the law . . . be encouraged to seek out and receive fully informed legal advice."  *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (quoting *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005)).

The attorney work-product doctrine protects documents "prepared in anticipation of litigation or for trial by or for another party or its representative," as well as "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(A), (B).  *See also In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (work product doctrine "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." (citation omitted)).  "As many courts have explained, the purpose of the work product privilege is 'to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries.'"  *N.Y. Times Co. v. U.S. Dep't of Justice*, 939 F.3d 479, 489 (S.D.N.Y. 2019) (quoting *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1999)).  The work product doctrine sweeps very broadly, and includes within its scope "factual material, including the result of a factual investigation."  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183; *see Judicial Watch, Inc. v. U.S. Dep't of Justice*, 800 F. Supp. 2d 202, 211 (D.D.C. 2011).  "Therefore, under the work product doctrine, any part of a document prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, are protected . . . and falls under Exemption 5."  *Gov't Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14, 26 (D.D.C. 2012)

(internal quotation marks and alterations omitted).  The "need to protect attorney work product is at its greatest when the litigation with regard to which the work product was prepared is still in progress."  *FTC v. Grolier Inc.*, 462 U.S. 19, 30 (1983) (concurrence).

The deliberative process privilege "protect[s] the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Hopkins*, 929 F.2d at 84 (citation omitted); *accord Sears*, 421 U.S. at 150-51 ("those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process" (internal quotations omitted)).  An agency record must satisfy two criteria to qualify for the deliberative process privilege: it "must be both 'predecisional' and 'deliberative.'"  *Grand Cent. P'ship*, 166 F.3d at 482 (internal citations omitted).  A document is "predecisional" if it "precedes, in temporal sequence, the 'decision' to which it relates."  *Grand Cen. P'ship*, 166 F.3d at 482 (citation omitted).  The government need not "identify a specific decision" made by the agency to establish the predecisional nature of a particular record.  *Sears*, 421 U.S. at 151 n.18; *accord Tigue*, 312 F.3d at 80.  So long as the document "was prepared to assist [agency] decisionmaking on a specific issue," it is predecisional.  *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 516, 518 (S.D.N.Y. 2010).  A document is deliberative if it "reflects the give-and-take of the consultative process" by which agency decisions are formulated.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

"It is well-settled that draft documents, by their very nature, are typically predecisional and deliberative.  They reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation by their authors or by their superiors."  *Color of Change v. DHS*, 325 F. Supp. 3d 447, 453 (S.D.N.Y. 2018) (quoting *Amnesty Int'l*, 728 F. Supp. 2d at 518;

15

*accord, e.g., Nat'l Council of La Raza v. U.S. Dep't of Justice*, 339 F. Supp. 2d 572, 583 (S.D.N.Y. 2004) ("Drafts and comments on documents are quintessentially predecisional and deliberative.").

### b. Application

The CFTC is a regulatory agency that pursues its mission in part through enforcement actions undertaken by its Division of Enforcement.  (*See supra* at 3; Bajorek Decl. ¶¶ 9-11.) Here, Plaintiff seeks documents and communications concerning the CFTC's ongoing enforcement action against Kraft, including, specifically, "decision[s] by the CFTC and/or any of its staff, agents, and/or commissioners" to approve the settlement agreement with Kraft generally, and specific terms of that settlement agreement in particular, as well as documents and communications concerning the statements and press release about the settlement issued by the CFTC and two of its Commissioners.  As is evident from the nature of the information being sought, many such communications involve counsel and are privileged.

As discussed above, the documents the CFTC has redacted in part or in full generally fall into four categories.  *See supra* at 6-7.  The CFTC has invoked Exemption 5 with respect to documents in three of those categories (i) internal communications and drafts regarding the settlement with Kraft and the draft consent order; (ii) internal communications regarding the drafting, review, and approval of August 15, 2019, Press Releases, and drafts thereof; and (iii) internal communications and drafts of filings regarding the contempt motion filed by Kraft on August 16, 2019, and the CFTC's response thereto.  The majority of those documents are protected by all three applicable privileges: the attorney-client privilege, the work product privilege, and the deliberative process privilege.

First, the communications at issue are among or with counsel and were made for the purpose of, or reflect, legal advice concerning the ongoing Kraft enforcement action, including on what terms to settle that action; what public statements to make about the settlement; how to respond to Kraft's contempt motion; and the legal implications thereof.  (Bajorek Decl. ¶ 21-23.) Accordingly, they are protected by the attorney-client privilege.  *See Brennan Ctr.*, 697 F.3d at 207; *see also, e.g.*, *Odland v. Fed. Energy Reg. Comm'n*, 34 F. Supp. 3d 3, 19 (D.D.C. 2014) (intra-agency emails regarding confidential legal advice which contained "facts divulged by staff to attorneys in the course of seeking advice" or "discussions among attorneys in preparation for legal advice to staff or for legal proceedings" were properly withheld pursuant to the attorney-client privilege).

Second, these documents were "prepared by or at the behest of counsel" for purposes of ongoing litigation and settlement discussions (Bajorek Decl. ¶ 21-23), so they are also protected by the work product privilege.  *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183; *see also, e.g.*, *Cities Serv. Co. v. FTC*, 627 F. Supp. 827, 832 (D.D.C. 1984) ("[A]ny attorney's notes or working papers which relate to . . . possible settlement discussions pertaining to foreseeable litigation are protected under the attorney work-product privilege.").

Third, these documents reflect pre-decisional deliberations regarding the CFTC's strategies and positions with respect to the Kraft settlement, the August 15, 2019, Press Releases, and Kraft's contempt motion.  The subject documents contain internal discussions regarding preliminary legal advice, internal debate, suggestions, the solicitation of additional facts and information to assist in the decision-making process, and analyses of potential courses of action. (Bajorek Decl. ¶ 21-23.)   The withheld information does not constitute the final agency decisions, but rather the give and take leading to final decisions with respect to the subjects at

issue.  *Id.*; *see Cause of Action v. IRS*, 125 F. Supp. 3d 145, 160 (D.D.C. 2015); *see also Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) (holding that legal advice, like other advisory opinions, "fits exactly within the deliberative process rationale for Exemption 5").

### 2.   The CFTC Has Properly Asserted Exemption 7

### a.   Legal Standard

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" where disclosure would result in one of six enumerated harms set forth in 5 U.S.C. § 552(b)(7)(A)-(F).  "Exemption 7 uses the term 'law enforcement' to describe the act of enforcing the law, both civil and criminal."  *Sack v. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) (internal quotation marks omitted).  To show that information is "compiled for law enforcement purposes," the government need only demonstrate a "nexus between the agency's activity . . . and its law enforcement duties."  *Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987); *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 390 F. Supp. 3d 499, 513 (S.D.N.Y. 2019) ("The term 'compiled' in exemption 7 is broad; it requires only that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." (citation omitted)).

Exemption 7(A) exempts from disclosure information that "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  To sustain its burden under Exemption 7(A), the government must show "(1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm."  *N.Y. Times Co.*, 390 F. Supp. 3d at 513 (internal citations and quotations omitted).  Under exemption 7(A), "the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a

particular enforcement proceeding." *Id.*   "Rather, federal courts may make generic determinations that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings." *Id.* (internal citations omitted).   "Ultimately, the government must allow the court to trace a rational link between the nature of the document and the alleged likely interference." *Id.* (citation omitted).

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes," release of which "[1] would disclose techniques and procedures for law enforcement investigations or prosecutions, or [2] would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).   The first clause of Exemption 7(E) provides categorical protection to information that would disclose law enforcement "techniques and procedures," without requiring any showing of harm as a result of disclosure. 5 U.S.C. § 552(b)(7)(E).[5]   "[T]he qualifying phrase ('if such disclosure could reasonably be expected to risk circumvention of the law') modifies only 'guidelines' and not 'techniques and procedures.'" *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010).

### b.  Application

The majority of the documents redacted or withheld pursuant to Exemption 7(A) are also redacted or withheld pursuant to Exemption 5.  (*See* Index; Bajorek Decl. ¶ 24.)  These include

---

[5] Notwithstanding the lack of a need to make such a showing, courts have recognized that the risk of harm in revealing such techniques, which are "not generally known to the public," is well established.  *See Bishop v. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 391 (S.D.N.Y. 2014) (noting applicability where "the disclosure of additional details could reduce . . . effectiveness" of techniques).

internal communications and drafts of the *Kraft* consent order that reflect the CFTC's settlement position and strategy; pre-decisional communications regarding and drafts of the August 15, 2019, Press Releases concerning the *Kraft* settlement; and internal communications and drafts concerning the CFTC's response to Kraft's contempt motion.  Additionally, a small number of documents are redacted because they concern other ongoing enforcement matters.  (*See* Index; Bajorek Decl. ¶ 24.)

These documents, or portions thereof, are properly withheld pursuant to Exemption 7(A).  First, because they were created for purposes of and pertain to ongoing enforcement actions by the Division of Enforcement, they were "compiled for law enforcement purposes."  *Keys*, 830 F.2d at 340; *N.Y. Times Co.*, 390 F. Supp. 3d at 513.  Second, they "could reasonably be expected to interfere with enforcement proceedings."   5 U.S.C. § 552(b)(7)(A).  Internal documents reflecting the CFTC's settlement strategy in the *Kraft* proceeding could reasonably be expected to interfere with that ongoing enforcement proceeding and any potential future resolution thereof.  *See, e.g.*, *In re Subpoena to U.S. Attorney's Office, Southern District of New York*, No. M 8-85-BSJ, 2000 WL 45726, at *1 (S.D.N.Y. Jan. 20, 2000) (documents with the potential to compromise settlement negotiations in *qui tam* were protected by the law enforcement privilege); *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. FDIC*, Civ. A. No. 93–2471–GTV, 1995 WL 104835, at *5 (D. Kan. March 7, 1995) (law enforcement privilege protected documents pertaining to FDIC investigation, the disclosure of which "may compromise and frustrate future negotiations for settlement of the matters under investigation").  Similarly, Kraft's contempt motion is still pending, and disclosure of the CFTC's internal communications regarding its response to that motion could reasonably be expected to interfere with the CFTC's ongoing prosecution of the *Kraft* action.  Finally, particularly in light of the fact that the

contempt motion is still pending and the August 15, 2019, Press Releases are the subject of that contempt motion, disclosure of pre-decisional internal deliberations about those press releases could also reasonably be expected to interfere with that ongoing enforcement proceeding.  A similar rationale applies with respect to the redactions concerning other enforcement matters. (Bajorek Decl. ¶ 24.)

The other documents for which the CFTC invokes Exemption 7(A) consist of communications and drafts of the consent decree reflecting settlement communications with Kraft.  (Bajorek Decl. ¶ 24.)  Like the CFTC's internal discussions regarding its settlement strategy, disclosure of materials exchanged with Kraft in connection settlement negotiations could reasonably be expected to interfere with the CFTC's ongoing settlement efforts and the enforcement action more generally.  *See In re Subpoena to U.S. Attorney's Office*, 2000 WL 45726, at *1; *Nat'l Union Fire Ins. Co.*, 1995 WL 104835, at *5; *see also United States v. Alex. Brown & Sons, Inc.*, 169 F.R.D. 532, 544 (S.D.N.Y. 1996) (holding that government's sharing of settlement memorandum with defendants in antitrust case for purposes of negotiating settlement did not waive potential application of law enforcement privilege, reasoning in part that "routine disclosure of [such materials] would deter future defendants from entering into negotiated settlements with the Government, and, perhaps, from cooperating in investigations that are likely to lead to such negotiations"); *M/A Com Info. Sys., Inc. v. U.S. Dep't of Health & Human Servs.*, 656 F. Supp. 691, 692-93 (D.D.C. 1986) (denying FOIA request for documents exchanged during unsuccessful effort to settle debarment action because "it is in the public interest to encourage settlement negotiations in matters of this kind and it would impair the ability of HHS to carry out its governmental duties if disclosure of this kind of material under FOIA were required").

Aside from the documents redacted in part or in full pursuant to Exemption 7(A), the CFTC has redacted a small number of documents on the basis of Exemption 7(E) because they would reveal the CFTC's investigatory process and strategies generally.  (*See* Bajorek Decl. ¶ 25.)[6]  These limited redactions easily fall within the scope of Exemption 7(E).

## CONCLUSION

For the foregoing reasons, the CFTC's motion for summary judgment should be granted.

Dated:   October 19, 2020
          New York, New York

                                   Respectfully submitted,

                                   AUDREY STRAUSS
                                   Acting United States Attorney for the
                                   Southern District of New York
                                   *Attorney for the Defendants*

                    By:     /s/ Rachael L. Doud
                                   RACHAEL L. DOUD
                                   Assistant United States Attorney
                                   86 Chambers Street, 3rd Floor
                                   New York, New York 10007
                                   Tel.:  (212) 637-3274
                                   Fax:  (212) 637-2786
                                   E-mail: rachael.doud@usdoj.gov

---

[6] These documents are also protected by the investigative privilege under FOIA Exemption 5. *See SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 159 (S.D.N.Y. 2014) (recognizing, in SEC enforcement proceeding, privilege protecting "law enforcement techniques and procedures").

22