**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

KOBRE & KIM LLP,

                Plaintiff,

   -   v.   -

COMMODITY FUTURES TRADING
COMMISSION,

                Defendant.

Case No. 19-cv-10151 (LAK) (OTW)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGEMENT AND IN SUPPORT OF PLAINTIFF'S
<u>CROSS-MOTION FOR SUMMARY JUDGEMENT</u>**

**KOBRE & KIM LLP**

Benjamin J.A. Sauter
Michael S. Kim
Jonathan D. Cogan
George Stamatopoulos

800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Benjamin.Sauter@kobrekim.com
Michael.Kim@kobrekim.com
Jonathan.Cogan@kobrekim.com
George.Stamatopoulos@kobrekim.com

David H. McGill
Leanne A. Bortner

1919 M Street, NW
Washington, DC 20036
Tel: +1 202 664 1900
David.McGill@kobrekim.com
Leanne.Bortner@kobrekim.com

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..................................................................................................1

**BACKGROUND** ......................................................................................................................3

    A. The *Kraft* Consent Order, The Ensuing Public Statements, And Kraft's Motion For Contempt. .3

    B. Kobre & Kim's FOIA Requests And The CFTC's Withholdings. ........................................7

**LEGAL STANDARD** ...............................................................................................................8

**ARGUMENT** .........................................................................................................................10

    A. The CFTC's Search Was Unreasonable Because It Deliberately Avoided Following A Clear and Certain Lead For Documents On August 20-21, 2019...........................................................11

    B. The CFTC Is Improperly Withholding Records From The Remainder Of The Search It Did Conduct. ...........................................................................................................................15

        1. The CFTC Is Improperly Asserting FOIA Exemption 5....................................................15

            a. The CFTC Is Improperly Applying FOIA Exemption 5 To Shield Public Affairs Documents. ..................................................................................................................17

            b. The CFTC Is Improperly Applying FOIA Exemption 5 To Shield Draft Press Releases. ....................................................................................................................19

            c. The CFTC Is Improperly Applying FOIA Exemption 5 To Shield The Settlement Messaging Documents. ...............................................................................................21

            d. The Public Relations Documents Are Not Entitled To Attorney-Client Or Work Product Protection.......................................................................................................21

            e. The "Government Misconduct" Exception Bars The CFTC's Withholdings. ........23

        2. The CFTC Is Improperly Asserting FOIA Exemption 7(A). ............................................23

        3. The CFTC Must Supplement Its *Vaughn* Index..............................................................25

**CONCLUSION**.......................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Am. Civil Liberties Union v. Dep't of Def.*,
  752 F. Supp. 2d 361 (S.D.N.Y. 2010) ................................................................... 9

*Am. Immigr. Council v. Exec. Office for Immigr. Review*,
  418 F. Supp. 3d 10 (S.D.N.Y. 2019) ..................................................................... 11

*Associated Press v. Dep't of Def.*,
  554 F.3d 274 (2d Cir. 2009) .................................................................................. 9

*Azmy v. U.S. Dep't of Def.*,
  562 F. Supp. 2d 590 (S.D.N.Y. 2008) ................................................................... 24

*Brennan Ctr. for Justice at New York Univ. Sch. of Law v. Dep't of Homeland Sec.*,
  331 F. Supp. 3d 74 (S.D.N.Y. 2018) ............................................................... 20, 24

*Calvin Klein Trademark Trust v. Wachner*,
  198 F.R.D. 53 (S.D.N.Y. 2000) ............................................................................. 22

*Carney v. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994) ................................................................................. 9, 10

*Chevron Corp. v. Salazar*,
  Case No. 11-cv-3718, 2011 WL 3880896 (S.D.N.Y. Sept. 1, 2011) ..................... 22

*Commodity Futures Trading Comm'n v. Hunter*,
  Case No. 7-cv-6682 (RA) (S.D.N.Y.) ...................................................................... 5

*Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*,
  Case No. 15-cv-2881 (N.D. Ill.) ...................................................................... *passim*

*Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*,
  153 F. Supp. 3d 996 (N.D. Ill. 2015) ...................................................................... 4

*Ferguson v. F.B.I.*,
  752 F. Supp. 634 (S.D.N.Y. 1990) ......................................................................... 10

*Ferguson v. U.S. Dep't of Educ.*,
  Case No. 09-cv-10057 FM, 2011 WL 4089880 (S.D.N.Y. Sept. 13, 2011)............. 11

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
  739 F. Supp. 2d 515 (S.D.N.Y. 2010) ............................................................. 18, 22

*Grand Cent. P'ship, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999) ................................................................ 8, 9, 16

*Gucci Am., Inc. v. Guess?, Inc.*,
  271 F.R.D. 58 (S.D.N.Y. 2010) .................................................................. 22

*Halpern v. FBI*,
  181 F.3d 279 (2d Cir. 1999) ...................................................................... 11

*Hopkins v. U.S. Dep't of Housing & Urban Dev.*,
  929 F.2d 81 (2d Cir. 1991) ........................................................................ 16

*In re Cty. of Erie*,
  473 F.3d 413 (2d Cir. 2007) ...................................................................... 22

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ............................................................... 3, 23

*In the matter of Commodity Futures Trading Commission*,
  941 F.3d 869 (7th Cir. 2019) ...................................................................... 6

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ................................................................... 10

*Mayer, Brown, Rowe & Maw LLP v. I.R.S.*,
  537 F. Supp. 2d 128 (D.D.C. 2008) ........................................................... 20

*McGehee v. CIA*,
  697 F.2d 1095 (D.C. Cir. 1983) ................................................................. 11

*Nat'l Council of La Raza v. Dep't of Justice*,
  411 F.3d 350 (2d Cir. 2005) ........................................................................ 8

*Nat'l Day Laborer Org. Network v. Immigration & Customs En't Agency*,
  811 F. Supp. 2d 713 (S.D.N.Y. 2011) ................................................... *passim*

*Nat'l Day Laborer Org. Network v. Immigration and Customs En't Agency*,
  877 F. Supp. 2d 87 (S.D.N.Y. 2012) ................................................... 9, 11, 12

*Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975)....................................................................................................... 16

*New York Times Co. v. U.S. Dep't of Def.*,
  499 F. Supp. 2d 501 (S.D.N.Y. 2007) ........................................................................... 22

*New York Times Co. v. U.S. Dep't of Justice*,
  939 F.3d 479 (2d Cir. 2019) ....................................................................................... 9, 12

*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978)......................................................................................................... 8

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992)..................................................................................... 15

*Providence Journal Co. v. U.S. Dep't of Army*,
  981 F.2d 552 (1st Cir. 1992).......................................................................................... 17

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
  421 U.S. 168 (1975)................................................................................................. 16, 21

*Ruotolo v. Dep't of Justice, Tax Div.*,
  53 F.3d 4 (2d Cir. 1995) ............................................................................................... 10

*Seife v. U.S. Dep't of State*,
  298 F. Supp. 3d 592 (S.D.N.Y. 2018) .......................................................... 13, 19, 20, 25

*Soucie v. David*,
  448 F.2d 1067 (D.C. Cir. 1971)....................................................................................... 9

*Stein v. U.S. Securities and Exch. Comm'n*,
  266 F. Supp. 3d 326 (D.D.C. 2017)............................................................................... 24

*Truitt v. Dep't of State*,
  897 F.2d 540 (D.C. Cir. 1990)......................................................................................... 9

*U.S. Commodity Futures Trading Comm'n v. DRW Investments, LLC*,
  Case No. 13-cv-7884 (RJS), 2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018) .................... 4

*U.S. Dep't of State v. Ray*,
  502 U.S. 164 (1991)......................................................................................................... 9

**Statutes**

5 U.S.C. § 552 ................................................................................................................. *passim*

7 U.S.C. § 9(1)........................................................................................................................ 4

**Rules and Regulations**

17 C.F.R. § 180.1 .................................................................................................................... 4

Fed. R. Civ. P. 56 ................................................................................................................... 1

## PRELIMINARY STATEMENT

Plaintiff Kobre & Kim LLP ("Kobre & Kim") respectfully submits this memorandum of law pursuant to Fed. R. Civ. P. 56 and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in opposition to the motion for summary judgement of Defendant Commodity Futures Trading Commission ("CFTC") and in support of Kobre & Kim's cross-motion for summary judgement. Relief is appropriate for two reasons: (1) the CFTC's search for information responsive to Kobre & Kim's FOIA Requests (the "FOIA Requests") was inadequate because it improperly excluded responsive information from August 20-21, 2019; and (2) with respect to the search the CFTC did conduct, the CFTC is withholding or redacting volumes of information through an overbroad and improper application of two FOIA Exemptions.

Kobre & Kim's FOIA Requests are important to the public's understanding of the CFTC's unprecedented gag settlement and confidentiality breaches in the landmark case, *Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*, Case No. 15-cv-2881 (N.D. Ill.) (hereafter, "*Kraft*"). On August 14, 2019, the CFTC announced the settlement of a closely watched market manipulation case it brought in April 2015 against Kraft Foods Group, Inc. and Mondelēz Global LLC (collectively, "Kraft"). The circumstances surrounding the settlement were highly unusual and deserving of public scrutiny in numerous respects.

First, the public consent order formalizing the settlement and imposing $16 million in penalties on Kraft (the "Consent Order") contained no findings of fact or conclusions of law. In other words, the Consent Order left the public in the dark as to what conduct or legal interpretations might have justified such an exercise of the agency's enforcement power.

Second, the CFTC agreed to an unprecedented "gag" provision in the Consent Order that attempted to prohibit the agency from *ever* supplying explanations to the public.

Third, after the Consent Order was entered on August 14, 2019, the Commission, the CFTC Press Office, and two Commissioners issued press releases (the "Press Releases") about the settlement extolling the importance of public disclosure and accusing Kraft of market manipulation, in apparent violation of the Consent Order that had just been entered.

Fourth, the Press Releases were later retracted and erased from the CFTC's website on August 19, 2019 after Kraft initiated contempt proceedings.

Fifth, after extensive briefing and a hearing, the *Kraft* court granted in part a motion for contempt after finding "egregious misconduct" by the CFTC.  Minute Entry, *Kraft*, Case No. 15-cv-2881, Dkt. No. 378 (N.D. Ill. Feb. 14, 2020).

Kobre & Kim's FOIA Requests seek to promote the public's understanding of these extraordinary events and help the public evaluate the CFTC's actions relative to its stated mission of fostering open, transparent, and competitive markets.  To date, the CFTC has refused to provide the public disclosures required by FOIA.  By this motion, Kobre & Kim seeks to compel two primary categories of information that are being improperly withheld.

First, as already fully briefed in Kobre & Kim's pending Motion to Compel Defendant To Extend Document Search ("Motion to Compel") (Dkt. No. 24), the CFTC arbitrarily refused to search for records during the two days following its August 19 retraction of the Press Releases. This two-day period goes to the very heart of Kobre & Kim's FOIA Requests because it is highly likely to contain a trove of informative, non-privileged communications about the settlement, gag order, and Press Releases.  With this in mind, Kobre & Kim specifically asked the CFTC to search this period at the beginning of this case, *before* the CFTC initiated its document collection.  The CFTC refused and instead sought to strategically avoid any obligation to produce records from this critical two-day period by omitting those dates from its search over Kobre & Kim's objection.

Second, as for the search the CFTC did conduct, it is withholding the vast majority of information responsive to the FOIA Requests based on what appear to be overbroad assertions of two FOIA exemptions: the deliberative process exemption and the so-called law enforcement exemption.  As described in detail below, the record suggests that neither of these exemptions apply to entire categories of documents being withheld, including communications with the CFTC's Office of Public Affairs ("OPA"), draft Press Releases, and communications about the public messaging of the settlement.  Indeed, given the *Kraft* court's finding of "egregious misconduct," the "government misconduct exception" to the FOIA exemptions requires production of these documents.  *See In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied.").

For these and the additional reasons provided below, this Court should deny the CFTC's motion for Summary Judgment and (A) compel the CFTC to search for and produce responsive records during the Period August 20-21, 2019; (B) order the CFTC to produce the improperly withheld or redacted documents described in detail below; and (C) order the CFTC to supplement its *Vaughn* index to allow meaningful assessment of its other claims of exemption.[1]

## BACKGROUND

### A. The *Kraft* Consent Order, The Ensuing Public Statements, And Kraft's Motion For Contempt.

On August 14, 2019, the District Court for the Northern District of Illinois entered a Consent Order formalizing the settlement of the landmark market manipulation enforcement action

---

[1] The CFTC claims that "[d]espite requests from the CFTC, Plaintiff has not identified what non-exempt documents it would hope to receive in response to the Request."  Dkt. No. 34 at 1.  In fact, during a meet and confer on August 14, 2020, Kobre & Kim requested that the CFTC produce a draft *Vaughn* index in advance of the CFTC's summary judgement filing in order to allow Kobre & Kim to provide the CFTC with a narrowed set of disputed withholdings. The CFTC refused to do so.

the CFTC had brought against Kraft in April 2015.  *See* Consent Order, *Kraft*, Case No. 15-cv-02881, Dkt. No. 310 (N.D. Ill. Aug. 14, 2019).  The CFTC and Kraft had agreed to the material terms of this settlement during a settlement conference on March 22, 2019, long before the Consent Order was approved on August 14, 2019.  *See* Ex. A at 4.

 *Kraft* was the CFTC's first litigated enforcement action applying the newly enacted Section 6(c)(1) of the CEA (enacted by Congress as part of Dodd-Frank in 2010, 7 U.S.C. § 9(1)) and CFTC Rule 180.1 implementing Section 6(c)(1) (enacted by the CFTC in 2011, 17 C.F.R. § 180.1) to allegations of market manipulation.  Before the settlement, the *Kraft* court had rejected the CFTC's legal theory that Section 6(c)(1) and Rule 180.1 prohibit manipulation even in the absence of fraud, describing that theory as so expansive as to prohibit "something as simple as 'buy low, sell high' trading based on market trend lines, or any other plan for trading aimed at profit making . . . an interpretation prohibiting such activity would be absurd."  *Kraft*, 153 F. Supp. 3d 996, 1008 (N.D. Ill. 2015).  While the *Kraft* case remained pending, Judge Sullivan of the Southern District of New York also rebuked the CFTC's Enforcement Division for prosecuting a different market manipulation case "based on little more than an 'earth is flat'-style conviction that … manipulation must have happened[.]"  *Commodity Futures Trading Comm'n v. DRW Investments, LLC*, Case No. 13-cv-7884 (RJS), 2018 WL 6322024, at *21 (S.D.N.Y. Nov. 30, 2018).  In the wake of the *DRW* case and the resulting uncertainty surrounding the CFTC's market manipulation authority, the industry was closely following the *Kraft* case for clues as to what standards the CFTC would apply going forward.

 In August 2019, the CFTC filed the *Kraft* Consent Order, requiring Kraft to pay a penalty of US $16 million.  *See* Consent Order, *Kraft*, Case No. 15-cv-02881, Dkt. No. 310 at 4 (N.D. Ill. Aug. 14, 2019).  The Consent Order did not include any findings of fact or law, nor any explanation

as to why that settlement amount was appropriate.  In other words, the CFTC extracted $16 million from a market participant in a high-profile case without explaining why.  Not only is such a settlement contrary to the CFTC's own policies as explained in the Press Releases themselves (*see* Ex. B at 1), but it also raises serious concerns about arbitrary and capricious enforcement.[2]

Compounding these concerns, the Consent Order also contained an unprecedented "gag" provision barring the CFTC from discussing in public the factual or legal bases for the settlement. *See* Consent Order, *Kraft*, Case No. 15-cv-02881, Dkt. No. 310 at 3 (N.D. Ill. Aug. 14, 2019).  In this way, the settlement sought to ensure that no reasoning would *ever* be provided for the settlement, thus insulating it completely from public scrutiny and accountability.

On August 15, despite the gag provision, CFTC Commissioners Berkovitz and Behnam issued a joint press release in which they acknowledged and criticized the settlement's "unusual features," namely, the Consent Order's lack of "factual findings or conclusions of law" and limitation on future statements "to information already in the public record."  Ex. B at 1.  The Commissioners also expressed their view that "the Commission should not accept any confidentiality provisions or restrictions on the Commission's ability to make public statements." *Id*. at 2.  The Commissioners nonetheless justified their approval of the settlement by cryptically suggesting that the public should "presume[] that the Commission has provided sufficient evidence to find a violation—even where the order itself does not explicitly say so."  *Id*. at 2.  Signaling its uneasiness with the gag provision, the Commission issued a separate statement touting the "successful resolution" of the *Kraft* case and stating that its "decision to approve the Consent Order

---

[2] To Kobre & Kim's knowledge, the only other time this has ever happened in CFTC history was in the CFTC's enforcement action against Brian Hunter.  *See* Consent Order, *Commodity Futures Trading Comm'n v. Hunter*, Case No. 7-cv-6682 (RA), Dkt. No. 157 (S.D.N.Y. Sept. 15, 2014).  The CFTC's settlement of that case without findings of fact or conclusion of law led to a Congressional inquiry.  *See* Letter from Senators Dianne Feinstein, Maria Cantwell, and Carl Levin to Timothy Massad (Oct. 8, 2014), https://www.feinstein. senate.gov/public/_cache/files /4/1/4174fa56-9c77-4dc2-bcf0-8748d9cdd8a0/B67B6C599A6D766E2902AE0EAC7F5B19.cftc-letter-re-hunter-case-pdf-copy.pdf.

was based on the fact that [the 'gag' provision] . . . does not restrict individual Commissioners when speaking in their personal capacities."  Ex. C at 1.[3]

On August 16, 2019, Kraft moved for contempt against the CFTC for violating the Consent Order, alleging that the CFTC "never intended to comply with the agreement they negotiated [and] . . . engaged in a deliberate, orchestrated effort to violate the Court's Consent Order within minutes of its entry" to "accomplish exactly what the CFTC specifically agreed not to do" (*i.e.*, comment publicly about the settlement, implying that Kraft admitted to market manipulation).  *In the matter of Commodity Futures Trading Comm'n*, Case No. 19-2769, Dkt. No. 2 at 99 (7th Cir. Sept. 13, 2019).

On August 19, 2019 at the evidentiary hearing on Kraft's contempt motion, the CFTC "agree[d] to voluntarily remove the disputed press releases immediately from the CFTC website until the next court date."  Order, *Kraft*, Case No. 15-cv-02881, Dkt. No. 319 (N.D. Ill. Aug. 19, 2019).  The CFTC asserts that this decision was made "on the spot" by a Staff attorney at the hearing.  Dkt. No. 34 at 10.  On October 22, 2019, following the CFTC's petition for a writ of mandamus to stop the contempt proceedings, the Seventh Circuit issued a decision recognizing the importance of public accountability and cautioning that the mere inclusion of a gag order in a settlement "does not authorize secret adjudication" of CFTC enforcement actions.  *In the matter of Commodity Futures Trading Comm'n*, 941 F.3d 869, 872-73 (7th Cir. 2019).  The District Court then vacated the settlement, emphasizing that "no secret adjudication has been, or will be, authorized."  Minute Entry, *Kraft*, Case No. 15-cv-02881, Dkt. No. 355 (N.D. Ill. Oct. 23, 2019).

On February 13, 2020, the CFTC informed the court that the parties had another "agreement in principle," ready for approval by the Commission.  Hearing Transcript, *Kraft*, Case

---

[3] In addition to the Berkovitz and Behnam press release, the CFTC Press Office also released a third statement on August 15, 2019 announcing the settlement.  *See* Ex. D.

No. 15-cv-02881, Dkt. No. 379 at 3 (N.D. Ill. Feb. 28, 2020).  On February 14, 2020, the court granted in part Kraft's motion for contempt "given the egregious misconduct by [the CFTC]." Minute Entry, *Kraft*, Case No. 15-cv-2881, Dkt. No. 378 (N.D. Ill. Feb. 14, 2020).  The court stated it would issue further "findings of fact and conclusions of law by separate order."  *Id.*

### B.  Kobre & Kim's FOIA Requests And The CFTC's Withholdings.

Kobre & Kim delivered its FOIA Requests to the CFTC on August 21, 2019, shortly after the CFTC removed the Press Releases from its website.  A copy of Kobre & Kim's FOIA Requests is attached hereto as Exhibit E.  After the CFTC failed to respond or even acknowledge receipt for over two months, Kobre & Kim filed this action on October 31, 2019, as authorized by FOIA.[4] *See* Dkt. No. 1.

On May 1, 2020, Kobre & Kim filed its Motion to Compel, seeking an order compelling the CFTC to search its records for responsive information during the period August 20-21, 2019, *i.e.*, the two days immediately following the CFTC's retraction of the Press Releases on August 19, 2019.  *See* Dkt. No. 24.  The Motion to Compel remains fully briefed and pending.

The CFTC purported to complete its production of documents on July 30, 2020.  Dkt. No. 30.  It has redacted virtually all substantive material from the production, asserting in blanket fashion that its records are exempt under FOIA, privileged, or constitute attorney work product. Of the 1,873 produced documents, 1,243 (66%) are redacted.[5]  The produced documents that were not redacted consist mainly of public articles, court filings, and images of the CFTC seal.

---

[4] The CFTC initially claimed in the media that it never received the FOIA Requests, but later recanted once it became obvious that the FOIA Requests had, in fact, been properly delivered to and received by the CFTC's FOIA Office. *See* Rachel Graf, *CFTC Accused Of Withholding Docs About 'Secret' Kraft Deal*, Law360 (Nov. 1, 2019), https://www.law360.com/articles/1216033/ cftc-accused-of-withholding-docs-about-secret-kraft-deal ("CFTC told Law360 it has no record of the request"); Dkt. No. 16 ("CFTC's FOIA Office did not become aware of the request until November 1, 2019").

[5] 409 of these documents are fully redacted, and 834 are partially redacted.

On October 19, 2020, the CFTC moved for summary judgment, submitting a declaration of Rosemary Bajorek, Attorney-Advisor to the CFTC, and a *Vaughn* index purportedly explaining its withholdings. *See* Dkt. No. 35. Ms. Bajorek's Declaration and the *Vaughn* index provide only conclusory explanations and do not permit a meaningful assessment of the CFTC's withholdings on their merits. In particular, the CFTC's *Vaughn* index simply repeats the same four conclusory explanations for all 1,243 redacted or withheld documents:

- Email chain containing predecisional deliberative communications about settlement strategy[.]
- The email contains mental impressions and opinions about settlement strategy.
- Such communications are also made for the purpose of seeking and providing legal advice.
- The information, if produced, could reasonably be expected to interfere with the Kraft enforcement proceeding.

CFTC's *Vaughn* index, Dkt. No. 35, Ex. 1 at 1, 2, 11, 20, 11.

Ms. Bajorek's Declaration essentially repeats the same conclusory statements found in the *Vaughn* index, almost verbatim, and likewise fails to explain specific grounds for withholdings. For example, she asserts that virtually all communications are subject to the deliberative process privilege because they are "pre-decisional in nature" without identifying the purported policy decisions to which each communication allegedly relates. Dkt. No. 35 at 6. Ms. Bajorek likewise states in conclusory fashion that all communications surrounding the contempt proceedings were "compiled for law enforcement purposes and that, if produced, could cause foreseeable harm to the *Kraft* enforcement case" without offering any detail. *Id*. at 8.

## LEGAL STANDARD

FOIA was enacted "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *also Nat'l Council of*

*La Raza v. Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005) (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999)).  FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands."  *New York Times Co. v. U.S. Dep't of Justice*, 939 F.3d 479, 488 (2d Cir. 2019).  "The touchstone of any proceedings under the Act must be the clear legislative intent to assure public access to all governmental records whose disclosure would not significantly harm specific governmental interests.  The policy of the Act requires that the disclosure requirement be construed broadly, the exemptions narrowly." *Soucie v. David*, 448 F.2d 1067, 1080 (D.C. Cir. 1971); *see also Grand Cent. P'ship*, 166 F.3d at 478  ("[T]he Act is to be construed broadly to provide information to the public in accordance with its purposes; for the same reason, the exemptions from production are to be construed narrowly.").

In light of the policy favoring broad public disclosure, FOIA "requires that agencies conduct a search 'reasonably calculated to uncover *all* relevant documents,' not 'most' relevant documents."  *Nat'l Day Laborer Org. Network v. Immigration and Customs En't Agency*, 877 F. Supp. 2d 87, 102 (S.D.N.Y. 2012) (emphasis in original).  "[I]f challenged, [the agency] must demonstrate 'beyond material doubt' that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (recognizing "the defending agency has the burden").

When an agency seeks to withhold responsive information under one of the FOIA exemptions, the law is clear that due to "the strong presumption in favor of disclosure, the agency bears the burden . . . to justify the withholding of any requested documents." *Am. Civil Liberties Union v. Dep't of Def.*, 752 F. Supp. 2d 361, 364 (S.D.N.Y. 2010) (quoting *Associated Press v. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009)); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173

(1991) (The burden of proof "remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."). To justify withholdings, an agency should submit "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812. "[C]onclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not . . . carry the government's burden." *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009).

Summary judgment may not be granted to a government agency when the search it conducted deliberately avoided searching for relevant information. *See Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 11 (2d Cir. 1995) (finding summary judgement inappropriate when the agency failed to search for documents for which Plaintiff provided a "reasonable description" and agency did not demonstrate that search would be "unduly burdensome"). Likewise, summary judgment may not be granted if the requester "provide[s] some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812.[6]

## ARGUMENT

The Court should deny the CFTC's motion for summary judgment and instead order the CFTC to: (A) conduct an adequate search for responsive information during the two-day period following its takedown of the Press Releases; (B) produce documents being improperly withheld

---

[6] The Court has the option of reviewing documents *in camera* where the agency's justifications for withholding are found to be insufficient. *See Ferguson v. F.B.I.*, 752 F. Supp. 634, 637 (S.D.N.Y. 1990) (finding that "in the interests of judicial economy and the strong public interest in disclosure, as well as the conclusory nature of the agency affidavits in applying the exemptions to thousands of documents, the Court will conduct an *in camera* review"); *see also* 5 U.S.C. § 552(a)(4)(B) (authorizing in-camera review under FOIA).

under FOIA Exemptions 5 and 7(A); and (C) amend its *Vaughn* index, so that Kobre & Kim can assess potential additional challenges to the remaining withholdings.  Kobre & Kim reserves its right to challenge additional withholdings, consistent with the Court's rulings.

### A. The CFTC's Search Was Unreasonable Because It Deliberately Avoided Following A Clear and Certain Lead For Documents On August 20-21, 2019.

The CFTC's motion for summary judgement essentially argues that the agency should be allowed to turn a blind eye to responsive records from August 20-21, 2019 simply because it conducted a broader search for records on other days.  Records from August 20-21, 2019 are highly likely to contain non-privileged information responsive to the FOIA Requests, yet the CFTC deliberately refused to include those two days in its search.  This cynical approach amounts to willful blindness preventing a grant of summary judgment in the CFTC's favor.

FOIA "requires that agencies conduct a search 'reasonably calculated to uncover *all* relevant documents,' not 'most' relevant documents."  *Nat'l Day Laborer*, 877 F. Supp. 2d at 102 (emphasis in original), and to "pursue any clear and certain lead [that] it cannot in good faith ignore."  *Am. Immigr. Council v. Exec. Office for Immigr. Review*, 418 F. Supp. 3d 10, 15 (S.D.N.Y. 2019) (quoting *Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999)).  This standard applies both to the "thoroughness and comprehensiveness of agency search procedures" and to the "temporal limit" on the agency's search.  *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983).

It should go without saying that an agency cannot deliberately structure a search to avoid finding relevant information.  For example, in *Ferguson v. U.S. Dep't of Educ.*, Case No. 09-cv-10057 FM, 2011 WL 4089880 (S.D.N.Y. Sept. 13, 2011), the court held that the agency's cut-off date was unreasonable because "it was likely that the Department would create new responsive records between the date of [the FOIA request] and the commencement of the agency's search," where the agency used the date of Plaintiff's request as the cut-off date but failed to offer any

11

"compelling justification for its decision to limit its search . . . to records that were created on or before [that date.]" *Id.* at *10-11. The court then ordered the agency to produce all records created between the date of the request and the date that the agency commenced its search. *Id*. at *12.

The same reasoning applies here. Kobre & Kim notified the CFTC at the beginning of this case, before it began its document search, that documents from August 20-21, 2019 were critical to the FOIA Requests, since those were the two days directly following the CFTC's decision to retract the Press Releases. *See* Ex. F at 3, 12 (Emails from Leanne Bortner, Dec. 19, 2019; Jan. 14, 2020). Rather than conduct an appropriate search, however, the CFTC inexplicably refused to search for records on those days. Far from being "reasonably calculated to uncover *all* relevant documents," as required by FOIA (*see Nat'l Day Laborer*, 877 F. Supp. 2d at 102), the CFTC specifically designed a search to avoid finding relevant documents created on critical dates.

The CFTC cannot prevail at summary judgment with an affidavit stating that the *remainder* of its search was reasonably conducted. If that were the law, an agency could strategically avoid producing documents that it does not want to make public simply by refusing to search the most relevant days, exactly as the CFTC has done here. Such a result would be incompatible with the purpose and policy of FOIA and the "judicially enforceable public right to secure such information from possibly unwilling official hands." *New York Times Co.*, 939 F.3d at 488.

To date, the CFTC has offered only feeble excuses for its refusal to search for documents from August 20-21, 2019. First, the CFTC suggested in meet and confer discussions that searching these days would impose an "undue burden." *See* Ex. F at 4. The most the CFTC proffers in support of its summary judgment motion, however, is attorney speculation that expanding the date range for its search by two days might yield a "high volume of non-responsive, privileged documents." Ex. F at 4. That is not the standard for demonstrating undue burden. As this Court

explained in *Seife*, the agency "bears the burden to provide [a] sufficient explanation as to why such a search would be unreasonably burdensome," and when, as here, the agency "provides no information regarding . . . the level of difficulty of, or amount of time required by, the search process itself" and does not demonstrate "with reasonable specificity the actual burden . . . the Court cannot conclude that a response . . . would in fact be unduly burdensome." *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 612 (S.D.N.Y. 2018). Here, the CFTC has refused to disclose the number of documents that these two days would add to its review, thereby preventing Kobre & Kim (and the Court) from meaningfully evaluating its claim. Moreover, it is difficult to see how the CFTC could reasonably object to searching just two additional days on burden grounds, even as it agreed to conduct a search covering approximately 180 days. *See* Dkt. No. 35, Ex. 2.

Second, the CFTC wrongly suggests in its motion that Kobre & Kim's request for documents from August 20-21, 2019 is "speculative." Dkt. No. 34 at 10. This argument ignores that the sequence of events leading up to this two-day period logically dictates that the Commissioners, their staffs, and/or other implicated CFTC employees would have discussed the gag provision and the Press Releases immediately following the CFTC's extraordinary decision to retract them. Indeed, just days earlier, the Commissioners had publicly asserted their uncompromisable legal right and ethical duty to publish their views about the CFTC's enforcement action—rights that they said were critical to their "decision to approve the Consent Order." Ex. C at 1; *see also* Ex. B. The statement of Commissioners Berkovitz and Behnam asserted that "Commissioners, as public officials, *must be able to explain* to Congress and the public the basis for the sanctions obtained, as well as the rationale for entering into a settlement agreement rather than pursuing litigation…*[I]t is critical that a Commissioner be able to speak publicly* about his or her reasons for determining that the law has been violated, why the agreed penalties are

13

appropriate, and why the agency did not obtain findings of fact or proceed to trial.  *The public has a right to know* whether federal agencies are obtaining appropriate remedies when the law is violated . . . .  Congress has recognized the importance of such unrestrained communications by providing Commissioners with a *statutory right to publicly state their views* on matters before the Commission."  Ex. B at 1 (emphasis added).  Given these views, it would be astounding if a CFTC Staff attorney's "on the spot" retraction of the Press Releases on August 19, 2019 did not spark vigorous comment within the agency, particularly since these events were being covered by various news outlets on the days at issue.  *See e.g.*, Michael W. Brooks and Robert E. Pease, *CFTC v. Kraft Dispute Continues with CFTC on Defensive,* Nat'l Law Review (Aug. 20, 2019), https://www.natlawreview.com/article/cftc-v-kraft-disputecontinues-cftc-defensive; Matt Levine, *Hire Banks to Look After Your Banks*, Bloomberg (Aug. 20, 2019), https://www.bloomberg.com/opinion/articles/2019-08-20/hire-banks-to-lookafteryour-banks.

Third, the CFTC argues that it should not be required to search documents from August 20-21, 2019 "given that the CFTC was still engaged in an active enforcement proceeding at that time (as it is now) and the majority of documents responsive to any of Plaintiff's requests are covered by multiple privileges."  (Dkt. No. 34 at 10).  This argument has several flaws.  As an initial matter, the *Kraft* Consent Order was *in effect* as of August 20-21, 2019.  *See* Minute Entry, *Kraft*, 15-cv-02881, Dkt. No. 355 (N.D. Ill. Oct. 23, 2019).  Thus, communications during August 20-21, 2019 did not relate to an "active" enforcement proceeding at that time—the enforcement case was over, with only a contempt proceeding against the CFTC to be adjudicated.  Although the Consent Order was later torn up by the Court *sua sponte* due to the CFTC's misconduct, the fact remains that it was still in effect on August 20-21, 2019.  Furthermore, even if portions of communications on August 20-21, 2019 contained some exempt information, the CFTC still needs

to produce non-exempt portions of those communications, including factual material and discussions about the reasons for its *prior* decisions to agree to the gag provision, to publish the Press Releases, and to retract the Press Releases.  5 U.S.C. § 552(a)(8)(A)(ii)(II).  Ultimately, since the CFTC refused to even search for records during this period or include them in its *Vaughn* index, it should not be allowed to speculate that those records might potentially be exempt.

**B. The CFTC Is Improperly Withholding Records From The Remainder Of The Search It Did Conduct.**

The CFTC has relied on FOIA Exemptions 5 and 7(A) to redact or withhold virtually all substantive information from its production.  These Exemptions appear not to apply to entire categories of withheld documents, as described below.  Kobre & Kim focuses the Court's attention on the most glaring examples that it could identify from the information currently available to it. Given the generic descriptions in the CFTC's *Vaughn* index and the Bajorek Declaration, Kobre & Kim reasonably expects that it would be able to identify additional categories of improperly withheld information if and when the CFTC is required to provide a more detailed *Vaughn* index.

**1. The CFTC Is Improperly Asserting FOIA Exemption 5.**

The CFTC asserts Exemption 5 as a basis to withhold information from 1,083 (87%) of the redacted documents.  Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C.  § 552(b)(5).  In essence, Exemption 5 protects documents covered by an applicable legal privilege, including attorney-client privilege, attorney work product, or the deliberative-process privilege.

"In light of the FOIA's strong policy in favor of disclosure . . . Exemption 5 is to be construed 'as narrowly as consistent with efficient Government operation.'"  *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).  To sustain a withholding under

the deliberative process privilege, the primary privilege relied on by the CFTC, the CFTC must show that the withheld information is both (1) "deliberative" and (2) "pre-decisional." *See Hopkins v. U.S. Dep't of Housing & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991); *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).

The deliberative process privilege does not shield all communications related to every decision an agency or its personnel might make. If it did, the Exemption would swallow the rule of broad disclosure because virtually any communication could be framed as relating in some way to some decision. Rather, to be "deliberative" for purposes of Exemption 5, the communication must be "actually . . . related to the process by which *policies* are formulated." *Hopkins*, 929 F.2d at 84 (emphasis added). "[T]he privilege does not protect a document which is merely *peripheral* to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Grand Cent. P'ship*, 166 F.3d at 482 (emphasis added).

Exemption 5 also does not shield discussions of *prior* agency decisions. Thus, it does not protect "postdecisional memoranda setting forth the reasons for an agency decision already made." *Renegotiation Bd.*, 421 U.S. at 184. *Documents that discuss "already formulated policies—even if in draft format, and even if containing 'deliberative' discussions of how to portray those policies to the public—are not protected by the deliberative process privilege[.]'" Nat'l Day Laborer Org. Network v. Immigration & Customs En't Agency*, 811 F. Supp. 2d 713, 743 (S.D.N.Y. 2011) (emphasis added); *see also Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975) ("It is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by the forced disclosure of such communications[.]").

16

Exemption 5 also does not shield the underlying facts that were considered as part of a deliberative process. *See Grand Cent. P'ship*, 166 F.3d at 482 ("The privilege does not, however, as a general matter, cover 'purely factual' material."). If a communication reflects both underlying facts and deliberative communications, the underlying facts being considered must be disclosed. *See Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 559 (1st Cir. 1992) (recognizing that "segregable factual portions of the document might still be subject to compelled disclosure").

Here, the CFTC appears to be improperly invoking FOIA Exemption 5 to withhold information about at least the following categories of non-protected information: (a) communications with officials from the CFTC's Office of Public Affairs (the "Public Affairs Documents") taking place after the Enforcement Division had a "final [consent] order" on May 29, 2019 (Ex. G at 2); (b) drafts of the Press Releases also prepared after the Division of Enforcement had a final consent order (*id.*); and (c) documents concerning public messaging after the *Kraft* settlement was published (the "Settlement Messaging Documents", and all together, the "Public Relations Documents"). For the Court's reference, the Public Relations Documents, to the extent they could be gleaned from the CFTC's *Vaughn* index, are listed in Exhibit H hereto.

### a. The CFTC Is Improperly Applying FOIA Exemption 5 To Shield Public Affairs Documents.

The CFTC appears to be improperly withholding swaths of communications with officials from the CFTC's Office of Public Affairs after the Enforcement Staff "ha[d] a final [consent] order" on May 29, 2019.[7] Agency discussions about "how frank to be with the public about what the agencies' policies are . . . are not the sorts of deliberative discussions that the privilege is intended to protect; these are the sorts of discussions that FOIA is intended to reveal." *Day Laborer*, 811 F. Supp. 2d at 741. Indeed, agency discussions about public messaging are essential

---

[7] The Public Affairs Documents are identified in Exhibit H hereto.

to examining discrepancies between an agency's internal and public statements, precisely "the type of concern that FOIA seeks to vindicate." *Id.* at 741.  Allowing the CFTC to wield Exemption 5 for the purpose of blocking public access to internal communications about the public messaging of an agency decision would be "anathema to the operation of democratic government" and "def[y] both the letter and the spirit of FOIA." *Id.* at 741.

In *Day Laborer*, the Plaintiff requested documents pertaining a federal immigration enforcement program to ascertain the federal government's legal basis for it.  *Nat'l Day Laborer Org.   Network*, 811 F. Supp. 2d at 731.  The Court held that discussions taking place after substantive policy decisions were made were not exempt under the deliberative process privilege because a document "is not privileged if it reflects the personal opinions of a writer with respect to how to explain an *existing* agency policy or decision." *Id*. at 741 (emphasis in original).  The court found that an email in which "what is being deliberated is not whether or not participation in Secure Communities should be mandatory, but rather how that policy should be communicated to the public[,]" was not protected by the privilege. *Id*. at 756.

Similarly, in *Fox News*, the Plaintiff requested records concerning the federal bailout of AIG, including talking points, press releases, and other public relations materials that the Treasury claimed were pre-decisional because the relevant transactions "had not been finalized." *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 543 (S.D.N.Y. 2010).  The court ordered the disclosure of several emails "concerning press relations," finding that documents consisting "entirely of . . . 'messaging,' *i.e.*, public relations," or documents related "to the massaging of [the government]'s public image" are not protected by the deliberative process privilege because they did not "reveal the status of internal deliberations on substantive policy matters." *Id.* at 546-47.

Here, the CFTC's *Vaughn* index openly *admits* that the Public Affairs Documents concern "what to communicate to the public about tentative settlement of claims in the Kraft case." Dkt. No. 35, Ex. 1 at 11. As in *Day Laborer* and *Fox News*, such discussions are not a protected part of the deliberative process.

As a final matter, the CFTC's description of the Public Affairs Documents as involving a "tentative" settlement is belied by the record. An internal CFTC email confirms that the Enforcement Staff "ha[d] a final [consent] order" ready on May 29, 2019, before the date of these communications. Ex. G at 2. Moreover, it appears that the material terms of the Consent Order were agreed as of at least a settlement conference on March 22, 2019. *See* Ex. A at 4. Even if the Kraft settlement was "tentative" when the Public Affairs Documents were prepared, which it was not, Exemption 5 still would not apply to documents pertaining to the public messaging of that settlement. *See Day Laborer*, 811 F. Supp. 2d at 743.

### b. The CFTC Is Improperly Applying FOIA Exemption 5 To Shield Draft Press Releases.

The CFTC is also improperly withholding all drafts of the Press Releases,[8] cryptically asserting that "they involve deliberations . . . in a context that also includes sensitive matters."[9] Dkt. No. 35 at 7. To withhold a draft press release, the CFTC must prove that it formed an "essential link" in a protected consultative process or, if released, would "inaccurately reflect or prematurely disclose the views of the agency." *Seife*, 298 F. Supp. 3d at 620. The CFTC's *Vaughn* index and the Bajorek Declaration do not satisfy either of these standards.

The CFTC contends that the draft Press Releases relate to two "consultative process[es]"— one concerning "how and what to communicate to the public" about the settlement, and one

---

[8] The Draft Press Releases are identified in Exhibit H hereto.
[9] The CFTC does not explain what these "sensitive matters" are.

concerning the CFTC's "litigation and settlement strategy." (Dkt. No. 35, Ex. 1 at 11). As already discussed above, communications concerning "how and what to communicate to the public" are not protected by FOIA Exemption 5.

The CFTC also fails to identify "the function and significance" of the draft Press Releases to its purported litigation and settlement strategy. *See Brennan Ctr. for Justice at New York Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 96 (S.D.N.Y. 2018) (rejecting agency rationale for withholding a document because it failed to detail the "function and significance" of the document in a protected policy deliberation); *see also Mayer, Brown, Rowe & Maw LLP v. I.R.S.*, 537 F. Supp. 2d 128, 139 (D.D.C. 2008) (ordering draft press releases to "be produced in their entirety because they d[id] not 'bear on the policy formulation'"); *Seife*, 298 F. Supp. 3d at 620 (draft public statements not protected absent a finding that they "formed an essential link in a specified consultative process[.]"). No such link is apparent. The final Press Releases do not on their face reveal anything about the CFTC attorneys' "litigation and settlement" strategy—and in any event they have already been disclosed to the public. *See* Ex. B-D. Any contention that the draft Press Releases were essential to such strategy is dubious for the additional reason that they are all dated *after* the parties finalized the principal terms of the settlement. Accordingly, they could not have been an "essential link" in formulating the settlement.

Finally, the CFTC incorrectly asserts that the draft Press Releases would inaccurately or prematurely portray agency positions. *See* Dkt. No. 35 at 7. There is no such risk because the drafts would merely reveal the views of the particular individuals commenting; and the Press Releases have already been issued. Moreover, if the draft Press Releases are anything like the final Press Releases, they do not disclose any policy "positions" but simply message a Consent Order with no findings of fact or conclusion of law to the public.

### c. The CFTC Is Improperly Applying FOIA Exemption 5 To Shield The Settlement Messaging Documents.

The CFTC has improperly asserted Exemption 5 to redact internal communications discussing the CFTC's responses to press inquiries *after* the settlement was published on August 14, 2019 (the "Settlement Messaging Documents").[10]  The CFTC's theory appears to be that these communications are "predecisional deliberative communications about what to communicate to the public about settlement strategy related to the Kraft case" or "predecisional deliberative information about settlement strategy[.]"  Dkt. No. 35, Ex. 1 at 10, 61.

Given that the CFTC admits the Settlement Messaging Documents concern "what to communicate to the public," they are not protectable under Exemption 5.  "'[D]eliberative' discussions of how to portray … policies to the public . . . are not protected by the deliberative process privilege[.]"  *Day Laborer*, 811 F. Supp. 2d at 743.  Nor can the CFTC avoid this result simply by casting its discussions as purportedly related to its "settlement strategy."  The communications occurred *after* the settlement was agreed and appear to concern only how to describe the settlement to the press.  Even if the communications discussed the reasons for the settlement, "postdecisional memoranda setting forth the reasons for an agency decision already made" are not a protected part of the deliberative process.  *Renegotiation Bd.*, 421 U.S. at 184.

### d. The Public Relations Documents Are Not Entitled To Attorney-Client Or Work Product Protection

The CFTC also asserts attorney-client privilege and work-product protection over a number of the Public Relations Documents.[11]  Based on the nature of the documents, however, the CFTC seems to be misapplying these protections.

---

[10] The Settlement Messaging Documents are identified in Exhibit H hereto.

[11] Documents for which the CFTC improperly asserts work product protection and the attorney client privilege are identified in the "Asserted Grounds for Withholding" column of Exhibit H.

The attorney client privilege does not apply to documents regarding policy advice or the proper handling of press inquiries or public messaging, regardless of whether such advice is provided by an attorney. *See Fox News*, 739 F. Supp. 2d at 562 (finding that an email "solicit[ing] . . . advice by Treasury [s]taff to Treasury [l]egal as to how best to handle a press inquiry[]" did not constitute legal advice); *In re Cty. of Erie*, 473 F.3d 413, 419-20 (2d Cir. 2007) (recognizing that "the predominant purpose of the communication [must be] to render or solicit legal advice" rather than "advice on policy"). To the extent the CFTC seeks to invoke the attorney-client privilege to withhold communications about policy or public messaging, that would be improper.

Likewise, attorney work product protection does not apply to documents prepared (even if by attorneys) "for public relations purposes." *New York Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 517 (S.D.N.Y. 2007). Courts routinely hold that such documents—for example, press releases and other documents concerning the public messaging of litigation—are not within the scope of attorney work product because the purpose of work product protection "is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000); *accord Chevron Corp. v. Salazar*, Case No. 11-cv-3718, 2011 WL 3880896, at *1 (S.D.N.Y. Sept. 1, 2011) (public relations consultant's analysis of the public reaction to a court judgment is not protected as work product); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 78 (S.D.N.Y. 2010) (work product doctrine inapplicable to "publicity strategy"). Here, it appears that the Public Relations Documents were not created for the purpose of litigation, but rather for the purpose of determining how and what to communicate to the public about the *Kraft* settlement and the Press Releases themselves.[12]

---

[12] Ultimately, Kobre & Kim lacks the detail necessary to fully evaluate the CFTC's claims of attorney-client privilege and attorney work product. Based on the nature of the Public Relations Documents, however, it appears that the

### e. The "Government Misconduct" Exception Bars The CFTC's Withholdings.

Even if there were a sound basis for the CFTC's application of the deliberative process privilege to any of the Public Relations Documents, which there appears not to be, that privilege is vitiated by the "government misconduct" exception to the FOIA Exemptions.  It appears clear that the CFTC in *Kraft* pursued a cynical strategy of negotiating a Consent Order with a gag provision, all the while planning to violate that Consent Order by issuing the Press Releases as soon as the Order was entered.  The *Kraft* court has already held the CFTC in contempt, finding its actions to amount to "*egregious misconduct*."  Minute Entry, *Kraft*, Case No. 15-cv-2881, Dkt. No. 378 (N.D. Ill. Feb. 14, 2020).  This Court should not allow the CFTC to hide that misconduct behind dubious assertions of the deliberative process privilege or any other FOIA Exemption.  *See In re Sealed Case*, 121 F.3d at 738 ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied.").

### 2.  The CFTC Is Improperly Asserting FOIA Exemption 7(A).

The CFTC asserts Exemption 7(A) (the law-enforcement exemption) as a basis for withholding information from 1,218 (98%) of the redacted documents.  Exemption 7(A) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings[.]"  5 U.S.C. § 552(b)(7)(A).  To withhold a document pursuant to Exemption 7(A), the CFTC must show that the information was (1) complied for law enforcement purposes and (2) that release of the information could reasonably be expected to cause some articulable harm.  *See* 5 U.S.C. § 552(b)(7)(A); *see also Azmy v. U.S. Dep't of Def.*,

---

CFTC's assertions of privilege are too broad.  Accordingly, in the event the Court does not order these documents produced outright, Kobre & Kim respectfully requests that the Court conduct an *in camera* review of these documents. The documents for which Kobre & Kim requests in-camera review are listed in Exhibit H.

562 F. Supp. 2d 590, 605 (S.D.N.Y. 2008).  The CFTC cannot "simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate how disclosure will do so." *Stein v. U.S. Securities and Exch. Comm'n*, 266 F. Supp. 3d 326, 344 (D.D.C. 2017).  That is, the CFTC must show "release of the information could *reasonably* be expected to cause some *articulable* harm."  *See Azmy*, 562 F. Supp. 2d at 605 (emphasis added).

Here, the Public Relations Documents are not properly withheld under Exemption 7(A).  First, these documents—which concern the CFTC's public messaging—do not appear to bear upon any law enforcement purpose.  To show that the documents were compiled for law enforcement purposes, the CFTC would have to "establish a rational nexus between the agency's activity in compiling the documents and its *law enforcement* duties."  *Brennan Ctr. for Justice*, 331 F. Supp. 3d at 97 (emphasis added).  Here, putting aside the CFTC's conclusory assertions, it appears that the Public Relations Documents pertain to public messaging, not law enforcement duties.

Second, the CFTC has failed to demonstrate that disclosure would cause any cognizable harm.  The CFTC contends that virtually all of the documents it has withheld are exempt because the "[*Kraft*] contempt motion is still pending" so "disclosure of pre-decisional internal deliberations about those press releases could [] reasonably be expected to interfere with that ongoing enforcement proceeding."  Dkt. No. 34 at 20-21.[13]  But the CFTC already lost the contempt motion due to its "egregious misconduct."  Minute Entry, *Kraft*, Case No. 15-cv-02881, Dkt. No. 378 (N.D. Ill. Feb. 14, 2020).  Moreover, it has not explained why making the Public Relations Documents public would cause any harm to those proceedings, much less harm to its unrelated *law enforcement* duties.  The contempt proceedings are ancillary to the CFTC's enforcement action—they were brought *against* the CFTC for violating the disclosure provision

---

[13] The Public Relations Documents for which the CFTC has erroneously claimed Exemption 7(A) are identified in the "Asserted Grounds for Withholding" column of Exhibit H hereto.

of a settlement agreement.  The requested information might be inconvenient or embarrassing to the CFTC, but that is not the sort of "articulable harm" the exemption is concerned with.  *See Day Laborer*, 811 F. Supp. 2d at 749 (emails from Deputy Press Secretary were "no more deliberative than those left unredacted, even if they are more embarrassing to the agency").

### 3.   The CFTC Must Supplement Its *Vaughn* Index.

The CFTC's *Vaughn* index regurgitates the same four conclusory (and inadequate) explanations for over 1,243 withheld or redacted documents, thereby impeding Kobre & Kim from evaluating the withholdings.  Here, the CFTC should be ordered to supplement its *Vaughn* index to allow Kobre & Kim and the Court to meaningfully assess the merits of the remainder of its withholdings and additional appropriate challenges.  *See Seife*, 298 F. Supp. 3d at 631 (ordering agency to supplement *Vaughn* index to account for deficiencies).

### <u>CONCLUSION</u>

For the reasons set forth herein, Kobre & Kim respectfully requests the Court deny the CFTC's motion for summary judgment, grant Kobre & Kim's cross-motion for summary judgement, and order the CFTC to (A) extend its search to include August 20-21, 2019;  (B) produce the improperly withheld documents in their entirety;  and (C) supplement its *Vaughn* index to allow meaningful assessment of additional appropriate challenges to its withholdings.

Dated: November 18, 2020                          Respectfully submitted,

/s/ Benjamin J.A. Sauter
Benjamin J.A. Sauter
Michael S. Kim
Jonathan D. Cogan
George Stamatopoulos

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Benjamin.Sauter@kobrekim.com

Michael.Kim@kobrekim.com
Jonathan.Cogan@kobrekim.com
George.Stamatopoulos@kobrekim.com

David H. McGill
Leanne A. Bortner

KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036
Tel: +1 202 664 1900
David.McGill@kobrekim.com
Leanne.Bortner@kobrekim.com