# EXHIBIT B

# SPEECHES & TESTIMONY

## Statement of Commissioners Dan M. Berkovitz and Rostin Behnam Regarding the Commission's Settlement with Kraft Foods Group, Inc. and Mondelēz Global LLC
## August 15, 2019

We are voting for this settlement because we believe that Kraft Foods Group, Inc. (Kraft) manipulated the wheat market.[1] The $16 million penalty and injunctive relief that the Commission has obtained in this consent order is as much as the Commission could reasonably expect to obtain if it were to prevail at trial. This action demonstrates the CFTC's resolve to aggressively prosecute and punish those who manipulate or attempt to manipulate our nation's commodity markets.

The settlement agreement in this case has two unusual features that merit further explanation and comment. First, the consent order agreed to by the Commission does not contain factual findings or conclusions of law. Second, the order limits the Commission's statements in this matter to information already in the public record. As the Commission observes, however, the consent order only limits the statements of the Commission as a collective body.[2] Individual Commissioners, speaking in their own capacities, retain their right and ability to speak fully and truthfully about this matter.

Commissioners, as public officials, must be able to explain to Congress and the public the basis for the sanctions obtained, as well as the rationale for entering into a settlement agreement rather than pursuing litigation. Although we disagree with any provision restricting the five-member Commission's capacity to make public statements, this provision does not impede our ability to provide information about this case to the public in light of each Commissioner's right to discuss this case freely.[3]

The Commission typically requires factual findings and conclusions of law in consent orders. CFTC enforcement actions not only punish violations of the law and deter future misconduct by the party to the action, but also provide guidance to the public about the agency's interpretation of its laws, thereby deterring similar misconduct by others.[4] Explaining to the public the factual basis for imposing a penalty not only serves to deter similar conduct in the future, but also is essential to avoid chilling legitimate market activity. "General deterrence is an exercise in communication. That is, for a sanctions regime to deter, the potential wrongdoer must be able to apprehend what conduct might give rise to a particular level of pain, in the form of a sanction."[5]

Federal agencies often decide to settle enforcement matters without further litigation for pragmatic reasons, including the avoidance of the costs and risks associated with a trial.[6] The Commission, like other federal agencies, may determine that resolving a case without evidentiary findings is appropriate, where the Commission believes that the settlement agreement, viewed in its entirety under the circumstances, is in the public interest.[7] We support entering into the consent order with Kraft, despite the absence of findings of fact, because the penalty and injunctive relief imposed reflect, in our view, the gravity of Kraft's conduct.

However, particularly in settlements where there are no evidentiary findings, it is critical that a Commissioner be able to speak publicly about his or her reasons for determining that the law has been violated, why the agreed penalties are appropriate, and why the agency did not obtain findings of fact or proceed to trial. The public has a right to know whether federal agencies are obtaining appropriate remedies when the law is violated.[8]

More generally, CFTC Commissioners must be able to freely and openly express their views on public matters. Congress has recognized the importance of such unrestrained communications by providing Commissioners with a statutory right to publicly state their views on matters before the Commission. Section 2(a)(10)(C) of the Commodity Exchange Act ("CEA") states:

> Whenever the Commission issues for official publication any opinion, release, rule, order, interpretati[on, or] other determination on a matter, the Commission shall provide that any dissenting, concurring, or sep[arate] opinion by any Commissioner on the matter be published in full along with the Commission opinion, rel[ease,] rule, order, interpretation, or determination.[9]

The Commission cannot bargain this right away in settlement negotiations. The courts are obligated to recognize it when crafting consent orders.[10]

Other federal agencies expressly prohibit consent or settlement agreements that restrict the agency's ability to speak about settlements or the underlying action. For example, the Department of Justice has adopted a regulation that prohibits it from entering into settlement agreements or consent decrees that are subject to a confidentiality provision in any civil matter in which the Department is representing the interests of the United States or its agencies.[11] The Department of Justice regulation is based upon "the public's strong interest in knowing about the conduct of its Government."[12]

In our view, in future situations, the Commission should not accept any confidentiality provisions or restrictions on the Commission's ability to make public statements.

Even where a court does not make any evidentiary findings or conclusions of law, the fact that a U.S. district court, through a consent order, imposes a civil monetary penalty demonstrates that the Commission has provided sufficient evidence to find that the defendants violated the law. Section 6c(d)(1) of the Act provides courts with "jurisdiction to impose [a civil monetary penalty], on a proper showing, *on any person found in the action to have committed any violation* . . . ."[13] Because the court can only impose civil monetary penalties in instances where the government has made a "proper showing," it must be presumed that the Commission has provided sufficient evidence to find a violation—even where the order itself does not explicitly say so. "As part of its review, the district court will necessarily establish that a factual basis exists for the proposed decree."[14]

Judge Rakoff has put it more bluntly. In approving a settlement agreement where the defendant neither admitted nor denied the allegations, yet paid the penalty for the violation, Judge Rakoff cogently noted:

> No reasonable observer of these events could doubt that the company has effectively admitted the allegations of the complaint in the way that, for a company, is particularly appropriate: by letting its mo[ney] do the talking.[15]

In this case, it is not only Kraft's $16 million payment that is doing the talking. The Commission is speaking loudly and clearly as well: those who manipulate or attempt to manipulate our commodity markets will be prosecuted and punished.

We thank the Division of Enforcement staff for their diligent prosecution of this matter.

We support the Commission's action today.

---

[1] The basic facts underlying the Commission's case against Kraft are presented in *CFTC v. Kraft Foods Grp., Inc.*, 153 F. Supp. 3d 996 (N.D. Ill. 2015).

[2] See Statement of the Commission (August 15, 2019), available at https://www.cftc.gov/PressRoom/SpeechesTestimony/commissionstatement081519

[3] *See id.*

[4] *See, e.g., Reddy v. CFTC*, 191 F.3d 109, 123 (2d Cir. 1999) (holding CFTC enforcement should be "to further the [CEA]'s remedial policies and to deter others in the industry from committing similar violations"); *In re First Fin. Trading, Inc.*, CFTC No. 00-35, 2002 WL 1453795, at *2, *14, *20 (July 8, 2002) (stating that CFTC has "important and delicate government function of punishing illegal conduct" and that CFTC civil penalties should serve as both specific and general deterrents) (quoting *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999)); cf. *SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 304, 306, 308 (S.D.N.Y. 2011) (noting that enforcement actions brought by the Securities and Exchange Commission ("SEC") serve the public interest and deter future misconduct).

[5] David M. Becker, *What More Can Be Done to Deter Violations of the Federal Securities Laws?*, 90 Tex. L. Rev. 1849, 1850 (2012) (citing Raymond Paternoster, *How Much Do We Really Know About Criminal Deterrence?*, 100 J. Crim. L. & Criminology 765, 785-86 (2010)). David Becker was General Counsel of the SEC from 2000-2002 and 2009-2011.

[6] *See, e.g.*, *SEC v. Citigroup Glob. Mkts. Inc.*, 752 F.3d 285, 295 (2d Cir. 2014) ("Even if the Commission's case against [defendants] is strong, proceeding to trial would still be costly. The S.E.C.'s resources are limited, and that is why it often uses consent decrees as a means of enforcement.").

[7] *See id.* (noting that the determination of whether a consent judgment best serves the public interest is one that "rests squarely" with the federal agency and merits "significant deference").

[8] *See, e.g.*, *EEOC v. Erection Co.*, 900 F.2d 168, 172 (9th Cir. 1990) (Reinhardt, J. concurring in part and dissenting in part).

[9] 7 U.S.C. § 2(a)(10)(C).

[10] Appellate courts have invalidated confidentiality provisions that abrogated statutory disclosure obligations, such as that provided by CEA Section 2(a)(10)(C). *See, e.g.*, *Ford v. City of Huntsville*, 242 F.3d 235, 241-42 (5th Cir. 2001) (vacating confidentiality order in settlement agreement between City of Huntsville and a private party). In *Ford*, the Fifth Circuit held that a federal district court judge has an obligation to consider a statute requiring disclosure of "public information" and demonstrate a "compelling reason" for entering an order that conflicts with that statute, before issuing a confidentiality order to a governmental entity. *Id.*; *see also Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 931 (5th Cir. 1996) (district court abused its discretion in entering order closing school board meetings without considering confidentiality order's effect on Louisiana law); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 791 (3d Cir. 1994) ("[W]here a governmental entity is a party to litigation, no protective, sealing or other confidentiality order shall be entered without consideration of its effect on disclosure of government records to the public under state and federal freedom of information laws.") (citations and alterations omitted). "When a court orders confidentiality in a suit involving a governmental entity . . . there arises a troublesome conflict between the governmental entity's interest as a litigant and its public disclosure obligations." *Pansy*, 23 F.3d at 791.

[11] 28 C.F.R. § 50.23.

[12] 28 C.F.R. § 50.23(b) (noting also that policy "flows from the principle of openness in government"). The U.S. Equal Employment Opportunity Commission ("EEOC") goes even further, specifying that "the Commission must be free to respond fully to inquiries regarding the suit and resolution." U.S. Equal Employment Opportunity Comm'n, Regional Attorneys' Manual, Pt. 3.IV.A.2.e (Apr. 2005), available at https://www.eeoc.gov/eeoc/litigation/manual/.

[13] 7 U.S.C. § 13a-1(d)(1) (emphasis added). CEA Section 6c(b) provides courts with jurisdiction to impose a permanent injunction "upon a proper showing." 7 U.S.C. § 13a-1(b).

[14] *Citigroup*, 752 F.3d at 295.

[15] *Vitesse*, 771 F. Supp. 2d at 310.