UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

KOBRE & KIM LLP,

      Plaintiff,

   -v-

COMMODITY FUTURES TRADING
COMMISSION,

      Defendant.

------------------------------------------------------------ x

:
:
:
:
:
:
:
:
:
:
:

Case No. 19 Civ. 10151 (LAK) (OTW)


**DEFENDANT'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**


             AUDREY STRAUSS
             Acting United States Attorney for the
             Southern District of New York
             86 Chambers Street, 3rd Floor
             New York, New York 10007
             Tel.: (212) 637-2799
             Fax: (212) 637-2786
             E-mail: alexander.hogan@usdoj.gov


ALEXANDER J. HOGAN
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT ...............................................................................................................3

I.      Defendant's Search Was Adequate............................................................3

II.     Defendant's Deliberative Process Withholdings Are Proper..................6

III.    The "Public Relations" Documents are Entitled to Attorney Client
        and Work Product Protection....................................................................9

IV.     The "Government Misconduct" Exception Does Not Apply ...............11

V.      Defendant's Exemption 7(A) Withholdings are Proper........................14

VI.     Defendant's *Vaughn* Index is Sufficiently Detailed .............................17

VII.    *In Camera* Review is Not Warranted.....................................................19

CONCLUSION...........................................................................................................20

TABLE OF AUTHORITIES

Page(s)

Cases

*ACLU v. CIA*,
   710 F.3d 422 (D.C. Cir. 2013) ............................................................................... 17

*ACLU v. Dep't of Defense*,
   901 F.3d 125 (2d Cir. 2018) ................................................................................... 17

*Am. Ctr. for Law & Justice v. United States Dep't of Justice*,
   325 F. Supp. 3d 162 (D.D.C. 2018) ..................................................................... 7, 9

*American Civil Liberties Union v. Dep't of Justice*,
   844 F.3d 126 (2d Cir. 2016) ..................................................................................... 7

*Associated Press v. United States Dep't of Justice*,
   549 F.3d 62 (2d Cir. 2008) ..................................................................................... 19

*Calvin Klein Trademark Trust v. Wachner*,
   198 F.R.D. 53 (S.D.N.Y. 2000) ............................................................................. 10

*Carney v. U.S. Dep't of Justice*,
   19 F.3d 807  (2d Cir. 1994) .............................................................................. 3, 4, 6

*DOJ v. Landano*,
   508 U.S. 165 (1993) ............................................................................................... 17

*DOJ v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749, (1989) ......................................................................................... 11, 12

*Donovan v. FBI*,
   806 F.2d 55 (2d Cir. 1986) ............................................................................... 17, 18

*Ferguson v. FBI*,
   No. 89-cv-5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995) ....................... 1

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
   739 F. Supp. 2d 515 (S.D.N.Y. 2010) ..................................................................... 9

*Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*,
   181 F. Supp. 2d 356 (S.D.N.Y. 2002) ................................................................... 20

*Grand Cent. P'ship v. Cuomo*,
   166 F.3d 473 (2d Cir. 1999) ..................................................................................... 3

*Halpern v. FBI*,
   181 F.3d 279 (2d Cir. 1999) ............................................................................... 17, 18

*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*,
   929 F.2d 81 (2d Cir. 1991) ....................................................................................... 8

*In re Grand Jury Subpoenas Duces Tecum*,
   798 F.2d 32 (2d Cir. 1986) ..................................................................................... 13

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ................................................................... 11, 12, 14

*In re Subpoena to U.S. Attorney's Office, Southern District of New York*, No. M,
   8-85-BSJ, 2000 WL 45726 (S.D.N.Y. Jan. 20, 2000) .......................................... 16

*Judicial Watch v. Dep't of Homeland Sec.*,
   736 F. Supp. 2d 202 (D.D.C. 2010) ......................................................................... 9

*Judicial Watch, Inc. v. DOS*,
  241 F. Supp. 3d 174 (D.D.C. 2017) ........................................................... 11
*Judicial Watch, Inc. v. Export-Import Bank*,
  108 F. Supp. 2d 19 (D.D.C. 2000) .......................................................... 3, 9
*Keys v. Dep't of Justice*,
  830 F.2d 337 (D.C. Cir. 1987) .................................................................. 15
*Liberation Newspaper v. U.S. Dep't of State*,
  80 F. Supp. 3d 137 (D.D.C. 2015) .............................................................. 5
*Local 3, Int'l Brotherhood of Elec. Workers, AFLCIO v. N.L.R.B.*,
  845 F.2d 1177 (2d Cir. 1988) .................................................................... 19
*Matter of Commodity Futures Trading Comm'n.*,
  941 F.3d 869 (7th Cir. 2019) .................................................................... 14
*Maynard v. C.I.A.*,
  986 F.2d 547 (1st Cir. 1993) ................................................................... 3, 6
*N.L.R.B. v. Sears, Roebuck & Co.*,
  421 U.S. 132 ............................................................................................ 12
*N.Y. Times Co. v. U.S. Dep't of Justice*,
  390 F. Supp. 3d 499 (S.D.N.Y. 2019) ...................................................... 15
*N.Y. Times Co. v. U.S. Dep't of Justice*,
  756 F.3d 100 (2d Cir. 2014) ....................................................................... 3
*Nat'l Day Laborer Org. Network v. Immigration & Customs En't Agency*,
  877 F. Supp. 2d 87 (S.D.N.Y. 2012) .......................................................... 9
*Nat'l Immigration Project of Nat. Lawyers Guild v. U.S. Dep't of Homeland Sec.*,
  No. 11-cv-3235 (JSR), 2014 WL 6850977 (S.D.N.Y. Dec. 3, 2014) ....... 12
*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. FDIC*,
  No. 93-cv-2471 (GTV), 1995 WL 104835 (D. Kan. March 7, 1995) ....... 16
*Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urban Dev.*,
  19 F. Supp. 3d 1 (D.D.C. 2013) ........................................................ *passim*
*New Hampshire Right to Life v. United States Dep't of Health & Human Servs.*,
  778 F.3d 43 (1st Cir. 2015) ........................................................................ 7
*New York Times Co. v. Nat. Sec. Agency*,
  205 F. Supp. 3d 374 (S.D.N.Y. 2016) ................................................. 18, 20
*New York Times v. U.S. Dep't of Justice*,
  872 F. Supp. 2d 309 (S.D.N.Y. 2012) ........................................................ 1
*Prot. Agency v. Mink*,
  410 U.S. 73 (1973) ................................................................................... 12
*Protect Democracy Project, Inc. v. U.S. Dep't of Defense*,
  320 F. Supp. 3d 162 (D.D.C. 2018) ............................................................ 7
*Reform v. Loretta Lynch*,
  156 F.Supp.3d 101 (D.D.C. 2016) .............................................................. 9
*Sack v. Dep't of*,
  *Def.*, 823 F.3d 687 (D.C. Cir. 2016) ........................................................ 14
*Seife v. United States Dep't of State*,
  298 F. Supp. 3d 592 (S.D.N.Y. 2018) ......................................................... 8
*Shinnecock Indian Nat. v. Kempthorne*,
  652 F. Supp. 2d 345 (E.D.N.Y. 2009) ...................................................... 18

*U.S. Dep't of Labor*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ........................................................................... 9

*Wilner v. Nat. Sec. Agency*,
   592 F.3d 60 (2d Cir. 2009) ..................................................................................... 19

*Wright v. Admin. for Children & Families*,
   No. 15-cv-218 (BAH), 2016 WL 5922293 (D.D.C. Oct. 11, 2016) ......................... 11

**Statutes**

5 U.S.C. § 552(b)(7)(A) .............................................................................................. 15

Defendant Commodity Futures Trading Commission ("CFTC") respectfully submits this memorandum of law in further support of its motion for summary judgment ("Defendant's Motion" or "Def Mem."), *see* Dkt. No. 34, and in opposition to Plaintiff's motion for summary judgment ("Plaintiff's Motion" or "Pl. Mem."), *see* Dkt. No. 38.

## PRELIMINARY STATEMENT

In the FOIA request at issue in this case (the "Request"), Plaintiff sought a wide array of documents relating to the CFTC's enforcement proceeding (and settlement of that proceeding) against Kraft Foods Group, Inc. and Mondelez Global LLC (collectively, "Kraft"). *Commodity Futures Trading Commission v. Kraft Foods Grp., Inc.*, Case No. 15-cv-02881 (N.D. Ill.). For example, Plaintiff sought "[a]ll documents and communications concerning the binding agreement referenced in docket entry 302" in the Kraft case, "[a]ll documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to approve the Consent Order," and "[a]ll documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to approve the Consent Order without findings of fact or conclusions of law." *See* Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1 ("Plaintiff's 56.1 Statement" or "Pl. 56.1"), Dkt. No. 37, at ¶ 13.[1] In response to this broad request that sought documents that clearly fell within the ambit of the attorney-client and work product privileges—specifically, why the CFTC decided to settle the

---

[1] In connection with its motion for summary judgment, Plaintiff submitted a statement of material facts pursuant to Local Civil Rule 56.1. While Defendant responds to that statement of facts, Defendant notes that "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. FBI*, No. 89-cv-5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *New York Times v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (noting Local Civil Rule 56.1 statement not required in FOIA actions in this Circuit). Accordingly, Defendant has not submitted one with its opening motion.

Kraft case as it did—the CFTC conducted an expansive search that returned more than 26,000 documents, which the CFTC reviewed.  In response to the CFTC's motion for summary judgment, Plaintiff has raised two narrow challenges.  First, Plaintiff challenges the adequacy of the CFTC's search because it ended on August 19, 2019, as opposed to August 21, 2019.  Plaintiff speculates that CFTC records from the two additional days are "highly likely to contain a trove of informative, non-privileged communications about the settlement, gag order, and Press Releases."  *See* Pl. Mem. at 2.  As explained in the CFTC's motion for summary judgment, however, the CFTC selected the August 19th end date because the events referenced in Plaintiff's request all occurred on or before that date.  Moreover, even if, as Plaintiff speculates, there were post-deliberative discussions about any part of Plaintiff's FOIA request, those discussions would also be pre-deliberative with respect to the CFTC's active defense of a contempt charge and its active prosecution of an enforcement proceeding.

Second, Plaintiff generally challenges the CFTC's claimed exemptions, focusing on "Public Relations Documents," *see* Pl. Mem. at 17.  These documents, however, are properly exempt pursuant to the deliberative process privilege, the attorney-client and work product privileges, and the law enforcement privilege.  As an initial matter, Plaintiff incorrectly argues that the decision to settle the Kraft action became final on May 29, 2019.  This, however, is inaccurate as the settlement was not approved until August of 2019.  In any event, an agency's deliberations as to how to communicate with the public are subject to the deliberative process privilege.  Additionally, in light of the "gag" order in the settlement agreement, it is unsurprising that the CFTC sought legal review with respect to its communications with the public.  Finally, Plaintiff contends that claimed exemptions do not apply under the "government misconduct" exception because of the Kraft court's mention of "egregious misconduct."  As discussed below, this

2

exception does not apply in the FOIA context, and moreover, the CFTC disputes that it engaged in such misconduct (let alone misconduct to a degree that warrants this exception).

## ARGUMENT

### I.  Defendant's Search Was Adequate

For a search to be adequate the agency must simply demonstrate that its search was "reasonably calculated to discover the requested documents."  *See Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999); *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014) ("The adequacy of a search is not measured by its results, but rather by its method.").  The search "need not be perfect, but rather need only be reasonable," *Grand Cent. P'ship*, 166 F.3d at 489, because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters."  *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (internal citation omitted).

An agency may satisfy its burden of demonstrating an adequate search through "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807 812 (2d Cir. 1994) (footnote omitted).  Such declarations may be made by the individuals supervising each agency's search, rather than by each individual who participated.  *Id.* at 814.  Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith."  *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812.  "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption.  *Carney*, 19 F.3d at 813 (internal citation and quotation omitted).  Thus, a court may award summary judgment if the affidavits provided by the agency are "adequate on their face."

*Id.* at 812.

Plaintiff argues that Defendant's search was inadequate because it did not search for potentially responsive documents from August 20-21, 2019 (but, rather, stopped its search at August 19). The full background of the Kraft proceeding (with citations to supporting documents) is set forth in Defendant's Motion. *See* Def. Mem. at 3-4. Most notably for purposes of the instant argument, the CFTC filed suit against Kraft in the United States District Court for the Northern District of Illinois on April 1, 2015. On March 22, 2019, the CFTC and Kraft reached an agreement in principle to settle the case. The court directed the parties to submit a proposed consent order to the court before the next court date. The parties subsequently submitted a proposed consent order, which the court entered on August 14, 2019. On August 15, 2019, the CFTC issued a statement regarding the settlement, as well as a press release announcing the settlement. Additionally, two CFTC Commissioners, Commissioner Dan Berkovitz and Commissioner Rostin Behnam, issued their own joint statement regarding the settlement (together with the CFTC's statement and press release, the "Press Releases").

On August 16, 2019, Kraft filed a motion for contempt, arguing that the CFTC had violated the settlement agreement by issuing the Press Releases (which Plaintiff characterizes as a violation of the "gag" provision in the settlement agreement, *see* Pl. Mem. at 1). On August 19, 2019, the court held an emergency status hearing on Kraft's motion. At the hearing, the court asked the CFTC if it would agree to remove the Press Releases from its website pending a decision on the motion for contempt, and an attorney for the CFTC agreed on the record to do so.

Plaintiff argues that "the sequence of events leading up to this two-day period [August 20-21] logically dictates that the Commissioners, their staffs, and/or other implicated CFTC employees would have discussed the gag provision and the Press Releases immediately following

4

the CFTC's extraordinary decision to retract them." Pl. Mem. at 13. Plaintiff makes the highly speculative claim that "it would be astounding if a CFTC Staff attorney's 'on the spot' retraction of the Press Releases on August 19, 2019 did not spark vigorous comment within the agency, particularly since these events were being covered by various news outlets on the days at issue." *Id*. at 14.

As argued in Defendant's Motion, Plaintiff's claim that the CFTC likely had discussions about that decision in the following two days is entirely speculative. *See Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015) ("speculation as to the potential results of a different search does not necessarily undermine the adequacy of the agency's actual search"). This conclusion is not undermined by Plaintiff's argument that the decision at the August 19 hearing must have sparked subsequent follow-up conversations in light of statements made days *earlier* by Commissioners Berkovitz and Behnam that the CFTC had a duty and right to inform the public regarding the CFTC's enforcement actions. *See* Pl. Mem. at 13. While these statements were made prior to the August 19 hearing at issue, the CFTC still agreed to remove the Press Releases on the date of the hearing. There is no reason to think that this decision on August 19 would have sparked subsequent communications regarding "the decision . . . to remove the press releases," which is what the Request sought.[2] Pl. 56.1 at ¶ 13. The sequence of events here is clear and established that the decision to remove the Press Releases had already been made as of August 19. Specifically, Kraft filed a motion for contempt on the basis of the Press Releases, and on August 19, 2019, the court asked at a hearing whether the CFTC would agree to remove the

---

[2] And, to the extent there were such communications, these communications would likely be subject to the same exemptions noted below, especially given, as of that date, there was a pending contempt proceeding that would only further justify the invocation of the attorney-client and work product privileges. *See* Def .Mem. at 10.

Press Releases from its website while the motion was being decided, which the CFTC agreed to do.  It is entirely predictable that the CFTC, prior to this hearing, would formulate its response to the contempt motion and consider whether it would temporarily remove the Press Releases in light of a pending contempt motion.  The possibility that there would be a flurry of communications in response to a predictable event—a court asking a party to temporarily remedy an alleged harm until the court could more thoroughly consider the issue—is indeed speculative in nature and does not overcome the good faith presumption to which Defendant is entitled.  *See Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993) ("[T]he FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith."*); see also Carney*, 19 F.3d at 813 ("[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption.) (internal citation and quotation omitted).[3]

## II.    Defendant's Deliberative Process Withholdings Are Proper

Plaintiff asserts a narrow challenge to Defendant's invocation of the deliberative process privilege, which is housed in FOIA's Exemption 5.  Plaintiff argues:

> [T]he CFTC appears to be improperly invoking FOIA Exemption 5 to withhold information about at least the following categories of non-protected information: (a) communications with officials from the CFTC's Office of Public Affairs (the "Public Affairs Documents") taking place after the Enforcement Division had a "final [consent] order" on May 29, 2019 (Ex. G at 2); (b) drafts of the Press Releases also prepared after the Division of Enforcement had a final consent order (*id*.); and (c) documents concerning public messaging after the *Kraft* settlement was published (the "Settlement Messaging Documents", and all together, the "Public Relations Documents").

---

[3] The CFTC does not argue that there were no communications in relation to the contempt proceeding that occurred after August 19, 2019.  However, how to litigate a contempt proceeding (in addition to being privileged discussions subject to multiple privileges) is entirely distinct from a request seeking information relating to the decision to retract the Press Releases—a decision made on August 19.

Pl. Mem. at 17.[4]  As noted above, Plaintiff characterizes these documents as "Public Relations Documents" and it argues that these documents were improperly withheld because an agency's deliberations relating to its messaging and public relations strategies are not exempt pursuant to the deliberative process privilege.  *Id*. at 17-21.

Deliberations relating to how to communicate decisions to the public have been recognized to be protected by the deliberative process privilege.  *See New Hampshire Right to Life v. United States Dep't of Health & Human Servs*., 778 F.3d 43, 54 (1st Cir. 2015) ("These documents deal with the Department's decision of how and what to communicate to the public, which is a decision in and of itself."); *Protect Democracy Project, Inc. v. U.S. Dep't of Defense,* 320 F. Supp. 3d 162, 177 (D.D.C. 2018) ("Revealing [documents'] contents would expose the process by which agency officials crafted a strategy for responding to the press and to Congress."); *Am. Ctr. for Law & Justice v. United States Dep't of Justice*, 325 F. Supp. 3d 162, 171-72 (D.D.C. 2018) ("While the D.C. Circuit does not appear to have addressed the application of this [deliberative process] privilege to public-relations issues, the overwhelming consensus among judges in this District is that the privilege protects agency deliberations about public statements, including the use of talking points.") (collecting cases).

While the Second Circuit has not elaborated in depth on the issue of whether an agency's public relations strategy is protected by the deliberative process privilege, it did preview its position on this issue.  In *American Civil Liberties Union v. Dep't of Justice*, 844 F.3d 126, 133 (2d Cir. 2016), the documents at issue, which the court ruled were properly withheld, were: (1) a

---

[4] Plaintiff characterizes the consent order as being "final" as of May 29, 2019.  However, this characterization is inaccurate.  As explained in the Declaration of Rosemary Bajorek ("Bajorek Decl."), all settlements of CFTC claims in litigation must be approved by a majority vote of the Commissioners of the CFTC, which had not happened as of May 29 and, thus, the settlement was not final.  Dkt. No. 35 at ¶ 11.

"proposed op-ed article that suggested some ways of explaining the Government's legal reasoning in support of drone strikes" and (2) "a set of suggested talking points concerning the legal basis for drone strikes."  While *American Civil Liberties Union* does not contain a detailed analysis of the issue, it clearly holds that a deliberative document relating to the presentation of information to the public is subject to the deliberative process privilege.  This approach aligns with those of the First Circuit and courts in the District of Columbia, as discussed above.  *See Seife v. United States Dep't of State*, 298 F. Supp. 3d 592, 616 (S.D.N.Y. 2018) ("Thus, while *American Civil Liberties Union* contains no detailed analysis in connection with the privilege's application to that draft document, it does suggest that, if faced with the question of whether decisions regarding press strategy may be exempt from disclosure under the deliberative process privilege, the Second Circuit's answer would be 'yes.'").

The need to protect internal deliberations relating to communicating information to the public is particularly important in situations where the topic is the subject of public scrutiny, which was the case here (as Plaintiff notes).  *See* Pl. Mem. at 14.  The deliberative process privilege aims to "protect[] the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991).  As the courts noted above properly hold, there is no reason this principle does not equally apply to how the government presents information to the public.  *See Seife*, 298 F. Supp. 3d at 616 ("[A]n agency's decision regarding how to present its substantive policies to the public often involves the evaluation of alternative public relations policies, policies which by their very nature are audience-sensitive and must anticipate public reaction.  Even when an underlying decision or policy has already been established by the agency, the decision of how, and to what extent, to convey that policy to the public may require input by many working components

within the agency, or even an analysis of the underlying policy itself."). Accordingly, Plaintiff's

argument that the "Public Affairs Documents," Pl. Mem. at 17-19, "Draft Press Releases," *id*. at

19-20, and "Settlement Messaging Documents," *id*. at 21, cannot be withheld because they concern

"what to communicate to the public," *id*. at 21, should be rejected.

Defendant does not dispute that some courts have reached a different result and concluded

that deliberations relating to public relations are not subject to the deliberative process privilege.

*See* Pl. Mem. at 18 (citing *Nat'l Day Laborer Org. Network v. Immigration & Customs En't

Agency*, 877 F. Supp. 2d 87, 102 (S.D.N.Y. 2012) and *Fox News Network, LLC v. U.S. Dep't of

the Treasury*, 739 F. Supp. 2d 515, 543 (S.D.N.Y. 2010)). However, these two decisions cited by

Plaintiff predate the Second Circuit's 2016 decision in *American Civil Liberties Union* and are

contrary to many other decisions that have reached the opposite result. *See Am. Ctr. for Law &

Justice*, 325 F. Supp. 3d at 171-72 (collecting cases); *Comm. on Oversight & Govt. Reform v.

Loretta Lynch*, 156 F.Supp.3d 101, 112 (D.D.C. 2016) ("[T]he Court holds that documents

withheld by defendant that reveal the Department's internal deliberations about how to respond to

press and Congressional inquiries into Operation Fast and Furious are protected by the deliberative

process privilege.") (collecting cases); *Judicial Watch v. Dep't of Homeland Sec.*, 736 F. Supp. 2d

202, 208 (D.D.C. 2010) (documents concerning response to press inquiries protected by

deliberative process privilege); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of

Labor*, 478 F. Supp. 2d 77, 83 (D.D.C. 2007) (agency response to news article protected by

deliberative process privilege).

## III.   The "Public Relations" Documents are Entitled to Attorney Client and Work Product Protection

Plaintiff argues that the "attorney client privilege does not apply to documents regarding

policy advice or the proper handling of press inquiries or public messaging, regardless of whether

such advice is provided by an attorney." Pl. Mem. at 22.  Plaintiff insists that these privileges are meant "'to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally.'" Pl. Mem. at 22 (quoting *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000)).  This contention, however, misses a critical distinction in this case.[5]  Here, as Plaintiff's Motion makes clear, "the Consent Order also contained an unprecedented 'gag' provision barring the CFTC from discussing in public the factual or legal bases for the settlement . . . On August 15, despite the gag provision, CFTC Commissioners Berkovitz and Behnam issued a joint press release . . . On August 16, 2019, Kraft moved for contempt against the CFTC for violating the Consent Order."  Pl. Mem. at 5-6.  In short, Plaintiff alleges that the consent order prevented CFTC from issuing the Press Releases, CFTC nonetheless issued the Press Releases, which spawned a subsequent contempt proceeding (including an order by a court granting, in part, Kraft's contempt motion against the CFTC).  Therefore, it is unsurprising that CFTC engaged in legal deliberations relating to its public commentary on the Kraft settlement.  As the *Vaughn* Index ("Index"), *see* Dkt. No. 35, repeatedly notes, communications relating to these draft Press Releases were "made for the purpose of seeking and providing legal advice as to what to communicate to the public."  *See, e.g.*, Index at 11, 13, 25.

In light of the fact that the Press Releases did, in fact, have legal implications that led to a court proceeding, it is unsurprising that Defendant had internal deliberations of a legal nature prior

---

[5] For the same reasons, this argument counters Plaintiff's contention that the draft Press Releases (or communications related thereto) could not "prematurely portray agency positions." Pl. Mem. at 20.  Internal deliberations and seeking legal advice relating to whether the agency could issue the Press Releases would indeed risk prematurely divulging the agency's position on this issue.

to issuing the Press Releases.  Accordingly, Defendant's invocation of the attorney client and work

produce privileges is entirely supported, reasonable, and consistent Plaintiff's factual allegations.[6]

## IV.    The "Government Misconduct" Exception Does Not Apply

While the "misconduct doctrine" may preclude the application of the deliberative process

privilege in civil cases where extreme government wrongdoing exists, numerous courts have held

that this doctrine does not apply in the FOIA context.  *See Judicial Watch, Inc. v. DOS*, 241 F.

Supp. 3d 174, 182 (D.D.C. 2017); *Wright v. Admin. for Children & Families*, No. 15-cv-218

(BAH), 2016 WL 5922293, at *11 (D.D.C. Oct. 11, 2016).  This conclusion is justified because,

as the Supreme Court has made clear in the context of evaluating disclosure in the FOIA context,

whether disclosure is "warranted cannot turn on the purposes for which the request for information

is made."  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771, (1989).  In fact,

the lone case cited by Plaintiff to support its argument, *In re Sealed Case*, 121 F.3d 729 (D.C. Cir.

1997), undermines Plaintiff's position.  The *In re Sealed Case* "arose in the context of a criminal

investigation, and the Court of Appeals has never squarely applied the government misconduct

exception" in the FOIA context.  *Judicial Watch*, 241 F. Supp. 3d at 182 (internal citation and

quotation omitted).  In *In re Sealed Case*, the court "specifically carved FOIA cases out of its

general recognition that the deliberative process privilege could be overcome by a showing of

need."  *Id*. at 183.  Specifically, that court stated, "[t]his characteristic of the deliberative process

privilege is not an issue in FOIA cases because the courts have held that the particular purpose for

---

[6] In connection with this memorandum, the CFTC has submitted the Supplemental Declaration
of Rosemary Bajorek ("Supplemental Bajorek Declaration").  As described therein, the CFTC
notes two documents relating to the Press Releases where the *Vaughn* index omitted the
applicability of several privileges.  Accordingly, through the Supplemental Bajorek Declaration,
the CFTC identifies two documents that, in addition to the deliberative process privilege, are also
subject to the attorney-client privilege, the work product privilege and/or the law enforcement
privilege.  *See* Supplemental Bajorek Declaration at ¶¶ 14, 18.

which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." *In re Sealed Case*, 121 F.3d at 737 n.5 (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 n. 16 (1975); *Env't Prot. Agency v. Mink*, 410 U.S. 73, 86 (1973); *Reporters Comm.*, 489 U.S. at 771-72).

In other words, as the Supreme Court has held (as does the case Plaintiff cites), a document is either exempt or not under FOIA and this analysis is not informed by the reason a plaintiff claims it needs to be disclosed (such as to shed light on alleged misconduct, *see* Pl. Mem. at 23).  The document (and whether an exemption applies) must be evaluated on its face without considering the need or motivation for the document's release, thus eliminating the justification for invoking the government misconduct exception—to "shed light" on any alleged misconduct.  Pl. Mem. at 23 (quoting *In re Sealed Case*, 121 F.3d at 738).

It is true that some courts have determined that certain case-by-case exceptions to privileges available in other litigation may also overcome Exemption 5 in FOIA.  *See, e.g., Nat'l Immigration Project of Nat. Lawyers Guild v. U.S. Dep't of Homeland Sec.*, No. 11-cv-3235 (JSR), 2014 WL 6850977, at *5 (S.D.N.Y. Dec. 3, 2014); *Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 14 (D.D.C. 2013).[7] However, even if the Court does determine that as a matter of law, a showing of governmental misconduct may abrogate an otherwise proper assertion of Exemption 5 (which Defendant maintains is unwarranted for the reasons noted above), Plaintiff has not demonstrated the sort of extreme wrongdoing that would permit its application here.

---

[7] Notably, while these two cases indicated that such exceptions could be recognized in the FOIA context, neither case found the exception warranted such that the privilege was overcome.

The courts that have entertained a government misconduct exception in FOIA "have construed it narrowly, limiting its application to cases of extreme government wrongdoing." *Neighborhood Assistance Corp. of Am.*, 19 F. Supp. 3d at 14 (internal citations and quotation omitted). That high standard is necessary because the privileges Exemption 5 incorporates are also not easily overcome in general litigation. *See In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986) (holding that the crime/fraud exception to the attorney-client privilege "applies only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal [] criminal activity").

In this case, the alleged conduct does not fall within the crime-fraud exception or otherwise show extreme government misconduct. Here, the CFTC was held in civil contempt for its actions and there was a litigated contempt proceeding. Additionally, Plaintiff heavily relies on the Kraft court's statement that the CFTC's actions were "egregious." Pl. Mem. at 23 (quoting Minute Entry, Kraft, Case No. 15-cv-2881, Dkt. No. 378 (N.D. Ill. Feb. 14, 2020)). However, as the quoted docket entry makes clear, the Kraft court has not provided any details whatsoever as to the alleged egregious conduct. Rather, this statement is made in one sentence in a one-paragraph minute order. This lone statement hardly satisfies the lofty threshold that the government misconduct exception requires.

This conclusion is particularly warranted where the government did not attempt to conceal its conduct. Rather, the very Press Releases at issue specifically noted the "gag" provision in the settlement agreement and explained why, in the CFTC's view, it did not bar the issuance of the Press Releases. *See* Pl. Ex. B, Dkt. No. 39-2. To the extent one believes there is misconduct afoot, the CFTC has already publicly stated the basis for its actions—it believed that the settlement agreement only bound the Commission itself (*i.e.* the Commission as a collective body) and not

13

the individual Commissioners who may speak in their individual capacities. *Id.*[8] Not only do the actions themselves not rise to the "extreme" or criminal level envisioned by the exception, but the CFTC's candor when it took the very actions at issue belies any such conclusion.

The contempt proceeding in the Kraft case highlights another fundamental flaw in Plaintiff's reliance on this doctrine. As Plaintiff argues, the purpose of the government misconduct exception is to release documents that "'may shed light on government misconduct.'" Pl. Mem. at 23 (quoting *In re Sealed Case*, 121 F.3d at 738). Here, there has already been a judicial proceeding and judicial finding in relation to the alleged misconduct. Accordingly, while all of the rationales for the asserted privileges remain (the need to allow for candid government deliberations and to allow for candid conversations between attorney and client), the countervailing consideration relating to shedding light on alleged misconduct is greatly mitigated given these issues have already been addressed in another proceeding.

## V.   Defendant's Exemption 7(A) Withholdings are Proper

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" where disclosure would result in one of six enumerated harms set forth in 5 U.S.C. § 552(b)(7)(A)-(F). "Exemption 7 uses the term 'law enforcement' to describe the act of enforcing the law, both civil and criminal." *Sack v. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir.

---

[8] The Seventh Circuit, in fact, agreed with the CFTC's argument on this point. It concluded, "every member of the Commission has a right to publish an explanation of his or her vote. This is a right that the Commission cannot negate. It could not vote, three to two, to block the two from publishing their views. So if we understand the consent decree as an effort to silence individual members of the Commission, it is ineffectual." *Matter of Commodity Futures Trading Comm'n.*, 941 F.3d 869, 873 (7th Cir. 2019). In publishing the Press Releases (despite the "gag" provision) the Commissioners stated that the settlement agreement only applied to the Commission itself and not to the individual Commissioners. The Seventh Circuit agreed, thus undermining any argument that the CFTC's conduct was sufficiently extreme to warrant the application of the government misconduct exception.

2016) (internal citation and quotation omitted).  To show that information is "compiled for law enforcement purposes," the government need only demonstrate a "nexus between the agency's activity . . . and its law enforcement duties."  *Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987); *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 390 F. Supp. 3d 499, 514 (S.D.N.Y. 2019) ("The term 'compiled' in exemption 7 is broad; it requires only that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption.") (internal citation and quotation omitted).

Exemption 7(A) exempts from disclosure information that "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  To sustain its burden under Exemption 7(A), the government must show "(1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm."  *N.Y. Times Co.*, 390 F. Supp. 3d at 513 (internal citations and quotation omitted).

Plaintiff contends that the Public Relations Documents cannot be properly withheld under Exemption 7(A) because they do not bear on any law enforcement purpose and that their disclosure would not cause any cognizable harm.  Pl. Mem. at 23.  As Plaintiff alleges, the settlement agreement in the Kraft case "was later torn up by the Court *sua sponte*" as a result of the Press Releases at issue.  *Id*. at 14.  Also as Plaintiff notes, this enforcement proceeding was the "first litigated enforcement action applying" a newly enacted statutory provision.  *Id*. at 4.  In other words, these Press Releases resulted in the Kraft court vacating a $16 million settlement in a novel enforcement action.  In light of these facts, it belies logic to say that disclosure of these Public Relations Documents "could [not] reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

This conclusion is supported by the fact that the Kraft enforcement action remains ongoing and, critical to the settlement of the case (as indicated by public court filings), is how the contempt action will be resolved.  For example, at a March 5, 2020, hearing before the Kraft court, the parties discussed a newly agreed upon settlement agreement.  *See Kraft*, Case No. 15-cv-02881, Dkt. No. 387.  Central to that hearing was what (if any) findings of fact the court would make with respect to the contempt motion, what (if any) remedy the court would order on the contempt motion, whether CFTC would appeal any such contempt ruling, and, if it did appeal, how Kraft would respond to that appeal.  *Id*. at 9-10, 13.   The fact that the contempt proceeding could affect the settlement agreement was noted by the Kraft court when it stated, "obviously the previous consent decree didn't incorporate the contempt issue because it wasn't part of the case yet . . . So I'm trying to make sure that whatever – I don't want to blow up any agreement we have by what I issue."  *Id*. at 7.[9]

The above demonstrates that the contempt proceeding in the Kraft case is intertwined with the settlement of that enforcement action.  Therefore, it could reasonably be expected that the release of the Public Relations Documents could affect the contempt proceeding, which would, in turn, have implications on the settlement of the enforcement proceeding.  *See, e.g., In re Subpoena to U.S. Attorney's Office, Southern District of New York*, No. M 8-85-BSJ, 2000 WL 45726, at *1 (S.D.N.Y. Jan. 20, 2000) (documents with the potential to compromise settlement negotiations in *qui tam* were protected by the law enforcement privilege); *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. FDIC*, No. 93-cv-2471 (GTV), 1995 WL 104835, at *5 (D. Kan. March 7, 1995) (law

---

[9] This same argument negates Plaintiff's assertion that "[t]he CFTC also fails to identify the function and significance of the draft Press Releases to its purported litigation and settlement strategy."  Pl. Mem. at 20 (internal citation and quotation omitted).  Again, the Press Releases did, in fact, affect the original settlement and are continuing to play a role in the enforcement proceeding.

enforcement privilege protected documents pertaining to FDIC investigation, the disclosure of which "may compromise and frustrate future negotiations for settlement of the matters under investigation"). Accordingly, the CFTC has easily met its burden of demonstrating that there is a law enforcement proceeding pending and that the release of the Public Relations Documents could reasonably be expected to cause an articulable harm with respect to that proceeding. Therefore, its withholding of the Public Relations Documents on that basis is proper.[10]

## VI.   Defendant's *Vaughn* Index is Sufficiently Detailed

In a fleeting paragraph, Plaintiff asks that the Court order Defendant to supplement its Index. *See* Pl. Mem. at 25. However, Plaintiff provides no detail whatsoever as to what information the Index is lacking.

An agency's explanation for the application of exemptions is sufficient if it appears logical and plausible. *See ACLU v. Dep't of Defense*, 901 F.3d 125, 133 (2d Cir. 2018) (as amended Aug. 22, 2018). The specific form and contents of a *Vaughn* index vary depending on the needs of the case. There is no uniform requirement for how an index must look, what information it must contain, or whether one need be filed at all. *See ACLU v. CIA*, 710 F.3d 422, 432-33 (D.C. Cir. 2013); *Halpern v. FBI*, 181 F.3d 279, 291 (2d Cir. 1999) ("[A] number of courts, including our own, have eschewed rigid adherence to any particular indexing format under the *Vaughn* standard, opting instead for a functional approach."). Ultimately, a *Vaughn* index and agency explanations are tools for the district court, "not ends in themselves." *Donovan v. FBI*, 806 F.2d 55, 58–59 (2d Cir. 1986) (internal quotation omitted), *abrogated on other grounds by DOJ v. Landano*, 508 U.S. 165 (1993).

---

[10] Notably, even if the Court found that these documents were not protected by Exemption 7(A), the other exemptions discussed herein would still apply and bar disclosure.

A review of the Index and accompanying Bajorek Declaration demonstrates that the descriptions provide more than sufficient information to justify the withholdings and do not "imped[e Plaintiff] from evaluating the withholdings." Pl. Mem. at 25. True, as in any FOIA case, Plaintiff does not know the contents of the withheld documents (or portions of documents)—that is the very purpose of withholdings. But the Index and Bajorek Declaration detail specific and sufficient information regarding the origins, contents, and purpose of the documents that allow Plaintiff to evaluate the propriety of Defendant's asserted exemptions. *See Shinnecock Indian Nat. v. Kempthorne*, 652 F. Supp. 2d 345, 354 (E.D.N.Y. 2009) (describing *Vaughn* index as a document with the purpose of "describ[ing] with reasonable specificity the nature of the documents at issue and the justification for nondisclosure") (internal citation and quotation omitted). In fact, Plaintiff is only challenging 114 documents of the 1,873 that were produced in this litigation. *See* Pl. Mem. at 22 n.12 (citing Plaintiff's Exhibit H). Clearly, "[t]he [agency] declaration articulated a reasonably detailed explanation for the redactions which was both logical and plausible. It did so in a way that served its functional purpose by permitting the [Plaintiff] to meaningfully, and fairly specifically, challenge the proffered explanations." *New York Times Co. v. Nat. Sec. Agency*, 205 F. Supp. 3d 374, 385 (S.D.N.Y. 2016). Here, the Index was sufficiently detailed in order for Plaintiff to clearly assert its challenges and, in fact, narrow its challenges to less than 10% of the documents at issue. As their respective motions make clear, the parties have been able to present the relevant issues to the Court and articulate their positions as to whether the claimed exemptions are proper. Therefore, the Index has satisfied the "functional approach," *see Halpern*, 181 F.3d at 291, by providing the Court (and the parties) with the information necessary to evaluate the withholdings at issue. *Donovan*, 806 F.2d at 58–59 (2d Cir. 1986) (internal quotation omitted).

## VII. *In Camera* Review is Not Warranted

Plaintiff requests that the Court conduct an *in camera* review of the disputed records to determine whether they should be withheld under the claimed exemptions. *See* Pl. Mem. at 22 n.12. However, *in camera* review is "the exception, not the rule," and "the propriety of such review is a matter entrusted to the district court's discretion." *Local 3, Int'l Brotherhood of Elec. Workers, AFLCIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988). "*In camera* review is appropriate where the government seeks to exempt entire documents but provides only vague or sweeping claims as to why those documents should be withheld. Only if the government's affidavits make it effectively impossible for the court to conduct *de novo* review of the applicability of FOIA exemptions is *in camera* review necessary." *Associated Press v. United States Dep't of Justice*, 549 F.3d 62, 67 (2d Cir. 2008) (internal citations and quotation omitted).

"Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat. Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (internal citation and quotation omitted).

The Bajorek Declaration and Index are sufficiently detailed to allow this Court to determine whether the withholdings are proper. Defendants' reasons for withholding are not "vague" nor are their claims to withholding "sweeping." *Associated Press*, 549 F.3d at 67. As discussed above, *see supra* at 18, the Index was sufficient to permit Plaintiff to clearly articulate its challenges to the withholdings.

Additionally, the parties primarily disagree on issues of law. For example, whether deliberations relating to public relations (or seeking legal advice in relation to the Press Releases)

are protected by Exemption 5.  These determinations are legal issues that do not require the Court to review the documents at issue.

Plaintiff also fails to point to any evidence of agency bad faith because there is none.  To the contrary, Defendant produced a lengthy Index and a declaration that provided comprehensive justifications for its withholdings.  Accordingly, an *in camera* review of the withheld documents is unnecessary and Plaintiff's request for one should be denied.  *See, e.g., New York Times Co.*, 205 F. Supp. 3d at 385 (declining *in camera* review where no evidence contradicted agency declaration, declaration was "quite detailed," and there was "no evidence from which one could infer bad faith" on the agency's part); *Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*, 181 F. Supp. 2d 356, 371 (S.D.N.Y. 2002) (same).

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment should be granted in its entirety, Plaintiff's motion should be denied, and Plaintiff's applications for *in camera* review and for Defendant to supplement its Index should be rejected.

Dated:   December 7, 2020
         New York, New York

                              Respectfully submitted,

                              AUDREY STRAUSS
                              Acting United States Attorney for the
                              Southern District of New York
                              *Attorney for the Defendant*

                    By:       /s/ Alexander J. Hogan
                              ALEXANDER J. HOGAN
                              Assistant United States Attorney
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel.:  (212) 637-2799
                              Fax:  (212) 637-2786
                              E-mail: alexander.hogan@usdoj.gov