UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
KOBRE & KIM LLP,

                  Plaintiff,

   -v-

COMMODITY FUTURES TRADING
COMMISSION,

                  Defendant.
------------------------------------------------------------ x

Case No. 19 Civ. 10151 (LAK) (OTW)

# DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.1 STATEMENT OF FACTS

Pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Defendant the Commodity Futures Trading Commission ("CFTC") respectfully responds to Plaintiff's statement of material facts in support of its cross-motion for summary judgment.

1. On August 14, 2019, the District Court for the Northern District of Illinois entered a Consent Order (the "Consent Order") formalizing the settlement of an enforcement action the Commodities Futures Trading Commission (the "CFTC") brought against Kraft Foods Group, Inc. and Mondelēz Global LLC in April 2015 (collectively, "Kraft"). *See* Consent Order, *Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*, Case No. 15-cv-2881, Dkt. No. 310 (N.D. Ill. Aug. 14, 2019) ("*Kraft*").

    **Response: Does not dispute.**

2. The CFTC and Kraft first agreed to the material terms of this settlement during a settlement conference on March 22, 2019. *See* Ex. A at 4. During this conference, the court read the material terms of the settlement into the record. *Id*.

**Response: Does not dispute.**

3. The settlement was then finalized by the CFTC Enforcement Staff by May 29, 2019, as evidenced by an email from Robert Howell, Chief Trial Attorney for the Division of Enforcement, dated May 29, 2019 stating that the CFTC Enforcement Staff "ha[d] a *final* [consent] order" between the CFTC and Kraft ready to send to CFTC Officials in Washington, D.C. Ex. G at 2.

**Response: Disputes. This email cited by Plaintiff reads, "[w]e have a final order. Let's try to get the memo to Scott tomorrow after you guys have had a chance to review so we can get this thing moving to DC." Pl. Ex. G. As explained in the Declaration of Rosemary Bajorek, all settlements of CFTC claims in litigation must be approved by a majority vote of the Commissioners of the CFTC. Dkt. No. 35 at ¶ 11. Accordingly, a settlement cannot be final until it is approved by this vote.**

4. *Kraft* was the CFTC's first litigated enforcement action applying the newly enacted Section 6(c)(1) of the CEA (enacted by Congress as part of Dodd-Frank in 2010, 7 U.S.C. § 9(1)) and CFTC Rule 180.1 implementing Section 6(c)(1) (enacted by the CFTC in 2011, 17 C.F.R.§ 180.1) to allegations of market manipulation. This action followed a "35-year history [in which the CFTC had] only successfully prosecuted and won a single case of manipulation in the futures markets." Bart Chilton, "De Principatibus," Public Statements & Remarks (Oct. 21, 2009), https://www.cftc.gov/PressRoom/SpeechesTestimony/opachilton-28.

**Response: Does not dispute that this was the first litigated enforcement action in which the CFTC alleged market manipulation in violation of Section 6(c)(1) of the CEA. Disputes the characterization of CFTC's litigation history with respect to futures markets, but that fact is immaterial to any issue herein.**

5. The *Kraft* Consent Order did not include any findings of fact or law, nor any explanation as to why the $16 million penalty Kraft had to pay pursuant to the settlement was appropriate. It restricted future statements by the CFTC to information already in the public record. *See* Consent Order, *Kraft*, Case No. 15-cv-2881, Dkt. No.

310 (N.D. Ill. Aug. 14, 2019).

**Response: Does not dispute that the Consent Order did not include any findings of fact or conclusions of law. As to future statements, the Consent Order states, "[n]either party shall make any public statement about this case other than to refer to the terms of the settlement agreement or public documents filed in this case, except any party may take any lawful position in any legal proceedings, testimony or by court order."** *See* **Consent Order,** *Kraft***, Case No. 15-cv-2881, Dkt. No. 310 (N.D. Ill. Aug. 14, 2019).**

6. On August 15, 2019, CFTC Commissioners Berkovitz and Behnam issued a joint press release concerning the *Kraft* settlement and the Consent Order. In their press release, the Commissioners recognized the settlement's "unusual features," namely the Consent Order's lack of "factual findings or conclusions of law" and limitation of future statements "to information already in the public record." Ex. B at 1. In particular, their press release included the following statement: "the Commission should not accept any confidentiality provisions or restrictions on the Commission's ability to make public statements." Ex. B at 2.

**Response:   Does not dispute that these two Commissioners issued this press release or that the press release contained that language.**

7. In a separate statement posted on August 15, 2019, the Commission stated that its decision to approve the limitation on future statements in the settlement "was based on the fact that while this provision . . . limits what *the Commission* . . . can say about the Kraft litigation, it does not restrict individual Commissioners when speaking in their personal capacities." Ex. C at 1 (emphasis in original).

**Response: Does not dispute.**

8. On August 15, 2019, the CFTC Press Office released a third public statement announcing the CFTC's $16 million settlement with Kraft and stating that the "penalty is approximately three times defendants' alleged gain. The order also enjoins Kraft and Mondelēz from engaging in future violations of the manipulation, wash trade,

and position limit provisions of the Commodity Exchange Act and CFTC regulations charged in the complaint." Ex. D at 1.

**Response: Does not dispute.**

9. On August 16, 2019, Kraft filed a motion for contempt against the CFTC in the Northern District of Illinois, alleging that the CFTC had not intended to comply with the agreement and purposely violated the Consent Order. *See* Mot. for Contempt, *Kraft*, Case No. 15-cv-02881, Dkt. No. 316 at 1 (N.D. Ill. Aug. 16, 2019).

**Response: Does not dispute.**

10. On August 19, 2019, at the evidentiary hearing on Kraft's contempt motion, the CFTC "agree[d] to voluntarily remove the disputed [press releases by Commissioners Berkovitz and Behnam, the Commission, and the CFTC Press Office (the "Press Releases")] immediately from the CFTC website until the next court date." Aug. 19 Order, *Kraft*, Case No. 15-cv-02881, Dkt. No. 319 (N.D. Ill. Aug. 19, 2019).

**Response: Does not dispute.**

11. On August 20-21, 2019, CFTC employees and staff discussed the Consent Order, the Press Releases, and the decision to remove the Press Releases from the CFTC's website.

**Response: Objects to this purported statement of fact on the grounds that the statement fails to comply with Local Rule 56.1(d), which requires that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible . . . ."** *See also New World Sols., Inc. v. NameMedia Inc.*, **150 F. Supp. 3d 287, 305 (S.D.N.Y. 2015) ("[I]f a party fails to properly support a statement by an adequate citation to the record, the Court may properly disregard that assertion.").**

12. On August 20-21, 2019, the Consent Order was still in force and effect.

**Response: Does not dispute.**

13. On August 21, 2019, shortly after the CFTC removed the Press Releases

from its website, Kobre & Kim delivered its FOIA Requests to the CFTC, which sought the following records:

1) All documents and communications concerning the "binding agreement" referenced in docket entry 302 of the case captioned *U.S. C.F.T.C. v. Kraft Foods Group, Inc.*, 15-cv-2881 (N.D. Ill.) (the "Kraft Case");

2) All documents and communications concerning the "Consent Order" referenced in docket entries 309 and 310 of the *Kraft* case;

3) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to approve the Consent Order;

4) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to approve the Consent Order without findings of fact or conclusions of law;

5) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to approve the provision in the Consent Order that states: "Neither party shall make any public statement about this case other than to refer to the terms of this settlement agreement or public documents filed in this case, except any party may take any lawful position in any legal proceeding, testimony, or by court order";

6) All documents and communications concerning the preparation by the CFTC and/or any of its staff, agents, and/or commissioners of the press releases referenced in docket entry 319 of the Kraft case;

7) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to publish the press releases referenced in docket entry 319 of the Kraft case;

8) All documents and communications concerning the decision by the CFTC and/or any of its staff, agents, and/or commissioners to remove the press releases referenced in docket entry 319 of the Kraft case.

Ex. E at 1-2.

**Response: Does not dispute that the FOIA request sought the records noted above.**

14. On September 26, 2019, following the CFTC's petition for a writ of mandamus to stop the *Kraft* contempt proceedings in the Northern District of Illinois, the

Seventh Circuit stayed the contempt proceedings. *See* Order, *In the matter of Commodity Futures Trading Commission*, Case No. 19-2769, Dkt. No. 7 (7th Cir. Sept. 26, 2019).

**Response: Does not dispute.**

15.     On October 22, 2019, the Seventh Circuit issued a decision that the CFTC cannot bar its Commissioners from sharing their regulatory reasoning and found that the Commissioners were not bound by the gag order. *See In the matter of Commodity Futures Trading Commission*, 941 F.3d 869, 872-73 (7th Cir. 2019).

**Response: The Court should disregard this statement of "fact" because it is a legal conclusion that characterizes a judicial opinion, but does not dispute that the Seventh Circuit issued a decision on this date.**

16.     On October 23, 2019, the District Court for the Northern District of Illinois vacated the *Kraft* Consent Order, emphasizing that "no secret adjudication has been, or will be, authorized."  Minute Entry, *Kraft*, Case No. 15-cv-02881, Dkt. No. 355 (N.D. Ill. Oct. 23, 2019).

**Response: Does not dispute, but notes that the order cited does not "emphasize" this language.**

17.     On October 31, 2019, after the CFTC failed to respond to the FOIA requests for over two months, Kobre & Kim filed this action.  *See* Dkt. No. 1.

**Response: Does not dispute that the CFTC did not respond to the FOIA request before October 31, 2019, or that this action was filed on that date.**

18.     On December 19, 2019, via email to Assistant United States Attorney ("AUSA") Rachael Doud, Kobre & Kim attorney Leanne Bortner notified the CFTC that Kobre & Kim expected the CFTC's search for records to include "reasonable periods before and after certain dates at issue," including after August 19, 2019, the date the CFTC agreed to remove the three *Kraft* Press Releases.  Ex. F at 12.

**Response: Does not dispute that Plaintiff stated its expectation that the search would include "reasonable periods before and after certain dates at issue."  However,**

**to the extent Plaintiff is implying that CFTC agreed to this, disputes.**  *See* **Ex. F. at 12 ("We do not think it is appropriate to extend the date range beyond August 19, 2019.").**

19. On January 14, 2020, via email to AUSA Doud, Kobre & Kim attorney Leanne Bortner informed the CFTC that "without any metrics suggesting a high rate of return, we cannot just accept that these 2 days would greatly add to the review numbers. In addition, any post- deliberative discussions in the days after the court's order to pull the press release is critical to our Request. We have been able to compromise with you on almost all issues, but we cannot do so here and we ask that you consider adding just these 2 days to the review." Ex. F at 3.

**Response: Does not dispute that this email contains this language.**

20. On January 15, 2020, AUSA Doud reiterated via email that "[t]he CFTC is not prepared to expand its search further or commit to producing responsive documents more quickly." Ex. F at 2.

**Response: Does not dispute that this email contains this language.**

21. On February 13, 2020, the CFTC informed the *Kraft* court that the CFTC and Kraft "ha[d] a[] [new settlement] agreement in principle," ready for approval by the Commission. Hearing Transcript, *Kraft*, Case No. 15-cv-02881, Dkt. No. 379 at 3 (N.D. Ill. Feb. 28, 2020).

**Response: Does not dispute.**

22. On February 14, 2020, the *Kraft* court granted in part Kraft's motion for contempt on the basis of the CFTC's "egregious misconduct" and stated that the court would "issue findings of fact and conclusions of law by separate order." Minute Entry, *Kraft*, Case No. 15-cv-02881, Dkt. No. 378 (N.D. Ill. Feb. 14, 2020).

**Response: Does not dispute.**

23. On March 5, 2020, during a status conference with the CFTC and Kraft,

the *Kraft* court acknowledged that it received and reviewed the parties' new proposed consent order. Hearing Transcript, *Kraft*, Case No. 15-cv-02881, Dkt. No. 387 at 5, 20, 24 (N.D. Ill. Mar. 16, 2020); *see also* Mot. to Withdraw, *Kraft*, Case No. 15-cv-02881, Dkt. No. 382 at 1 (N.D. Ill. Mar. 4, 2020).

   **Response: Does not dispute.**

  24. On May 1, 2020, Kobre & Kim filed a motion to compel the CFTC to extend the dates for its search to include records from August 20-21, 2019 (the "Motion to Compel"), the two days after the CFTC removed the Press Releases from its website. *See* Dkt. No. 24. That motion remains fully briefed and pending.

   **Response: Does not dispute.**

  25. On July 30, 2020, the CFTC purported to complete its production of documents. The CFTC produced 1,873 documents, of which 409 were entirely redacted and 834 were partly redacted.

 **Response: Disputes and avers that 853 records (not 834) were partially redacted, but this discrepancy is immaterial to any issue herein.**

Dated: December 7, 2020
    New York, New York

              Respectfully submitted,

              AUDREY STRAUSS
              Acting United States Attorney for the
              Southern District of New York
              *Attorney for the Defendant*

     By: /s/ Alexander J. Hogan
        ALEXANDER J. HOGAN
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.: (212) 637-2799
        Fax: (212) 637-2786
        E-mail: alexander.hogan@usdoj.gov