IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KOBRE & KIM LLP,<br><br>        Plaintiff,<br><br>- v. -<br><br>COMMODITY FUTURES TRADING COMMISSION,<br><br>        Defendant. | Case No. 19-cv-10151 (LAK) (OTW) |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS
<u>CROSS-MOTION FOR SUMMARY JUDGEMENT</u>**

**KOBRE & KIM LLP**

Benjamin J.A. Sauter
Michael S. Kim
Jonathan D. Cogan
George Stamatopoulos

800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Benjamin.Sauter@kobrekim.com
Michael.Kim@kobrekim.com
Jonathan.Cogan@kobrekim.com
George.Stamatopoulos@kobrekim.com

David H. McGill
Leanne A. Bortner

1919 M Street, NW
Washington, DC 20036
Tel: +1 202 664 1900
David.McGill@kobrekim.com
Leanne.Bortner@kobrekim.com

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................................................1

**ARGUMENT** ..........................................................................................................................................2

    A.  The CFTC Must Expand Its Search To Cover At Least August 20-21, 2019. ...............................2

    B.  The Deliberative Process Exemption Does Not Apply To The PR Documents. .........................4

    C.  The "Government Misconduct" Exception Bars The CFTC's Withholdings. ..............................7

    D.  The PR Documents Are Neither Privileged Nor Work Product. ...................................................8

    E.  FOIA Exemption 7(A) Does Not Apply To The PR Documents......................................................9

    F.  Supplementation Of The *Vaughn* Index And *In-Camera* Review Are Appropriate. ...................10

**CONCLUSION** .....................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Civil Liberties Union v. Dep't of Justice*,
 844 F.3d 126 (2d Cir. 2016) .................................................................................................... 5

*Am. Immigr. Council v. Exec. Office for Immigr. Review*,
 418 F. Supp. 3d 10 (S.D.N.Y. 2019) ........................................................................................ 4

*Calvin Klein Trademark Tr. v. Wachner*,
 198 F.R.D. 53 (S.D.N.Y. 2000) ................................................................................................ 9

*Chevron Corp v. Salazar*,
 No. 11-cv-3718 (LAK) (JCF), 2011 WL 3880896 (S.D.N.Y. Sep. 1, 2011) ............................ 9

*Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*,
 Case No. 15-cv-2881 (N.D. Ill.) ........................................................................................ 4, 10

*Enviro Tech Int'l, Inc. v. U.S. EPA*,
 371 F.3d 370 (7th Cir. 2004) .................................................................................................... 7

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
 739 F. Supp. 2d 515 (S.D.N.Y. 2010) ...................................................................................... 9

*ICM Registry, LLC v. U.S. Dep't of Commerce*,
 538 F. Supp. 2d 130 (D.D.C. 2008) ......................................................................................... 7

*In re Sealed Case*,
 121 F.3d 729 (D.C. Cir. 1997) ................................................................................................. 8

*Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*,
 102 F. Supp. 2d 6 (D.D.C. 2000) ............................................................................................. 7

*Judicial Watch, Inc. v. U.S. Dep't of State*,
 241 F. Supp. 3d 174 (D.D.C. 2017) ......................................................................................... 8

*MacNamara v. City of New York*,
 No. 04-cv-9216 (KMK) (JCF), 2007 WL 1169204 (S.D.N.Y. Apr. 20, 2007) ........................ 4

*Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*,
 No. 16-cv-387 (PAE), 2020 WL 5518114 (S.D.N.Y. Sep. 14, 2020) ...................................... 6

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*,
  903 F. Supp. 2d 59 (D.D.C. 2012) ........................................................................................... 7

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ................................................................................................................. 8

*New York Times Co. v. U.S. Dep't of Def.*,
  499 F. Supp. 2d 501 (S.D.N.Y. 2007) ...................................................................................... 9

*New York Times Co. v. U.S. Dep't of Justice*,
  939 F.3d 479 (2d Cir. 2019) ..................................................................................................... 8

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
  421 U.S. 168 (1975) ................................................................................................................. 5

*Seife v. U.S. Dep't of State*,
  298 F. Supp. 3d 592 (S.D.N.Y. 2018) ................................................................................ 6, 10

*Spirko v. U.S. Postal Service*,
  147 F.3d 992 (D.C. Cir. 1998) ............................................................................................... 10

*Tax Reform Research Grp. v. Internal Revenue Serv.*,
  419 F. Supp. 415 (D.D.C. 1976) .............................................................................................. 7

*Walker v. City of New York*,
  No. 98-cv-0467 (HB), 1998 WL 391935 (S.D.N.Y. July 13, 1998) ........................................ 7

*Wright v. Admin. for Children & Families*,
  No. 15-cv-218 (BAH), 2016 WL 5922293 (D.D.C. Oct. 11, 2016) ......................................... 8

Plaintiff Kobre & Kim LLP ("Kobre & Kim") submits this Reply in further support of its Motion for Summary Judgement (the "Kobre & Kim Motion," Dkt. No. 38) and in further opposition to the CFTC's Motion for Summary Judgment (the "CFTC Motion," Dkt. No. 34).

## PRELIMINARY STATEMENT

The CFTC has abandoned any argument that searching for documents from August 20-21, 2019 would be unduly burdensome. Instead, it rests on an argument that Kobre & Kim is "speculat[ing]" about the existence of responsive information during this critical time period immediately following the deletion of the Press Releases on August 19.[1] Dkt. No. 41 at 5. As Kobre & Kim explained in its Motion, common sense dictates that responsive communications took place August 20-21, particularly in light of the court-ordered contempt proceedings and ongoing press coverage. For example, in an email from the evening of August 19, 2019, the CFTC's Deputy Director of the Office of Legislative and Intergovernmental Affairs sought input relating to an upcoming briefing for "Senator Stabenow's office" about "issues implicated in the Kraft/Mondalez settlement."[2] Other emails confirm that the CFTC's Office of Public Affairs was continuing to field requests about the Consent Order and the Press Releases into the evening of August 19. In view of these leads, the CFTC's intentionally truncated search is unreasonable, and the Court should order the CFTC to expand it.

The need for disclosure is all the more apparent in light of the CFTC's shifting explanations for why the Press Releases were removed from its website. In an effort to downplay the importance of the August 20-21 time period, the CFTC has repeatedly represented that it decided to remove the Press Releases "on the spot" during a court hearing on August 19. *See infra*, at 3. Now, after Kobre & Kim demonstrated in its Motion that such an explanation actually *supports* the relief

---

[1] Capitalized terms in this brief have the same meaning as defined in Kobre & Kim's Motion, Dkt. No. 38.
[2] Ex. A (Kobre-Kim-CFTC-0000015 to Kobre-Kim-CFTC-0000016).

1

Kobre & Kim is seeking (*see* Dkt. No. 38 at 13-14), the CFTC has changed its story. In its Opposition, for the first time, the CFTC asserts that its "decision to remove the Press Releases had already been made as of August 19." Dkt. No. 41 at 5. This inconsistency underscores the need for disclosure, public oversight, and accountability.

Nor are the documents at issue protectable under the deliberative process, law enforcement, or other privileges. As the CFTC admits, a long line of cases in this district holds that agency communications about public messaging are not exempt under FOIA. None of the documents concern the formulation of a "policy" implicating the deliberative process privilege, and the CFTC points to none. Nor would publication of these documents credibly interfere with any "law enforcement" objective, particularly since the initial *Kraft* Consent Order was substantively final before the communications at issue, and a new consent order has now been submitted to the Northern District of Illinois for approval. *See* Dkt. No. 42 ¶ 23. Even if there were questions about potential privileges (there are not), the CFTC's vague, conclusory explanations cannot justify its withholdings, and the Court should therefore grant Kobre & Kim the relief it seeks.

## ARGUMENT

### A. The CFTC Must Expand Its Search To Cover At Least August 20-21, 2019.

The CFTC argues that searching for documents from August 20-21, 2019 would be "highly speculative." Dkt. No. 41 at 5. In fact, it is virtually certain that responsive communications took place during this period, immediately after the agency was accused of contempt of court for violating the Consent Order and decided to take down the offending Press Releases. Indeed, the Consent Order and Press Releases remained topics of substantial media attention during August 20-21. *See* Dkt. No. 38 at 14.

Consistent with common sense, the CFTC's own documents confirm that relevant discussions were continuing late into the evening on August 19, belying any notion that Kobre &

2

Kim is simply "speculating" that they continued thereafter.  For example, late in the afternoon of August 19, a CFTC Deputy Director discussed a request from Senator Stabenow for further "briefing" about the *Kraft* settlement and sought input on "how to proceed."[3]  Later on in the evening, in a separate series of emails, the CFTC's Office of Public Affairs discussed Kraft counsel's request that the CFTC "delete [its] tweets, Facebook posts, and any other similar statements" regarding the Press Releases.[4]  Also that same evening, in another email, Office of Public Affairs Director Michael Short circulated ongoing press coverage regarding the decision to remove the Press Releases.[5]  This flurry of communications paints a picture of an agency in a state of damage-control late into the evening on August 19, and it would be astonishing if such communications did not continue into the following days.

The credibility of the CFTC's position is further undermined by its shifting explanations of why it decided to delete the Press Releases.  In an effort to downplay the August 20-21 time period—and to justify its refusal to search that period—the CFTC has repeatedly stated that it decided to remove the press releases "on the spot" at a court hearing on August 19.  For example, in meet-and-confer communications before it began its search, the CFTC argued that "[g]iven the nature of that decision—i.e., an on the spot decision in response to a request from the court—it does not seem likely that extending the time period would yield additional responsive documents." Dkt. No. 39, Ex. F at 5.  The CFTC doubled-down on this argument throughout its briefing.  *See, e.g.*, Dkt. No. 21 at 2; Dkt. No. 26 at 12; Dkt. No. 34 at 10.  However, after Kobre & Kim demonstrated in its Motion that such an "on the spot" decision likely would have prompted further discussions (*see* Dkt. No. 38 at 14), the CFTC changed its story.  In its Opposition, the CFTC

---

[3] Ex. A (Kobre-Kim-CFTC-0000015 to Kobre-Kim-CFTC-0000016).
[4] Ex. B (Kobre-Kim-CFTC-0004421 to Kobre-Kim-CFTC-0004422).
[5] Ex. C (Kobre-Kim-CFTC-0000009 to Kobre-Kim-CFTC-0000013).

3

suggests for the first time that "the decision to remove the Press Releases had already been made as of August 19." Dkt. No. 41 at 5.[6]

Ultimately, it does not matter which of the CFTC's stories is true. What matters is that FOIA gives the public a right to know and evaluate the facts, and the CFTC cannot hide the truth by structuring a search to avoid finding relevant documents. *See Am. Immigr. Council v. Exec. Office for Immigr. Review*, 418 F. Supp. 3d 10, 15 (S.D.N.Y. 2019) (CFTC must "pursue any clear and certain lead [that] it cannot in good faith ignore."). Nor can the CFTC hide behind the "good faith presumption," as it tries to do (Dkt. No. 41 at 6), particularly since it has (1) ignored clear leads to responsive information; (2) changed its story about what it claims is a key fact supporting its refusal to search these dates; and (3) been held in contempt for its "egregious misconduct." *See* Minute Entry, *Kraft*, Case No. 15-cv-2881, Dkt. No. 378 (N.D. Ill. Feb. 14, 2020).

### B. The Deliberative Process Exemption Does Not Apply To The PR Documents.

The CFTC admits that a long line of cases from the Southern District has held that agency discussions about public messaging are not shielded by the deliberative-process privilege. *See* Dkt. No. 41 at 9.[7] Discussions about public messaging are "not the sort of public policy decision" that the deliberative process privilege is intended to protect. *MacNamara v. City of New York*, No. 04-cv-9216 (KMK) (JCF), 2007 WL 1169204, at *5 (S.D.N.Y. Apr. 20, 2007).

The CFTC has not identified a single policy-oriented deliberation that would be implicated by disclosure of the PR Documents.[8] Moreover, even if the PR Documents could be construed as relating to some public policy decision, they are still *post-decisional* and therefore unprotected for this additional reason. *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168,

---

[6] If this is true, the CFTC appears to be withholding all communications relating to the decision.
[7] *See also* Dkt. No. 38 at 17-18 (citing authorities).
[8] The term "PR Documents" in this submission has the same meaning as the term "Public Relations Documents" as defined in Kobre & Kim's Motion, Dkt. No. 38 at 17.

4

184 (1975). The PR Documents include communications with officials from the CFTC's Office of Public Affairs (the "Public Affairs Documents"), draft Press Releases prepared after the Enforcement Division had a final consent order, and documents concerning the public messaging of the already-published Kraft settlement (the "Settlement Messaging Documents"). *See* Dkt. No. 38 at 17-21. The Public Affairs Documents and draft Press Releases were created *after* the Consent Order was substantively finalized on May 29, 2019, which the CFTC does not deny (*see* Dkt. No. 42 ¶ 3), and the Settlement Messaging Documents were created after the Consent Order was entered by the *Kraft* court on August 14, 2019. *See* Dkt. No. 39, Ex. H.

The CFTC nonetheless continues to assert the deliberative process privilege as to the PR Documents. It suggests that the Second Circuit implicitly swept aside the long line of Southern District cases discussed above, without mentioning any of them, by supposedly "preview[ing]" in *Am. Civil Liberties Union v. Dep't of Justice*, 844 F.3d 126, 133 (2d Cir. 2016) ("*ACLU*") that all deliberative documents relating to the presentation of information to the public are privileged. Dkt. No. 41 at 7. This incorrect, overbroad reading of *ACLU* would eviscerate FOIA.

*ACLU* concerned a FOIA request for documents about the DOJ's evolving legal analysis and justification of drone strikes. *ACLU*, 844 F.3d at 128-29. Unlike the PR Documents here, the documents in *ACLU* were prepared in connection with ongoing deliberations about formulating, adopting, and implementing a substantive policy in furtherance of national security. *Id*. at 133. While some of these documents also happened to concern how that evolving policy would be communicated, the decision is clear that the documents were protected because they related to ongoing policy formulation rather than public messaging. *Id*. Thus, *ACLU* did not hold that

5

documents about the public messaging of a substantively-complete policy decision—like the documents at issue here—are protected by the deliberative process privilege.[9]

The CFTC's interpretation of *ACLU* was recently rejected in *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, No. 16-cv-387 (PAE), 2020 WL 5518114, at *14 fn 10 (S.D.N.Y. Sep. 14, 2020) (*Nat'l Day Laborer II*). After analyzing the state of the law, including the *ACLU* decision, the *Seife* decision (*see supra*, at 6), and out-of-district cases such as those the CFTC cites in its briefing, Judge Engelmayer held that "broad protection for messaging decisions about otherwise decided-upon policy would severely undercut FOIA's overarching presumption of disclosure and sweep far broader than the policy rationales of the deliberative privilege process" and ordered disclosure. *Id.* at *15. Indeed, where "'messaging' communications amount to little more than deliberations over how to spin a prior decision, or merely reflect an effort to ensure that an agency's statement is consistent with [a] prior decision, protection would do little to advance the purposes underlying the [deliberative process] privilege." *Id.* (citations omitted). This Court should reject the CFTC's reliance on *ACLU* for the same reasons.

The *Seife* case—which the CFTC cites for its erroneous interpretation of *ACLU* (*see* Dkt. No. 41 at 7-8)—further undermines the CFTC's position. In *Seife*, the Southern District held that the State Department had *not* shown that the national-security-related documents at issue "formed an essential link in the consultative process" or "if released, would inaccurately reflect" the views of the agency, and ruled *against* the agency for failing to provide "specific information about [its] documents." *See Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 620 (S.D.N.Y. 2018) (internal quotations omitted). As in *Seife*, the CFTC has failed to identify any specific policy decisions to

---

[9] While the CFTC argues that a Commission vote was still pending to approve the settlement at the time of certain of the PR Documents, *see* Dkt. No. 42 ¶ 3, the CFTC admits that the settlement was substantively final as of May 29, 2019 and was not substantively changed after that date. *Id.*

6

which the PR Documents supposedly relate, let alone demonstrate with specificity "an essential link" to or "inaccurate reflec[tion]" of such policies, as is required to assert the deliberative process privilege.[10]

### C. The "Government Misconduct" Exception Bars The CFTC's Withholdings.

In its Motion, Kobre & Kim demonstrated that the government misconduct exception requires disclosure of documents relating to the CFTC's decision to publish the Press Releases in violation of the Consent Order. *See* Dkt. No. 38 at 23. "[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F. Supp. 2d 59, 66 (D.D.C. 2012). Courts routinely recognize the government misconduct exception in the FOIA context, consistent with FOIA's fundamental purpose of transparency and accountability. *See, e.g., Tax Reform Research Grp. v. Internal Revenue Serv.*, 419 F. Supp. 415, 426 (D.D.C. 1976) (documents containing evidence of government misconduct "are no more part of the legitimate governmental process intended to be protected by Exemption 5 than would be memoranda discussing the possibility of using a government agency to deliberately harass an opposition political party.").[11]

Relying on two cases from the District of Columbia, the CFTC nonetheless asks this Court to create new law holding that the government misconduct exception does not apply in FOIA cases. *See* Dkt. No. 41 at 11. Such a rule would turn FOIA's fundamental purpose to "create a judicially

---

[10] Unlike the PR Documents here, the documents in the out-of-district cases the CFTC cites did not concern how to spin completed agency decisions but, in each case, were instead found to be exempt because they implicated not-yet finalized policy decisions.

[11] *See also Enviro Tech Int'l, Inc. v. U.S. EPA*, 371 F.3d 370, 376 (7th Cir. 2004); *National Whistleblower Ctr.*, 903 F. Supp. 2d at 67; *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d 130, 131 (D.D.C. 2008); *Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 15 (D.D.C. 2000); *Walker v. City of New York*, No. 98-cv-0467 (HB), 1998 WL 391935, at *1 (S.D.N.Y. July 13, 1998).

enforceable public right to secure [] information from possibly unwilling official hands" on its head, and the Court should not adopt it. *New York Times Co. v. U.S. Dep't of Justice*, 939 F.3d 479, 488 (2d Cir. 2019).

The two cases the CFTC cites are easily distinguishable. Both involved FOIA plaintiffs who, unlike Kobre & Kim here, conceded the deliberative process exemption applied but were making speculative and tenuous claims of government misconduct to overcome it. In contrast to these two cases, the CFTC's "egregious misconduct" has already been found by the Northern District of Illinois and relates clearly and directly to the documents Kobre & Kim is seeking.

Furthermore, both cases expressly recognize that courts may apply the government misconduct exception in appropriate cases. *See Judicial Watch, Inc. v. U.S. Dep't of State*, 241 F. Supp. 3d 174, 182 (D.D.C. 2017); *Wright v. Admin. for Children & Families*, No. 15-cv-218 (BAH), 2016 WL 5922293, at *11 (D.D.C. Oct. 11, 2016). Indeed, the *In re Sealed Case* on which they both rely also specifically recognizes that "where there is reason to believe . . . documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (quotations omitted). Here, there can be no reasonable dispute that the requested documents would shed light on the misconduct that has already been found by the Northern District of Illinois.[12]

### D.  The PR Documents Are Neither Privileged Nor Work Product.

The CFTC vaguely and erroneously asserts that the PR Documents are privileged or attorney work product because the "CFTC engaged in legal deliberations relating to its public

---

[12] The CFTC asserts that Kobre & Kim has not demonstrated that the CFTC engaged in the "extreme wrongdoing" for which the government misconduct exception supposedly is reserved. Dkt. No. 41 at 12-13. But the Northern District of Illinois has already held the CFTC in contempt for "egregious misconduct," and the CFTC is estopped from challenging that finding. *See New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001). Further, the CFTC does not explain why its "egregious misconduct" falls short of the "extreme wrongdoing" it contends is necessary. Moreover, even if further evidence of the CFTC's wrongdoing were required, that evidence would reside in the very records the CFTC is trying to shield.

commentary on the Kraft settlement." Dkt. No. 41 at 10.  This overbroad assertion is insufficient to qualify the documents for these protections.  The attorney-client privilege does not apply to documents containing advice about policy, press inquiries, or public messaging, even if provided by an attorney; and the CFTC has not shown that any of the PR documents were made for "obtaining or providing legal [as opposed to policy] advice[.]"  *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 560 (S.D.N.Y. 2010).  Likewise, by all appearances, the PR Documents were prepared for "public relations purposes," which is not protected work product.  *See New York Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 517 (S.D.N.Y. 2007). Nor has the CFTC shown with any specificity that the PR documents were prepared in connection with strategizing about the "conduct of [the *Kraft*] litigation," as opposed to merely "[its] effects." *Chevron Corp. v. Salazar*, No. 11-cv-3718 (LAK) (JCF), 2011 WL 3880896, at *1 (S.D.N.Y. Sep. 1, 2011).  "[T]he purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally."  *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

### E.  FOIA Exemption 7(A) Does Not Apply To The PR Documents.

The CFTC's position as to Exemption 7(A) boils down to a conclusory assertion that producing the PR Documents could somehow affect the "settlement of the case." Dkt. No. 41 at 16.  However, the CFTC fails to "establish a rational nexus" between the withheld documents and the CFTC's "law enforcement duties," or to demonstrate that release of the documents will likely "cause some articulable harm," both of which are requirements of Exemption 7(A).  *See* Dkt. No. 38 at 23-25.  The terms of the new proposed settlement have already been submitted to the court in the Northern District of Illinois and specifically account for the possibility that the CFTC might

9

be found in contempt. *See* Hearing Tr., *Kraft*, Case No. 15-cv-02881, Dkt. No. 387 at 10 (N.D. Ill. Mar. 16, 2020). The CFTC has not demonstrated that disclosing the requested documents would have any bearing on the Court's approval of this proposed-and-submitted settlement.

The CFTC has also vaguely suggested that disclosure might impact the *contempt* proceedings against it. But the CFTC has already been found in contempt, and it is unclear how disclosure of the documents that led to the contempt finding would undermine these proceedings in any way. *See* Dkt. No. 42 ¶ 22. In any event, such proceedings relate to the CFTC's own misconduct, not its "law enforcement duties," and therefore are outside the scope of Exemption 7(A). Moreover, the CFTC claims that it "did not attempt to conceal its conduct" in the already concluded contempt proceedings. Dkt. No. 41 at 13. If this is true, the requested documents should not have any impact on that proceeding or the settlement.

### F. Supplementation Of The *Vaughn* Index And *In-Camera* Review Are Appropriate.

In addition to hindering Kobre & Kim's best efforts to identify and address the PR Documents, the CFTC's threadbare *Vaughn* index obscures other types of withheld documents by failing to "include specific information . . . such as the dates on which [the draft Press Releases] were prepared" and explanations of "the relationship between their author and ultimate recipient" and their "function and significance in the [CFTC's] decisionmaking process." *Seife*, 298 F. Supp. 3d at 620. In the absence of "sufficiently detailed explanation[s]," this Court has broad discretion to fashion a remedy and order the CFTC to supplement its *Vaughn* index. *Spirko v. U.S. Postal Service*, 147 F.3d 992, 997 (D.C. Cir. 1998). As the CFTC admits, *in-camera* review is appropriate when withholdings are based on vague claims (Dkt. No. 41 at 19), as is the case here.

### CONCLUSION

For the reasons set forth herein and in Kobre & Kim's other briefing, the Court should grant Kobre & Kim's Motion and deny the CFTC's Motion.

Dated: December 21, 2020                    Respectfully submitted,

/s/ Benjamin J.A. Sauter
Benjamin J.A. Sauter
Michael S. Kim
Jonathan D. Cogan
George Stamatopoulos

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Benjamin.Sauter@kobrekim.com
Michael.Kim@kobrekim.com
Jonathan.Cogan@kobrekim.com
George.Stamatopoulos@kobrekim.com

David H. McGill
Leanne A. Bortner

KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036
Tel: +1 202 664 1900
David.McGill@kobrekim.com
Leanne.Bortner@kobrekim.com

11